**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:                                                    Case No.  06-11877-BKC-AJC

FALCON AIR EXPRESS, INC.,                    Chapter 11

          Debtor.

_____/

---

**MODIFIED SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR FALCON AIR EXPRESS, INC. JOINTLY PROPOSED BY KENNETH A. WELT, CHAPTER 11 TRUSTEE, AND IFLYUSA CORPORATION**

---

Dated: April 30, 2007

Jointly Submitted by:

KATZ BARRON SQUITERO FAUST        -and-
Frank P. Terzo, Esq.
(Fla. Bar No. 906263)
Nathan G. Mancuso, Esq.
(Fla. Bar No. 174254)
2699 South Bayshore Drive, 7th Floor
Miami, Florida 33133
Telephone: (305) 856-2444
Facsimile: (305) 285-9227

ASTIGARRAGA DAVIS MULLINS
& GROSSMAN, P.A.
Gregory S. Grossman, Esq.
(Fla. Bar No. 896667)
701 Brickell Avenue, 16th Floor
Miami, Florida 33131
Telephone: (305) 372-8282
Facsimile: (305) 372-8202

*ATTORNEYS FOR KENNETH A. WELT,*
*CHAPTER 11 TRUSTEE FOR FALCON*
*AIR EXPRESS, INC.*

*ATTORNEYS FOR IFLYUSA*
*CORPORATION*

# **TABLE OF CONTENTS**

INTRODUCTION...........................................................................................................1

ARTICLE I DEFINITIONS, INTERPRETATION AND EXHIBITS ..........................1

    A.    Scope of Definitions............................................................... 1
    B.    Rules of Interpretation........................................................ 14
    C.    Exhibits............................................................................... 14

ARTICLE II TREATMENT OF UNCLASSIFIED AND UNIMPAIRED CLAIMS.............. 14

    2.1.    Allowed Administrative Claims....................................... 14
    2.2.    Ordinary Course Liabilities. ........................................... 15
    2.3.    Professional Claims........................................................ 15
    2.4.    U.S. Trustee Fees. .......................................................... 15
    2.5.    Priority Tax Claims. ....................................................... 15
    2.6.    Administrative Claims Bar Date. ................................... 16

ARTICLE III DESIGNATION AND TREATMENT OF CLAIMS AND EQUITY
INTERESTS; IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS
IMPAIRED AND NOT IMPAIRED UNDER THE PLAN ....................................... 16

    3.1.    General. .......................................................................... 16
    3.2.    Class 1: Priority Non-Tax Claims (Unimpaired). .......... 16
    3.3.    Class 2: IRS Secured and Priority Claims (Impaired)............... 16
    3.4.    Class 3: DOJ Trust Fund Claims (Impaired). ................ 18
    3.5.    Class 4:  DFAS Secured Claim (Unimpaired). .............. 19
    3.6.    Class 5:  USDA Secured Claim (Unimpaired)................ 19
    3.7.    Class 6: Security Deposit Claims (Unimpaired). ........... 19
    3.8.    Class 7:  Secured Financing Claims (Unimpaired). ....... 19
    3.9.    Class 8:  JetGlobal Secured DIP Financing Claim (Impaired)............... 19
    3.10.    Class 9: Other Secured Claims (Unimpaired). ............. 20
    3.11.    Class 10: General Unsecured Claims (Impaired)................... 20
    3.12.    Class 11: Equity Interests (Impaired)............................ 20

ARTICLE IV EXECUTORY CONTRACTS AND UNEXPIRED LEASES........................... 21

    4.1.    Assumption..................................................................... 21
    4.2.    Rejection......................................................................... 21
    4.3.    Rejection Claims. ........................................................... 21
    4.4.    Cure Payments................................................................ 21

ARTICLE V LIQUIDATING TRUST ................................................................... 22

    5.1.    Establishment of the Liquidating Trust.......................... 22
    5.2.    Purpose of Liquidating Trust.......................................... 22
    5.3.    Duties and Powers of Liquidating Trustee...................... 22
    5.4.    Compensation of Liquidating Trustee and Professionals.............. 24
    5.5.    Distributions by Liquidating Trustee.............................. 25
    5.6.    Tax Status of Liquidating Trust. .................................... 25
    5.7.    Accounting to Record Beneficiaries. ............................. 26
    5.8.    Liquidating Trust Reserve.............................................. 26

# TABLE OF CONTENTS
(continued)

Page

5.9.   Limitations on Powers of Liquidating Trustee...........................................26
5.10.  Limitations on Liability of Liquidating Trustee and Post-Confirmation Committee.............................................................................27
5.11.  Rights, Powers and Duties of Liquidating Trust Beneficiaries...............27
5.12.  Resignation/Removal/Replacement of Liquidating Trustee. ...................28
5.13.  Duration of Liquidating Trust. ...............................................................28
5.14.  Payment of Costs/Expenses. ..................................................................28
5.15.  Court Approval........................................................................................29
5.16.  Section 1145 Determination....................................................................29
5.17.  Section 1146 Exemption. ........................................................................29

ARTICLE VI POST-CONFIRMATION LITIGATION AND CLAIMS ADMINISTRATION ....................................................................................................30

6.1.   Objections to Claims and Interests..........................................................30
6.2.   Deadline for Responding to Objections to Claims or Interests...............30
6.3.   Estimation of Claims or Interests............................................................30
6.4.   Causes of Action. ....................................................................................30

ARTICLE VII MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN ......31

7.1.   Stock Issuance and Plan Funding Agreement. ........................................31
7.2.   Vesting of Assets in Reorganized Falcon Air. ........................................31
7.3.   Execution of Documents and Corporate Action. .....................................32
7.4.   Cancellation of Existing Securities. ........................................................32
7.5.   Management of Reorganized Debtor........................................................32
7.6.   Termination of the Trustee. .....................................................................32
7.7.   Termination of the Committee..................................................................32
7.8.   Creation of the Liquidating Trust............................................................33

ARTICLE VIII DISTRIBUTIONS .....................................................................................33

8.1.   General. ....................................................................................................33
8.2.   Delivery of Distributions.........................................................................33
8.3.   Distributions to Administrative, Priority and Secured Creditors. ...........33
8.4.   Distributions to General Unsecured Creditors. .......................................33
8.5.   Cash Payments. .......................................................................................34
8.6.   Interest on Claims....................................................................................34
8.7.   Failure to Negotiate Checks. ...................................................................34
8.8.   Unclaimed or Returned Property.............................................................34
8.9.   Limitation on Distribution Rights. ..........................................................34
8.10.  Fractional Dollars....................................................................................35
8.11.  De Minimis Distributions........................................................................35
8.12.  Setoffs.....................................................................................................35

ARTICLE IX CONDITIONS PRECEDENT TO EFFECTIVE DATE ....................................35

9.1.   Conditions to Effective Date. ..................................................................35

# TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---|
| 9.2. | Waiver of Conditions to Consummation | 36 |
| 9.3. | Notice of Effective Date | 36 |

ARTICLE X EFFECT OF PLAN CONFIRMATION ................................................. 36

| | | |
|---|---|---|
| 10.1. | Discharge | 36 |
| 10.2. | Binding Effect | 37 |
| 10.3. | Stay | 37 |
| 10.4. | Exculpation | 37 |
| 10.5. | Injunction | 37 |

ARTICLE XI ACCEPTANCE OR REJECTION OF THIS PLAN .......................... 38

| | | |
|---|---|---|
| 11.1. | Persons Entitled to Vote | 38 |
| 11.2. | Vote Required for Acceptance and Confirmation | 38 |
| 11.3. | Cramdown Provisions | 38 |

ARTICLE XII FINAL REPORT ........................................................................... 39

ARTICLE XIII ABANDONMENT ....................................................................... 39

ARTICLE XIV RETENTION OF JURISDICTION ............................................. 39

| | | |
|---|---|---|
| 14.1. | Exclusive Jurisdiction of Bankruptcy Court | 39 |
| 14.2. | Failure of Bankruptcy Court to Exercise Jurisdiction | 42 |

ARTICLE XV MISCELLANEOUS PROVISIONS ............................................. 42

| | | |
|---|---|---|
| 15.1. | Binding Effect of Plan | 42 |
| 15.2. | Withdrawal of this Plan | 42 |
| 15.3. | Modification of this Plan | 42 |
| 15.4. | Business Days | 43 |
| 15.5. | Severability of Plan Provisions | 43 |
| 15.6. | Governing Law | 43 |
| 15.7. | Notices | 43 |
| 15.8. | Filing of Additional Documents | 44 |
| 15.9. | Time | 45 |
| 15.10. | No Attorneys' Fees | 45 |
| 15.11. | Successors and Assigns | 45 |
| 15.12 | Section 1146(a) Exemption from Certain Transfer Taxes | 45 |
| 15.13. | Stock Issuance and Plan Funding Agreement | 45 |
| 15.14. | Aeropostal Settlement Agreement | 46 |
| 15.15. | Defenses with Respect to Unimpaired Claims | 46 |
| 15.16. | No Injunctive Relief | 46 |
| 15.17. | No Admissions | 46 |
| 15.18. | Entire Agreement | 46 |
| 15.19. | Waiver of Bankruptcy Rules 3020(e) and 7062 Stays | 46 |
| 15.20. | Substantial Consummation | 46 |
| 15.21. | Dissolution of the Debtor | 46 |

## TABLE OF CONTENTS
(continued)

**Page**

15.22.  Good Faith.............................................................................................. 46

ARTICLE XVI CONFIRMATION REQUEST ........................................................ 47

**EXHIBITS:**

| | |
|---|---|
| **Exhibit A:** | **Substituted and Modified Stock Issuance and Plan Funding Agreement** |
| **Exhibit B:** | **Liquidating Trust Agreement** |
| **Exhibit C:** | **Aeropostal  Settlement Agreement** |

## MODIFIED SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR FALCON AIR EXPRESS, INC.

### INTRODUCTION

This Modified Second Amended Chapter 11 Plan of Reorganization (the "Plan") for Falcon Air Express, Inc. ("Falcon Air" or the "Debtor") is jointly proposed by Kenneth A. Welt, as duly appointed and authorized Chapter 11 Trustee for Falcon Air (the "Trustee"), and iflyusa Corporation, a Florida corporation ("Iflyusa" and, together with the Trustee, the "Proponents") pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"). Capitalized terms used herein shall have the meanings ascribed to them in Article I of this Plan, unless the context requires otherwise.

Reference is made to the First Amended Disclosure Statement in Support of First Amended Chapter 11 Plan of Reorganization for Falcon Air Express, Inc. Jointly Proposed by Kenneth A. Welt, Chapter 11 Trustee, and SkyValue Airlines, Inc. (the "Disclosure Statement") accompanying this Plan for a discussion of, among other things, the background, history, business, historical financial information and the events leading up to the Chapter 11 Case, as well as a summary and analysis of this Plan and certain related matters.

**SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3018 AND IN THIS PLAN, THE PROPONENTS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THIS PLAN UNTIL ITS SUBSTANTIAL CONSUMMATION.**

### ARTICLE I
### DEFINITIONS, INTERPRETATION AND EXHIBITS

**A.      Scope of Definitions.** For purposes of this Plan, and to the extent not otherwise provided herein, the terms below shall have the respective meanings hereinafter set forth and designated with the initial letter of each word being capitalized and, unless otherwise indicated, the singular shall include the plural, the plural shall include the singular and capitalized terms shall refer to the terms as defined in this Article 1.

**1.1.      "Administrative Claim"** means a Claim for any cost or expense of administration (including Professional Claims) of the Chapter 11 Case asserted or arising under sections 503, 507(a)(1), or 507(b) of the Bankruptcy Code, including (i) any actual and necessary Post-Petition Date cost or expense of preserving the Debtor's Estate or operating the business of the Debtor, (ii) any payment to be made under this Plan to cure a default on an executory contract or unexpired lease that is assumed pursuant to section 365 of the Bankruptcy Code, (iii) any Post-Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of business, (iv) compensation or reimbursement of expenses of Professionals to the extent allowed by the Bankruptcy Court under section 330(a) or section 331 of the Bankruptcy Code, and (v) all Allowed Claims that are entitled to be treated as Administrative Expense Claims pursuant to a Final Order of the Bankruptcy Court under section 546(c)(2)(A) of the Bankruptcy Code.

1

**1.2.** **"Administrative Claims Bar Date"** means January 15, 2007, the date established by separate Order of the Bankruptcy Court as the deadline by which Administrative Claims were required to be filed in accordance with Section 2.6 of this Plan.

**1.3.** **"Administrative Claims Bar Date Order"** means the Court's Order Setting Administrative Claims Bar Date and Designating Form and Manner of Notice of Administrative Claims Bar Date, (C.P. No. 457), which establishes the Administrative Claims Bar Date and procedures governing the filing of Administrative Claims.

**1.4.** **"Aeropostal"** means Aeropostal Alas de Venezuela, C.A.

**1.5.** **"Aeropostal Receivable"** means the receivable consisting of all amounts due to Falcon Air and the Trustee from Aeropostal under the Aeropostal Settlement Agreement and Aeropostal Debt Settlement Agreement.

**1.6.** **"Aeropostal Debt Settlement Agreement"** means that certain Debt Settlement Agreement by and between Aeropostal and Falcon Air dated as of April 30, 2005.

**1.7.** **"Aeropostal Settlement Agreement"** means that certain Settlement Agreement by and between Aeropostal and the Trustee dated as of October 2, 2006, and approved by the Court by Order entered October 19, 2006, C.P. No. 382, as amended by Amendments dated as of December 4, 2006, February 22, 2007, and April 26, 2007, a copy of which is attached hereto as Exhibit C.

**1.8.** **"Allowance Date"** means the date on which the particular Claim at issue becomes an Allowed Claim.

**1.9.** **"Allowed Administrative Claim"** means all or that portion of any Administrative Claim that is or has become an Allowed Claim.

**1.10.** **"Allowed Claim"** means a Claim: (a)(i) proof of which was timely and properly filed on or before the applicable Bar Date, and unless otherwise set by the Bankruptcy Court, (ii) proof of which was deemed filed pursuant to section 1111(a) of the Bankruptcy Code, or (iii) if no such proof was filed or deemed filed, such Claim has been or hereafter is listed by the Debtor on its Schedules filed under section 521(1) of the Bankruptcy Code as liquidated in amount and not disputed or contingent and, in any case, as to which (A) no Objection to the allowance thereof has been or is interposed on or before the Claims Objection Deadline or (B) any such Objection has been settled, withdrawn or determined by a Final Order, to the extent the Objection has been or is determined in favor of the Claimant in such Final Order; (b) based on an application of a professional person under section 330, section 331, or section 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Case, to the extent such application is approved by a Final Order; or (c) expressly allowed under this Plan or the Modified Confirmation Order. Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Claim" shall not include interest on such Claim for the period from and after the Petition Date.

**1.11.** **"Allowed General Unsecured Claim"** means all or that portion of any General Unsecured Claim that is or has become an Allowed Claim.

2

**1.12.    "Allowed General Unsecured Creditor"** means the Holder of an Allowed General Unsecured Claim.

**1.13.    "Allowed Priority Claim"** means all or that portion of any Priority Claim that is or has become an Allowed Claim.

**1.14.    "Allowed Priority Non-Tax Claim"** means all or that portion of any Priority Non-Tax Claim that is or has become an Allowed Claim.

**1.15.    "Allowed Priority Tax Claim"** means all or that portion of any Priority Tax Claim that is or has become an Allowed Claim.

**1.16.    "Allowed Secured Claim"** means all or that portion of any Secured Claim that is or has become an Allowed Claim.  Any deficiency portion of an Allowed Secured Claim shall be treated as an Allowed General Unsecured Claim.

**1.17.    "Assets"** means all legal or equitable interests of the Debtor in any and all real or personal property of any nature, including any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Claims, Causes of Action and any other general intangibles, and the proceeds, product, offspring, rents or profits thereof.

**1.18.    "Assumed Contracts"** means those Executory Contracts to be assumed by the Debtor and Reorganized Debtor as of the Effective Date pursuant to Article IV of the Plan and section 365(a) of the Bankruptcy Code, which Executory Contracts consist of those Executory Contracts which were designated for assumption by SkyValue and identified on the Assumed Contracts Schedule, as supplemented, amended or modified.

**1.19.    "Assumed Contracts Schedule"** means the schedule that constitutes Exhibit A to the Confirmation Order, as it may be supplemented, amended or modified.

**1.20.    "Available Cash"** means Cash available to make payments pursuant to this Plan.

**1.21.    "Avoidance Actions"** means any and all causes of action which a trustee, debtor-in-possession, the estate or other legal representative or appropriate party-in-interest, including the Liquidating Trustee, may assert, including those causes of action under chapter 5 of the Bankruptcy Code, including the Debtor's rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity in connection herewith (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted (but other than those Avoidance Actions which are released or dismissed as part of and pursuant to this Plan).

**1.22.    "Ballot"** means the ballot accompanying the Disclosure Statement.

3

**1.23.** **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as in effect on the Petition Date, together with all amendments and modifications thereto to the extent applicable to the Chapter 11 Case.

**1.24.** **"Bankruptcy Court" or "Court"** means the United States Bankruptcy Court for the Southern District of Florida, which has jurisdiction over the Chapter 11 Case, or such other court exercising bankruptcy jurisdiction.

**1.25.** **"Bankruptcy Rules"** means (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of title 28 of the United States Code, (b) the Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of title 28 of the United States Code, (c) the Local Rules of the United States Bankruptcy Court for the Southern District of Florida as amended, and (d) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto to the extent applicable to this Chapter 11 Case or proceedings therein, as the case may be.

**1.26.** **"Bar Date"** means the General Claims Bar Date, Government Claims Bar Date or Administrative Claims Bar Date, or any other deadline for filing a particular type of Claim set by Order of the Court or this Plan, as applicable.

**1.27.** **"Beneficial Holder"** means the Person holding the beneficial interest in a Claim or Interest.

**1.28.** **"Business Day"** means any day other than a Saturday, Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

**1.29.** **"Cash"** means money, currency and coins, negotiable checks, balances in bank accounts and other lawful currency of the United States of America and its equivalents.

**1.30.** **"Cash Collateral"** means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the Estate and an entity other than the Estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of the Bankruptcy Code, whether existing before or after the commencement of a case under the Bankruptcy Code.

**1.31.** **"Causes of Action"** means any and all actions, claims, rights, defenses, impleader claims, damages, executions, demands, crossclaims, counterclaims, suits, causes of action, choses in action, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, accruing to the Debtor, including the Avoidance Actions.

**1.32.** **"Chapter 11 Case"** means the instant case under chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date.

4

**1.33.** **"Claim"** has the meaning assigned to such term in section 101(5) of the Bankruptcy Code.

**1.34.** **"Claimant" or "Claimholder"** means the Holder of a Claim.

**1.35.** **"Claim Objection Deadline"** means the deadline for objecting to Claims against the Estate, which shall be 120 days after the Effective Date unless extended by Order of the Bankruptcy Court for cause.

**1.36.** **"Class"** means a group of Claims or Interests as classified in a particular class under this Plan pursuant to section 1122 of the Bankruptcy Code.

**1.37.** **"Closing"** means the consummation and closing of the transactions contemplated by the Stock Issuance and Plan Funding Agreement and issuance of the Reorganized Falcon Air Shares.

**1.38.** **"Closing Date"** means the date on which the Closing occurs in accordance with the Stock Issuance and Plan Funding Agreement.

**1.39.** **"Committee"** means the Official Committee of Unsecured Creditors for Falcon Air appointed by the Office of the U.S. Trustee in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code, as reconstituted from time to time.

**1.40.** **"Confirmation"** means the entry of an order confirming this Plan in accordance with section 1129 of the Bankruptcy Code.

**1.41.** **"Confirmation Date"** means the date on which the Confirmation Order was entered on the docket maintained by the Clerk of the Bankruptcy Court.

**1.42.** **"Confirmation Hearing"** means the hearing held before the Bankruptcy Court to consider Confirmation of this Plan pursuant to section 1128 of the Bankruptcy Code, as it may be continued from time to time.

**1.43.** **"Confirmation Order"** means the Order Approving Disclosure Statement and Confirming Second Amended Chapter 11 Plan of Reorganization for Falcon Air Express, Inc, Jointly Proposed by Kenneth A. Welt, Chapter 11 Trustee, and SkyValue Airlines, Inc., C.P. No. 638.

**1.44.** **"Creditor"** has the meaning prescribed in 11 U.S.C. § 101(10).

**1.45.** **"Cure"** means the amount of Cash required to cure defaults necessary to assume or assume and assign an Executory Contract under 11 U.S.C. § 365(b) as determined by the Bankruptcy Court or pursuant to any agreement among the Debtor, Trustee or Reorganized Debtor and the other party(ies) to the Executory Contract.

**1.46.** **"Cure Claim"** means a Claim arising from the Debtor's assumption of an Executory Contract or unexpired lease pursuant to 11 U.S.C. § 365(b).

5

**1.47.    "Customs Bond"** means that certain surety bond no. 520104966 issued and held by Roanoke Trade Services, Inc., as successor to XL Specialty Insurance Company, and/or any applicable replacement bond currently in effect, to secure payment of fees, charges, fines and penalties assessed against Falcon Air by U.S. Customs and Border Protection, including any amounts that constitute General Unsecured Claims.

**1.48.    "Debtor" or "Falcon Air"** means Falcon Air Express, Inc.

**1.49.    "DFAS"** means the Defense Finance and Accounting Service.

**1.50.    "DFAS Secured Claim"** means the Secured Claim held by the DFAS arising from its right of setoff against Falcon Air, evidenced by claim no. 143 filed in the Chapter 11 Case.

**1.51.    "Disallowed Claim"** means any Claim against the Debtor or Estate which (i) has been disallowed, in whole or part, by a Final Order of the Bankruptcy Court; (ii) has been withdrawn by agreement of the Debtor or Trustee and the Holder thereof, in whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if listed in the Schedules as zero or as actually or may be disputed, contingent or unliquidated and in respect of which a proof of claim has not been timely filed or deemed timely filed pursuant to the Plan, the Bankruptcy Code or any Final Order of the Bankruptcy Court or other applicable bankruptcy law; (v) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the filed amount of any proof of claim; or (vi) is evidenced by a proof of claim which has been filed, or which has been deemed to be filed under applicable law or order of the Bankruptcy Court or which is required to be filed by order of the Bankruptcy Court but as to which such proof of claim was not timely or properly filed.  In each case a Disallowed Claim is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

**1.52.    "Disbursing Agent"** means the Liquidating Trustee for the purpose of administering Claims and the Disputed Claims Reserve, and making Distributions to Allowed Creditors under the Plan as provided herein.

**1.53.    "Disclosure Statement"** means the document entitled "First Amended Disclosure Statement in Support of First Amended Chapter 11 Plan of Reorganization for Falcon Air Express, Inc. Jointly Proposed by Kenneth A. Welt, Chapter 11 Trustee, and SkyValue Airlines, Inc.," dated February 9, 2007, and filed in connection with this Plan and the Chapter 11 Case pursuant to section 1125 of the Bankruptcy Code, including any exhibits annexed thereto and any documents delivered in connection therewith, as the same may be amended or modified from time to time.

**1.54.    "Disputed Claims"** means all Claims that are the subject of a pending objection, motion, complaint, counterclaim, setoff, Avoidance Action or other defense, or any other proceeding seeking to disallow, subordinate or estimate such Claim in whole or in part.

**1.55.    "Disputed Claims Reserve"** means the Cash and/or common stock in the Liquidating Trust set aside by the Liquidating Trustee in a separate interest-bearing account or

location, as applicable, in an amount sufficient to cover Disputed Claims not disallowed, released or discharged pursuant to this Plan or otherwise and any related costs and expenses that may be incurred by the Liquidating Trustee, as such reserve amount may be increased or reduced by the Liquidating Trustee. However, if any dispute arises regarding any increase or reduction of the Disputed Claims Reserve, the Liquidating Trustee shall obtain approval of the Bankruptcy Court. Any unused amounts from the Disputed Claims Reserve shall become Cash available for distribution to Holders of Allowed Claims in accordance with the terms of this Plan.

**1.56.** **"Distribution"** means a distribution or distributions of Cash or other non-Cash consideration made under the Plan.

**1.57.** **"DOJ"** means the United States Department of Justice and, to the extent applicable, any other federal agencies or Governmental Units represented by the United States Department of Justice with respect to Claims asserted in the Chapter 11 Case.

**1.58.** **"DOJ Trust Fund Claims"** means the Claims held by U.S. Customs and Border Protection, Transportation Security Administration and U.S. Department of Agriculture to the extent that such Claims reflect trust fund fees.

**1.59.** **"DOT"** means the United States Department of Transportation.

**1.60.** **"Effective Date**" means the Closing Date, provided that all other conditions set forth in Section 9.1 of this Plan shall have occurred, been satisfied or waived, which date shall be not later than June 8, 2007, unless extended upon the mutual written consent of the Proponents.

**1.61.** **"Estate"** means the Debtor's bankruptcy estate created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

**1.62.** **"Excluded Assets"** has the same meaning given such term in the Stock Issuance and Plan Funding Agreement, in which it is defined to mean the following assets which will not vest in the Reorganized Debtor as of the Effective Date: (a) all claims relating to engines which are the property of Falcon Air and in the possession of a third party including, without limitation, the Pratt & Whitney aircraft engines, and all engine records, logs, manuals and technical records and all related parts or equipment designated for use in or associated with such engines, currently being held by Hamilton Aerospace Technologies, Inc.; (b) cash and cash equivalents, including petty cash accounts or cash on hand or in bank accounts, certificates of deposit, surety bonds [including the Customs Bond], commercial paper and other similar securities related to the Falcon Air Business; (c) all accounts and notes receivable as well as other claims for money or other obligations due (or which hereafter will become due) to Falcon Air arising out of the Falcon Air Business; (d) all of the outstanding capital stock of Majel Aircraft Leasing Corporation; (e) all avoidance claims and actions of Falcon Air, including, without limitation, any such claims and actions arising under Sections 542, 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code; (f) all third party claims, causes of action and insurance proceeds with respect to or arising in connection with the Falcon Air Business including, without limitation, causes of action against directors and officers; and (g) all consideration paid

under the Stock Issuance and Plan Funding Agreement.

**1.63.    "Executory Contracts"** means executory contracts and unexpired leases as such terms are used in 11 U.S.C. § 365, including all operating leases, capital leases, and contracts to which the Debtor or Trustee is a party or beneficiary on the Confirmation Date.

**1.64.    "FAA"** means the United States Federal Aviation Administration.

**1.65.    "Falcon Air Business"** means any and all business activities of Falcon Air, including, but not limited to, the operation of the FAA Part 121 certified commercial airline charter service.

**1.66.    "Final Distribution"** has the meaning set forth in Section 5.5.2 of this Plan.

**1.67.    "Final Distribution Date"** means the date upon which the Final Distribution is made.  The Final Distribution Date shall be determined by the Liquidating Trustee, and shall be the date on or after which (a) all Liquidating Trust Assets are liquidated to Cash and the proceeds thereof distributed in accordance with the Plan and Liquidating Trust Agreement, (b) the Net Proceeds of Causes of Action are distributed to Holders of Allowed General Unsecured Claims, (c) any and all remaining Cash in the Liquidating Trust Reserve shall have been paid or distributed in accordance with the Plan and Liquidating Trust Agreement, and (d) any and all other assets have been liquidated and distributed.

**1.68.    "Final Order"** means an order or judgment entered by the Bankruptcy Court, or another court of competent jurisdiction, in connection with the Chapter 11 Case, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or to seek certiorari, review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending or as to which any right to appeal or to seek certiorari, review or rehearing has been waived in writing in a manner satisfactory to the Trustee or Liquidating Trustee.

**1.69.    "Final Report"** means the Final Report on Distributions and Request for Entry of Final Decree Closing Case to be filed by the Liquidating Trustee, pursuant to 11 U.S.C. § 350 and Bankruptcy Rule 3022, after the Estate and Liquidating Trust are fully administered.

**1.70.    "General Claims Bar Date"** means the date established by the Bankruptcy Court as the deadline by which proofs of Claims arising Pre-Petition (other than Government Claims) are required to be filed, which was September 18, 2006.

**1.71.    "General Unsecured Claim"** means any Pre-Petition Claim (but not an Administrative Claim, Priority Claim or Secured Claim), including, but not limited to, any Rejection Claim and any deficiency Claim held by the Holder of an Allowed Secured Claim.

**1.72.    "General Unsecured Creditor"** means the Holder of an Allowed General Unsecured Claim.

**1.73.    "Government Claim"** means any Claim held by a Governmental Unit.

8

1.74. **"Government Claims Bar Date"** means the date set by the Bankruptcy Court as the deadline for filing Government Claims, which is November 6, 2006.

1.75. **"Governmental Unit"** shall have the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

1.76. **"Holder"** means the Beneficial Holder of a Claim or Interest and, when used in conjunction with a Class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type.

1.77. **"Iflyusa"** means iflyusa Corporation, a Florida corporation.

1.78. **"Iflyusa Cash Consideration"** means the Cash paid into the Estate by Iflyusa at Closing plus any additional consideration paid by Iflyusa under the Stock Issuance and Plan Funding Agreement.

1.79. **"Impaired"** when used in this Plan with reference to a Claim or an Equity Interest, has the meaning assigned to such term in section 1124 of the Bankruptcy Code.

1.80. **"Interest" or "Equity Interest"** means any "equity security" interest in the Debtor, as the term is defined in section 101(16) of the Bankruptcy Code, exclusive of any such interests held in treasury by the Debtor, which Interests are identified in the Lists of Equity Security Holders filed by the Debtor in connection with the Chapter 11 Case and/or registered in the stock registers maintained by or on behalf of the Debtor, and as to which Interest no Objection has been made or which Interest has been allowed by a Final Order.

1.81. **"Interestholder"** means the Holder of an Equity Interest.

1.82. **"IRS"** means the United States Internal Revenue Service.

1.83. **"IRS Beneficial Interest"** means the IRS's beneficial interest in the Liquidating Trust, limited to a total Distribution of 10% of the Net Proceeds of the Liquidating Trust pursuant to Section 3.3(c) of this Plan.

1.84. **"IRS Claim"** means the Claim held by the IRS, evidenced by proof of claim no. 37 filed by the IRS in the Chapter 11 Case.

1.85. **"IRS General Unsecured Claim"** means the General Unsecured Claim asserted by the IRS as part of the IRS Claim.

1.86. **"IRS Priority Claim"** means the Priority Claim asserted by the IRS as part of the IRS Claim.

1.87. **"IRS Secured Claim"** means the Secured Claim asserted by the IRS as part of the IRS Claim.

1.88. **"JetGlobal"** means JetGlobal, LLC.

**1.89.** **"JetGlobal Secured DIP Financing Claim"** means the alleged Secured Claim held by JetGlobal in respect of its post-petition loan advanced to the Debtor, classified as Class 8 under the Plan.

**1.90.** **"Lakes Edge Lease" or "Lease"** means that certain real property lease for 9000 N.W. 15th Street, Miami, FL 33172, also known as Units #9 and #10 of Lakes Edge Commercial Condominium, between Lakes Edge Commercial Properties, LLC and Falcon Air Express, Inc., dated December 23, 2004, inclusive of the Purchase Option as defined therein.

**1.91.** **"Liquidating Trust"** means the trust established for the benefit of the Liquidating Trust Beneficiaries upon the Effective Date, to be governed by the Liquidating Trust Agreement.

**1.92.** **"Liquidating Trust Agreement"** means the agreement that governs the post-confirmation Liquidating Trust established pursuant to the Plan, which shall be executed and filed with the Bankruptcy Court on the Effective Date, substantially in the form attached hereto as Exhibit B.

**1.93.** **"Liquidating Trust Assets"** means the Excluded Assets which will be transferred to the Liquidating Trust on the Effective Date pursuant to the Plan and Liquidating Trust Agreement.

**1.94.** **"Liquidating Trust Beneficiaries" or "Beneficiaries"** means the beneficiaries of the Liquidating Trust, consisting of the Holders of Allowed General Unsecured Claims and the IRS to the extent of the IRS Beneficial Interest.

**1.95.** **"Liquidating Trust Cash"** means the Cash, up to a total amount of $200,000, transferred to the Liquidating Trust in accordance with Section 3.3(a) and (b) of this Plan and earmarked for payment of Liquidating Trust Expenses.

**1.96.** **"Liquidating Trust Expenses"** means all expenses of the Liquidating Trust, including without limitation, (i) the fees and expenses of the Liquidating Trustee and Disbursing Agent, (ii) the fees and expenses of the Professionals retained by the Liquidating Trustee, and (iii) other contingent liabilities of the Liquidating Trust.

**1.97.** **"Liquidating Trust Reserve"** means an amount of Cash necessary to (i) pay the actual and anticipated Liquidating Trust Expenses, (ii) fund the Disputed Claims Reserve, and (iii) pay Holders of Allowed Claims whose Cash Distributions are Unclaimed Property as described in Section 8.8 of this Plan.

**1.98.** **"Liquidating Trustee"** shall mean Kenneth A. Welt, the trustee of the Liquidating Trust.

**1.99.** **"Liquidation Value"** means the aggregate dollar amount that would be generated from the Assets if the Chapter 11 Case were converted to a case under chapter 7 of the Bankruptcy Code and the Assets were liquidated by a trustee in bankruptcy.

**1.100.** **"Modified Confirmation Order"** means any order entered by the Bankruptcy

Court approving this Plan and the Stock Issuance and Plan Funding Agreement, and modifying the Confirmation Order to the extend necessary to effectuate such approval.

**1.101. "Net Proceeds"** means an amount equal to the gross proceeds actually collected by the Debtor or Liquidating Trustee from the liquidation of any Assets or the disposition of any Causes of Action (including any recovery by the Liquidating Trustee from the prosecution of any action to enforce the Aeropostal Settlement Agreement and/or collect the Outstanding Aeropostal Receivable in accordance with Section 3.3 of this Plan), including any judgment or settlement or other disposition of any Causes of Action, less any and all fees and expenses incurred in the liquidation of such Assets or prosecution of such Causes of Action, including, without limitation, those of attorneys, accountants, brokers and experts.

**1.102. "Objection"** means any objection, application, motion, complaint or any other legal proceeding, including, with respect to the terms of this Plan, seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify or establish the priority, expunge, subordinate or estimate any Claim or Interest.

**1.103. "Ordinary Course Liability"** means an Administrative Claim (other than a Professional Claim or Cure Claim) based on liabilities incurred in the ordinary course of the Debtor's business and/or the Trustee's operation thereof.

**1.104. "Other Secured Claims"** means Secured Claims other than the IRS Secured Claim, DFAS Secured Claim, USDA Secured Claim, Security Deposit Claims and Secured Financing Claims.

**1.105. "Outstanding Aeropostal Receivable"** means the Aeropostal Receivable in the amount outstanding as of the Effective Date.

**1.106. "Pending Claim"** means a Claim or Administrative Claim which is not an Allowed Claim but not a Disputed Claim.

**1.107. "Person"** means an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

**1.108. "Petition Date"** means May 10, 2006.

**1.109. "Plan"** means this Modified Second Amended Chapter 11 Plan of Reorganization for Falcon Air Express, Inc. Jointly Proposed by Kenneth A. Welt, Chapter 11 Trustee, and iflyusa Corporation.

**1.110. "Plan Documents"** means any contracts, instruments, securities, releases, indentures, and any other agreements or documents delivered pursuant to, or related to, or implementing this Plan or such other documents, including without limitation those documents attached as exhibits to this Plan, the Liquidating Trust Agreement and the Stock Issuance and Plan Funding Agreement.

**1.111. "Post-Confirmation Committee"** shall mean the committee of Holders of

11

General Unsecured Claims established to oversee the actions of, and consult with, the Liquidating Trustee, and which members shall consist of the same members that served on the Committee unless otherwise provided in a notice to be filed with the Bankruptcy Court prior to the Effective Date.

**1.112.** **"Post-Petition"** means a date on or after the Petition Date.

**1.113.** **"Pre-Petition"** means a date prior to the Petition Date.

**1.114.** **"Priority Claims"** means Priority Tax Claims and Priority Non-Tax Claims, collectively.

**1.115.** **"Priority Non-Tax Claim"** means any Claim given priority in payment pursuant to section 507 of the Bankruptcy Code, but not including Priority Tax Claims and Administrative Claims.

**1.116.** **"Priority Tax Claim"** means any Claim given priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code, other than the IRS Priority Claim.

**1.117.** **"Professional**" means a Person (a) employed in the Chapter 11 Case pursuant to a Final Order in accordance with sections 327, 328 and/or 1103 of the Bankruptcy Code and to be compensated for services rendered pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, including professionals employed by the Liquidating Trustee on and after the Effective Date; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.118.** **"Professional Fees"** or **"Professional Claims"** means Claims by Professionals retained by the Debtor, Trustee or Committee for compensation and reimbursement of expenses for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date and prior to and including the Confirmation Date pursuant to sections 330 and 331 of the Bankruptcy Code.

**1.119.** **"Property"** or **"Property of the Estate"** means all property of the Debtor and its Estate of every type and nature pursuant to section 541 of the Bankruptcy Code.

**1.120.** **"Pro Rata"** means, at any time, the same proportion that the face amount of a Claim in a particular Class bears to the aggregate face amount of all Allowed Claims, Pending Claims and Disputed Claims in such Class or in all of the Classes at issue, unless the Plan provides otherwise.

**1.121.** **"Rejection Claim"** means a Claim arising under section 502(g) of the Bankruptcy Code from the rejection under section 365 of the Bankruptcy Code, or under the Plan, of an Executory Contract of the Debtor that has not been assumed.

**1.122.** **"Reorganized Debtor"** or **"Reorganized Falcon Air"** means Falcon Air from and after the Effective Date, as controlled by Iflyusa pursuant to the stock acquisition contemplated under the Plan and Stock Issuance and Plan Funding Agreement.

**1.123. "Reorganized Falcon Air Shares"** means shares representing 100% of the capital stock of Reorganized Falcon Air, which will be transferred to Iflyusa on the Closing Date in accordance with the Stock Issuance and Plan Funding Agreement.

**1.124. "Schedules"** means the Debtors' Schedules of Assets and Liabilities and Statement of Financial Affairs, as amended from time to time, filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007.

**1.125. "Security Deposit Claim"** means a Secured Claim that is secured by a security deposit held by the Holder of such Claim to secure the Debtor's payment obligations in respect of such Claim.

**1.126. "Secured Claim"** means a Claim that is secured by a security interest in or lien upon any Property of the Debtor's Estate that is not void or avoidable under the Bankruptcy Code or other applicable law to the extent of the value, as of the Effective Date or such other date as is established by the Bankruptcy Court, of such security interest or lien as determined by a Final Order of the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code.

**1.127. "Secured Financing Claim"** means a Secured Claim held by a party to a secured financing agreement with the Debtor and secured by collateral that will vest in the Reorganized Debtor on the Effective Date.

**1.128. "SkyValue"** means SkyValue Airlines, Inc., a Florida corporation.

**1.129. "Stock Issuance and Plan Funding Agreement" or "Agreement"** means that certain Substituted and Modified Stock Issuance and Plan Funding Agreement entered into by and between Iflyusa and the Trustee, subject to Court approval, as of April 26, 2007, a copy of which is attached hereto as Exhibit A.

**1.130. "Unclaimed Property"** means any Distribution of Cash or other property made to the Holder of an Allowed Claim pursuant to this Plan that (a) is returned to the Debtor, Trustee or Liquidating Trustee as undeliverable and no appropriate forwarding address is received within the later of (i) 90 days after the Effective Date and (ii) 90 days after such Distribution is made to such Holder or (b) in the case of a Distribution made in the form of a check, is not negotiated within 90 days and no request for re-issuance is made.  Unclaimed Property shall become Cash available for distribution to Holders of Allowed Claims in accordance with the terms of this Plan.

**1.131. "Unimpaired"** means any Claim that is not Impaired.

**1.132. "USDA"** means the United States Department of Agriculture.

**1.133. "USDA Secured Claim"** means the Secured Claim held by USDA for certain aircraft inspection fees under 21 U.S.C. § 136a(c)(5).

**1.134. "U.S. Trustee"** means the United States trustee appointed under section 581(a)(3) of title 28 of the United States Code to serve in the Southern District of Florida.

13

1.135. **"Voting Deadline"** means the deadline established by the Bankruptcy Court for submitting a Ballot to accept or reject the Plan.

**B.** **Rules of Interpretation.** All references herein to "this Plan" shall be construed, where applicable, to include references to this document and all its exhibits, appendices, schedules and annexes, if any (and any amendments thereto made in accordance with the Bankruptcy Code and the Bankruptcy Rules). Whenever from the context it appears appropriate, pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular paragraph, subparagraph, or clause contained in this Plan. The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included. The captions and headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Any term used in this Plan that is not defined in this Plan, either in Article 1 hereof or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules (with the Bankruptcy Code controlling in the case of a conflict or ambiguity). Without limiting the preceding sentence, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this Plan, unless superseded herein. In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. Unless the context indicates otherwise, all references to "Section" and "Article" shall refer to Sections and Articles, respectively, under this Plan. To the extent that the Disclosure Statement is inconsistent with any provisions contained in this Plan, the provisions in this Plan shall control. To the extent that the Disclosure Statement or Plan are inconsistent with any provisions contained in the Plan Documents or any other separate documents or agreements described in the Disclosure Statement or Plan, the provisions of the Plan Documents or such other documents or agreements shall control. All references to "C.P. No. ___" herein shall refer to the numerical entries on the Court's electronic docket maintained in the Chapter 11 Case.

**C.** **Exhibits.** All Exhibits to this Plan are incorporated into and are a part of this Plan as if fully set forth herein, regardless of when filed.

### ARTICLE II
### TREATMENT OF UNCLASSIFIED AND UNIMPAIRED CLAIMS

2.1. **Allowed Administrative Claims.** Subject to the allowance procedures and deadlines provided in the Plan and except as otherwise provided in the Plan or Order of the Bankruptcy Court, each Holder of an Allowed Administrative Claim shall receive on account of such Claim and in full satisfaction, settlement, release and discharge of and in exchange for such Claim (a) Cash in an amount equal to the full amount of the Allowed Administrative Claim on, or as soon as reasonably practicable after, the later of (i) the Effective Date, (ii) the Allowance Date, and (iii) another date agreed to by the Trustee or Disbursing Agent and the Holder of such Administrative Claim; or (b) such other treatment on such other terms and conditions as may be agreed to in writing by the Trustee or Disbursing Agent and the Holder of such Claim, as the case may be, or as the Bankruptcy Court may order. However, (i) Allowed Administrative

Claims with respect to Ordinary Course Liabilities incurred by the Debtor or Trustee in the ordinary course of business during the Chapter 11 Case shall be paid in accordance with Section 2.2 of this Plan, (ii) Allowed Professional Claims shall be paid in accordance with Section 2.3 of this Plan, (iii) U.S. Trustee Fees shall be paid in accordance with Section 2.4 of this Plan, and (iv) Allowed Cure Claims shall be paid in accordance with Section 4.4 of this Plan.

**2.2.    Ordinary Course Liabilities**.    At the Trustee's option, Ordinary Course Liabilities shall either be paid (i) pursuant to the payment terms and conditions of the particular agreement giving rise to the Ordinary Course Liability or the parties' course of dealing relating thereto, or (ii) on the Effective Date.  With respect to expenses incurred in the normal course of their business with the Debtor or Trustee, Holders of Claims in respect of Ordinary Course Liabilities will not be required to file or serve any request for payment of such Claims.  All Ordinary Course Liabilities that are the obligation of the Trustee and Estate under the Stock Issuance and Plan Funding Agreement shall be paid by the Disbursing Agent from the Iflyusa Cash Consideration and Cash on hand on the Effective Date.  All Ordinary Course Liabilities that are the obligation of the Reorganized Debtor under the Stock Issuance and Plan Funding Agreement shall be paid by the Reorganized Debtor.

**2.3.    Professional Claims**.  Each Professional in the Chapter 11 Case will file with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Confirmation Date by the deadline set by separate Order of the Bankruptcy Court.  Any Professional Claim for which an application or other request for payment is not filed by such deadline shall be discharged and forever barred.  All Allowed Professional Claims shall be paid by the Disbursing Agent from the Iflyusa Cash Consideration and Cash on hand on the Effective Date.

**2.4.    U.S. Trustee Fees.**  The Trustee will pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) within ten (10) days from the entry of an order confirming the Plan for pre-Confirmation periods and simultaneously provide to the U.S. Trustee an appropriate affidavit indicating the cash disbursements for the relevant period.  In addition, the Liquidating Trustee and Disbursing Agent will pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements made by the Liquidating Trustee and Disbursing Agent in connection with all payments made pursuant to the Plan, until the earlier of the closing of this case by the issuance of a final decree by the Bankruptcy Court, or upon the entry of an order by the Bankruptcy Court dismissing the Chapter 11 Case or converting the case to another chapter under the Bankruptcy Code, and the Liquidating Trustee and Disbursing Agent will provide to the U.S. Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating all cash disbursements for the relevant period.  All post-Confirmation U.S. Trustee Fees shall be paid by the Disbursing Agent (from the Iflyusa Cash Consideration and Cash on hand on the Effective Date) or Liquidating Trustee out of the Liquidating Trust Expenses.

**2.5.    Priority Tax Claims.**  Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, each Holder of an Allowed Priority Tax Claim (other than the IRS Priority Claim, which is treated under Class 2 of this Plan) shall receive on account of such Claim and in full satisfaction,

settlement, release and discharge of and in exchange for such Claim (a) Cash in an amount equal to the full amount of the Allowed Priority Tax Claim on, or as soon as reasonably practicable after, the later of (i) the Effective Date, (ii) the Allowance Date, and (iii) another date agreed to by the Trustee or Disbursing Agent and the Holder of such Priority Tax Claim; or (b) such other treatment on such other terms and conditions as may be agreed to in writing by the Trustee or Disbursing Agent and the Holder of such Claim, as the case may be, or as the Bankruptcy Court may order.  All Allowed Priority Tax Claims shall be paid by the Disbursing Agent from the Iflyusa Cash Consideration and Cash on hand on the Effective Date.

      **2.6.   Administrative Claims Bar Date**.  All applications or other requests for payment of Administrative Claims arising on or before the Confirmation Date (other than Professional Claims, Ordinary Course Liabilities, Cure Claims and U.S. Trustee Fees) must have been filed with the Bankruptcy Court and served on the Trustee by the Administrative Claims Bar Date.  Any Administrative Claim for which an application or request for payment was required and not filed by the Administrative Claims Bar Date (January 15, 2007) in accordance with the Administrative Claims Bar Date Order shall be discharged and forever barred.

**ARTICLE III**
**DESIGNATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS;**
**IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS IMPAIRED AND**
**NOT IMPAIRED UNDER THE PLAN**

      **3.1.   General.**  Pursuant to section 1122 of the Bankruptcy Code, a designation of the Classes of Claims and Interests regarding the Debtor are listed below.  A Claim or Interest is designated in a particular Class only to the extent that such Claim or Interest is an Allowed Claim or Interest and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.  The treatment of and consideration to be received by Holders of Allowed Claims and the treatment of Interests pursuant to this Article of the Plan will be in full satisfaction, settlement, release and extinguishment of, and in exchange for, their respective Allowed Claims against or Interests in the Debtor and the Debtor's Estate, except as otherwise expressly provided in this Plan or the Modified Confirmation Order.

      **3.2.   Class 1: Priority Non-Tax Claims (Unimpaired).**  Class 1 consists of all Allowed Claims given priority in payment pursuant to section 507 of the Bankruptcy Code, but not including Priority Tax Claims.  In accordance with section 1129(a)(9)(B) of the Bankruptcy Code, each Holder of an Allowed Class 1 Claim shall receive either (a) Cash in an amount equal to the Allowed amount of its Claim on, or as soon as reasonably practicable after, the later of (i) the Effective Date, (ii) the Allowance Date, and (iii) another date agreed to by the Trustee or Disbursing Agent and such Holder; or (b) such other treatment on such other terms and conditions as may be agreed to in writing by the Trustee or Disbursing Agent and such Holder, as the case may be, or as the Bankruptcy Court may order.  All Allowed Priority Non-Tax Claims shall be paid by the Disbursing Agent from the Iflyusa Cash Consideration and Cash on hand on the Effective Date.  Class 1 is Unimpaired.

      **3.3.   Class 2: IRS Claim (Impaired).**  Class 2 consists of the IRS Claim.  The IRS shall receive:

16

(a) a Distribution of all Cash in the Estate (including the Iflyusa Cash Consideration) on the Effective Date after payment, or establishment of an appropriate reserve for payment, of all Allowed Administrative Claims, Allowed Priority Claims and the Allowed JetGlobal Secured DIP Financing Claim (the "Net Effective Date Cash"), less an amount equal to 10% of the Net Effective Date Cash (calculated as if all filed amounts of Administrative Claims, Priority Claims and the JetGlobal Secured DIP Financing Claim had been allowed in full), which amount shall be transferred to the Liquidating Trust as Liquidating Trust Cash earmarked for payment of Liquidating Trust Expenses; and

(b) an additional amount equal to (i) 50% of the total amount by which the filed amounts of Administrative Claims, Priority Claims or the JetGlobal Secured DIP Financing Claim are reduced (the "Administrative Claims Savings"), while the 50% balance of such total amount shall be transferred to the Liquidating Trust as Liquidating Trust Cash earmarked for payment of Liquidating Trust Expenses until the total amount of Liquidating Trust Cash equals $200,000; and, (ii) after the total amount of Liquidating Trust Cash equals $200,000, 70% of the Administrative Claims Savings, while the 30% balance of such Administrative Claims Savings shall be transferred to the Liquidating Trust for Distribution to the Liquidating Trust Beneficiaries; and

(c) a Distribution equal to 10% of the total Distribution payable by the Liquidating Trust to the Liquidating Trust Beneficiaries; and

(d) the payments received by the Liquidating Trustee in respect of the Outstanding Aeropostal Receivable; provided, however, that in the event that Aeropostal defaults under the Aeropostal Settlement Agreement, then the Liquidating Trustee may, at his sole discretion, either (i) choose to prosecute and enforce his rights under the Aeropostal Settlement Agreement and collect the Aeropostal Receivable, in which event the Net Proceeds recovered in respect of the Aeropostal Receivable shall be split between the IRS (to receive 70% of the Net Proceeds) and the Liquidating Trust (to receive 30% of the Net Proceeds), while the costs of prosecution and collection of the Aeropostal Receivable shall be Liquidating Trust Expenses payable by the Liquidating Trust; or (ii) choose to transfer or abandon his rights under the Aeropostal Settlement Agreement (including his rights to collect the Aeropostal Receivable) to the IRS. Within 10 days after the date of any payment default by Aeropostal under the Aeropostal Settlement Agreement, the Liquidating Trustee shall notify the IRS of such default and the Liquidating Trustee's election pursuant to this Section 3.3(d) by written notice sent by overnight mail to the following address: Steven D. Grimberg, U.S. Department of Justice, Trial Attorney – Tax Division, 555 Fourth Street NW, Suite 6215, Washington, DC 20001.

The Cash Distributions payable to the IRS under (i) Section 3.3(a) and (b) above shall be paid by the Trustee or Disbursing Agent from the Iflyusa Cash Consideration and any available Cash, (ii) Section 3.3(c) above shall be paid by the Liquidating Trustee from the liquidation of the Liquidating Trust Assets in accordance with the Liquidating Trust Agreement, and (iii) Section 3.3(d) above shall be paid by the Liquidating Trustee directly to the IRS, except that in

the event of default, the Liquidating Trustee and counsel for the IRS shall confer regarding where future payments, if any, will be delivered. All Distributions payable to the IRS under Sections 3.3(a) – (c) shall be paid to the following address: Steven D. Grimberg, U.S. Department of Justice, Trial Attorney – Tax Division, 555 Fourth Street NW, Suite 6215, Washington, DC 20001.

Additionally, the Trustee or Liquidating Trustee shall withdraw with prejudice the Trustee's objection to the IRS Claim, and the Trustee and Liquidating Trustee waive and release all Causes of Action, setoffs and surcharges against the IRS.

The treatment proposed herein shall be in full satisfaction and discharge of the IRS Claim, including the IRS Secured Claim, the IRS Priority Claim and the IRS General Unsecured Claim; any deficiency amount shall be waived provided that the IRS shall hold the IRS Beneficial Interest in the Liquidating Trust pursuant to Section 3.3(c) above.

Class 2 is Impaired.

**3.4.    Class 3: DOJ Trust Fund Claims (Impaired).** Class 3 consists of all Claims held by U.S. Customs and Border Protection, Transportation Security Administration and USDA to the extent that such Claims reflect trust fund fees. In respect of the DOJ Trust Fund Claims, the DOJ, on behalf of the Holders of the DOJ Trust Fund Claims, shall (i) receive a portion of the aggregate Distribution payable to the IRS under Section 3.3 of this Plan, in an amount to be agreed upon between the IRS and DOJ; (ii) retain any rights of recovery from the Customs Bond and any available proceeds thereof; and (iii) hold an Allowed Class 10 General Unsecured Claim for the outstanding balance of the Allowed DOJ Trust Fund Claims after application of its Cash payment received from the IRS, any available Customs Bond proceeds and the exercise of any available setoff rights. The Cash distribution payable to the DOJ under clause (i) above shall be paid solely by the IRS; neither the Trustee, Disbursing Agent, Liquidating Trustee nor the Estate shall have any liability for such distribution. The DOJ shall amend any filed proof of claim reflecting a Claim held by Governmental Units represented by the DOJ in the Chapter 11 Case not later than 90 days after the Effective Date, or such later date as may be agreed to by the Liquidating Trustee or that the Bankruptcy Court may order for cause shown, to reflect any change to the amount of such Claim pursuant to clause (iii) above, Section 3.6 hereof or otherwise (including any change in the amount of such Claim as a result of an audit), provided that any such amendment shall only amend the amount of the General Unsecured Claim asserted in such proof of claim, without prejudice to the Liquidating Trustee's rights to object to any such amended proof of claim in accordance with Section 6.1 of this Plan; provided, however, that the Liquidating Trustee shall consult, or use its reasonable best efforts to consult, with the DOJ prior to filing any such objection.

Additionally, the Trustee or Liquidating Trustee shall withdraw the Trustee's objection to the DOJ Trust Fund Claims (without prejudice to the Liquidating Trustee's rights to object to any amended claim filed by the DOJ), and the Trustee and Liquidating Trustee waive and release all Causes of Action, setoffs and surcharges against the DOJ.

Class 3 is Impaired.

18

**3.5.    Class 4: DFAS Secured Claim (Unimpaired)**.  Class 4 consists of the Secured Claim held by DFAS (claim no. 143).  DFAS shall be entitled to assert any valid right of setoff in full and complete satisfaction of its Allowed Secured Claim.  Class 4 is Unimpaired.

**3.6.    Class 5: USDA Secured Claim (Unimpaired)**.  Class 5 consists of the Secured Claim held by USDA for inspection fees under 21 U.S.C. § 136a(c)(5).  In respect of the USDA Secured Claim, the DOJ, on behalf of USDA and in full and complete satisfaction of the USDA Secured Claim, shall (i) receive either (A) a portion of the aggregate Distribution payable to the IRS under Section 3.3 of the Plan, in an amount to be agreed upon between the IRS and DOJ, or (B) such other treatment agreed upon between the DOJ and the IRS; and (ii) hold an Allowed Class 10 General Unsecured Claim in the amount of any deficiency portion of the USDA Secured Claim.  The Cash distribution or other consideration payable to the DOJ under clause (i) above shall be paid solely by the IRS; neither the Trustee, Disbursing Agent, Liquidating Trustee nor the Estate shall have any liability for such distribution or consideration payable to the DOJ under clause (i) above.  Class 5 is Unimpaired.

**3.7.    Class 6: Security Deposit Claims (Unimpaired)**.  Class 6 consists of each Allowed Secured Claim that is secured by a security deposit held by the Holder of such Claim to secure the Debtor's payment obligations in respect of such Claim, including (to the extent Allowed) the Security Deposit Claims filed by (i) Miami-Dade Aviation Department in the amount of $17,545.83 (included in claim no. 88), (ii) MSA V c/o AWAS Aviation in the amount of $250,000 (included in claim no. 103), (iii) Arinc Inc. in the amount of $16,297.00 (claim no. 113), (iv) National Union Fire Insurance Company of Pittsburgh P.A., et al (claim no. 131), and any other Allowed Security Deposit Claims.  Each Holder of an Allowed Class 6 Security Deposit Claim shall receive and retain the security deposit securing its Claim in full and complete satisfaction of its Allowed Secured Claim.  Class 6 is Unimpaired.

**3.8.    Class 7:  Secured Financing Claims (Unimpaired)**.  Class 7 consists of Allowed Secured Claims held by parties to secured financing agreements with the Debtor and secured by collateral that will vest in the Reorganized Debtor on the Effective Date, including (to the extend Allowed) the Secured Financing Claims filed by (i) Ford Motor Credit Company (claim nos. 136 and 137) and governed by the Court's Corrected Order on Ford Motor Credit Company Relief From Stay, C.P. No. 311; (ii) First Insurance Funding Corp. (claim no. 128), and any other Allowed Secured Financing Claims.  Each Holder of an Allowed Class 7 Secured Financing Claim shall receive, at the option of the Trustee or Reorganized Debtor as applicable, one of the following forms of treatment in full and complete satisfaction of its Allowed Secured Claim: (i) retain its lien or security interest in all Property that secures the Allowed Class 7 Claim, and the Reorganized Debtor shall perform the Debtor's obligations in accordance with the agreement(s) and/or Court order(s) that give rise to such Allowed Class 7 Claim; (ii) receive the collateral which secures its Claim; or (iii) receive such other treatment as agreed to between the Reorganized Debtor and such Holder.  Any deficiency claims in respect of Allowed Class 7 Claims will be treated as Class 10 General Unsecured Claims.  Class 7 is Unimpaired.

**3.9.    Class 8:  JetGlobal Secured DIP Financing Claim (Impaired)**.  Class 8 consists of the alleged Secured Claim held by JetGlobal in respect of its post-petition loan

advanced to the Debtor, which Claim is disputed by the Trustee. JetGlobal shall receive a Cash Distribution in the amount of $300,000 on, or as soon as reasonably practicable after, the Effective Date in full and complete satisfaction of its Claims. Class 8 is Impaired.

**3.10. Class 9: Other Secured Claims (Unimpaired).** Class 9 consists of any Allowed Secured Claims other than the IRS Secured Claim, DFAS Secured Claim, USDA Secured Claim, Security Deposit Claims and Secured Financing Claims. Each Holder of an Allowed Class 9 Other Secured Claim shall receive, at the option of the Trustee or Reorganized Debtor as applicable, one of the following forms of treatment in full and complete satisfaction of its Allowed Secured Claim:

(a)    The Trustee or Disbursing Agent shall pay to the Holder Cash equal to the amount of its Allowed Secured Claim on, or as soon as reasonably practicable after, the later of (i) the Effective Date and (ii) the Allowance Date, from the Iflyusa Cash Consideration and Cash on hand on the Effective Date;

(b)    The Trustee or Disbursing Agent shall abandon the Property that secures the Allowed Class 9 Claim to the Holder of such Claim on, or as soon as reasonably practicable after, the later of (i) the Effective Date and (ii) the Allowance Date;

(c)    The Holder of the Allowed Class 9 Claim shall retain its lien or security interest in all Property that secures the Allowed Class 9 Claim, and the Reorganized Debtor shall perform the Debtor's obligations in accordance with the documents that give rise to such Allowed Class 9 Claim; or

(d)    The Trustee, Disbursing Agent or Reorganized Debtor shall provide such other treatment as the Trustee, Disbursing Agent or Reorganized Debtor and such Holder shall have agreed upon in writing.

Any deficiency claims in respect of Allowed Class 9 Claims will be treated as Class 10 General Unsecured Claims. Class 9 is Unimpaired.

**3.11. Class 10: General Unsecured Claims (Impaired).** Class 10 consists of all Allowed General Unsecured Claims. Each Holder of an Allowed Class 10 Claim shall receive a Pro Rata Distribution from 90% of the Net Proceeds of the liquidation of the Liquidating Trust Assets (after payment of 10% of such Net Proceeds to the IRS in accordance with Section 3.3(c) of this Plan). Class 10 is Impaired.

**3.12. Class 11: Equity Interests (Impaired).** Class 11 consists of all Holders of Allowed Equity Interests in the Debtor. All Class 11 Equity Interests shall be canceled and extinguished as of the Effective Date, and the Holders thereof shall not be entitled to receive or retain any Distributions or property on account of such Equity Interests. Class 11 is Impaired.

## ARTICLE IV
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**4.1.    Assumption.**  As of the Effective Date, each of those Executory Contracts identified on the Assumed Contracts Schedule (defined herein as the "Assumed Contracts") shall be deemed assumed by the Debtor and Reorganized Debtor pursuant to section 365(a) of the Bankruptcy Code, except as otherwise provided in Section 4.4 of this Plan.  The Modified Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumption of the Assumed Contracts as of the Effective Date.

**4.2.    Rejection.**  Except for those Executory Contracts (a) that are assumed pursuant to Section 4.1 of this Plan, (b) that are the subject of prior orders of the Bankruptcy Court providing for their assumption or rejection pursuant to section 365 of the Bankruptcy Code, or (c) that are the subject of a pending motion before the Bankruptcy Court with respect to the assumption of such Executory Contracts, as of the Confirmation Date all Executory Contracts of the Debtor are deemed rejected pursuant to section 365 of the Bankruptcy Code.

**4.3.    Rejection Claims.**  The Confirmation Order constitutes an order of the Bankruptcy Court approving the rejection of Executory Contracts being rejected pursuant to Section 4.2 of this Plan and section 365 of the Bankruptcy Code.  **Pursuant to Bankruptcy Rule 3002(c)(4) and Local Rule 6006-1, any Rejection Claim must have been filed with the Court within 30 days after the date of entry of the Confirmation Order, or such Claim is forever barred and will not be enforceable against the Debtor, the Estate, the Reorganized Debtor, the Liquidating Trust or their respective assets, and no distribution pursuant to the Plan or otherwise will be made on account of such Claim.**  The Liquidating Trustee reserves all rights to object to any Rejection Claim, and any such objection shall be subject to the claims objection and administration procedures set forth in Section 6.1 of this Plan.  All Allowed Rejection Claims shall be treated as Allowed Class 10 General Unsecured Claims.

**4.4.    Cure Payments.**  Any monetary defaults under the Assumed Contracts shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by either: (a) payment by the Reorganized Debtor of an undisputed Cure amount in Cash on or as soon as reasonably practicable after the Effective Date; or (b) payment by the Reorganized Debtor of an undisputed Cure amount on such other terms as may be agreed to by the Reorganized Debtor and the non-Debtor party to such Assumed Contract, or ordered by the Court.  The Reorganized Debtor shall be solely liable for any and all Cure obligations in respect of the Assumed Contracts; the pre-Effective Date Debtor, the Trustee and the Liquidating Trust shall have no liability or obligation to pay any Cure amounts in respect of the Assumed Contracts.

The proposed Cure amount for each Assumed Contract is listed on the Assumed Contracts Schedule and, pursuant to the Confirmation Order, has been fixed as the Reorganized Debtor's Cure obligation for each corresponding Assumed Contract pursuant to section 365(b)(1) of the Bankruptcy Code, and the Confirmation Order constitutes an Order approving such Cure obligation.  In the event that the Bankruptcy Court determines that the Cure amount due in respect of any Assumed Contract is greater than the amount listed on the Assumed Contracts Schedule, or that any Assumed Contract is not assumable on terms and conditions acceptable to Iflyusa and/or the Reorganized Debtor, then the Reorganized Debtor may, in its

21

sole and absolute discretion, elect not to assume such Executory Contract by providing written notice to the non-Debtor party thereto. **Any such Executory Contract shall be deemed rejected as of the Effective Date and any Rejection Claim with respect thereto must be filed within 30 days after the date of the written notice of non-assumption provided by the Reorganized Debtor, but is otherwise subject to the provisions of Section 4.3 of this Plan.**

## ARTICLE V
## LIQUIDATING TRUST

**5.1.    Establishment of the Liquidating Trust.**

**5.1.1    General.**  Pursuant to the Plan, the Debtor and Trustee shall create the Liquidating Trust.  The Liquidating Trust Agreement shall be executed by all necessary parties thereto and shall be filed with the Bankruptcy Court prior to the Confirmation Hearing.

**5.1.2    Transfer of Certain Assets to the Liquidating Trust.**  On the Effective Date, the Debtor shall transfer and convey the Excluded Assets to the Liquidating Trust, free and clear of all Claims, liens, interests and encumbrances, except as expressly provided in the Plan, which shall be held, maintained and administered solely and exclusively by the Liquidating Trustee.  The Liquidating Trust Assets shall consist of the Excluded Assets (excluding the Customs Bond), which will not vest in the Reorganized Debtor.  The Debtor, Iflyusa, the Reorganized Debtor and Liquidating Trustee shall be authorized and directed to execute any and all documents necessary to effectuate the transfer of the Liquidating Trust Assets.  The Liquidating Trustee shall have sole and exclusive standing and authority to commence, prosecute, settle or otherwise dispose of the Debtor's Causes of Action transferred to the Liquidating Trust under the Plan.

**5.1.3    Designation of Liquidating Trustee.**  Kenneth A. Welt shall serve as the Liquidating Trustee, with such appointment to become effective as of the Effective Date.  Mr. Welt shall secure a bond for the benefit of the Liquidating Trust in an amount that is satisfactory to the U.S. Trustee.  As of the Effective Date, the Liquidating Trustee shall have sole authority to act on behalf of the Liquidating Trust in accordance with the Plan and Liquidating Trust Agreement.  The U.S. Trustee is not responsible for monitoring or overseeing the Liquidating Trustee.  The U.S. Trustee has standing to appear in all matters and, if appropriate, seek removal of the Liquidating Trustee, modification of the Plan and/or conversion of the Chapter 11 Case.

**5.2.    Purpose of Liquidating Trust.**  The Liquidating Trust established pursuant to the Liquidating Trust Agreement is established for the purpose of liquidating the Liquidating Trust Assets for the benefit of Allowed General Unsecured Creditors under the Plan and the IRS Beneficial Interest, including the prosecution of Causes of Action and Objections to Claims, as appropriate.  The Liquidating Trust shall have no objective of continuing or engaging in any trade or business except to the extent reasonably necessary to comply with, and consistent with, the purpose of the Liquidating Trust.

**5.3.    Duties and Powers of Liquidating Trustee.**  Except as otherwise provided in this Plan or the Liquidating Trust Agreement (including the provisions for seeking Court approval under Section 5.15 of this Plan), immediately upon the Effective Date the Liquidating

Trustee shall have the power to perform the acts necessary to fulfill his obligations to the Liquidating Trust and General Unsecured Creditors under the terms of the Plan and the Liquidating Trust Agreement, including without limitation:

(a)     To perfect and secure the right, title, and interest of the Liquidating Trust in the Liquidating Trust Assets.

(b)     To reduce all Liquidating Trust Assets to the possession of the Liquidating Trust and to hold the same.

(c)     To manage and protect the Liquidating Trust Assets pending their prosecution or sale and conversion into Cash.

(d)     To pay and discharge any costs, expenses, Liquidating Trustee's fees or obligations deemed necessary to preserve the Liquidating Trust Assets or any part thereof or to preserve the Liquidating Trust.

(e)     To employ such Professionals, including without limitation, attorneys, accountants, engineers, agents, brokers and tax specialists, and such other consultants and independent contractors, as may be deemed necessary, and to pay from the liquidation proceeds the reasonable costs and expenses of such persons. The Liquidating Trustee shall be entitled to hire Professionals of his choosing, notwithstanding that the Liquidating Trustee may be a partner or associate of, or otherwise affiliated with, a particular firm to be retained.  Professionals retained by the Liquidating Trustee shall file applications for retention and compensation as described in Section 5.4 hereof.

(f)     To sue and be sued and to settle, compromise or adjust by mediation, arbitration or otherwise any disputes, claims, or controversies in favor of or against the Liquidating Trust.

(g)     To prepare and file tax returns and other filings on behalf of the Liquidating Trust and any corporations for which the Liquidating Trustee has responsibility.

(h)     To release, convey or assign any right, title or interest in or about the Liquidating Trust Assets.

(i)     To sell and otherwise convert the Liquidating Trust Assets into Cash and to maintain the Cash proceeds of such sales in demand and short term deposits in any federal insured bank until such time as said funds are distributed as specified under the Plan and the Liquidating Trust Agreement.

(j)     To authorize and make Distributions to Holders of Allowed General Unsecured Claims as described under the Plan and the Liquidating Trust Agreement.

(k)    To take any other action reasonably necessary to cause the liquidation of the Liquidating Trust Assets to Cash pursuant to the Plan, or to abandon any assets deemed burdensome or of inconsequential value to the Liquidating Trust.

(l)    To institute and prosecute on behalf of the Liquidating Trust any Objections to Claims, proceedings to estimate Claims, or Causes of Action which could be brought by a trustee or debtor in possession under the Bankruptcy Code.

(m)    Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, to prosecute the Causes of Action, and to commence or continue, in any appropriate court or tribunal, any suit or other proceeding for the enforcement of such Causes of Action, and if deemed appropriate by the Liquidating Trustee, to compromise or settle such litigation in accordance with the Liquidating Trust Agreement.

(n)    To prepare and file with the Bankruptcy Court the Final Report and seek the entry of a final decree closing the Chapter 11 Case.

(o)    To pay any fees to or file any reports or affidavits with the U.S. Trustee, without further order of the Bankruptcy Court.

(p)    Pending transfer of the Liquidating Trust Assets to the Liquidating Trust, and subject to any necessary regulatory approvals and/or servicing consents, the Liquidating Trustee, in his sole discretion, may take actions as are necessary to protect the Liquidating Trust's interests pursuant to the terms of the Liquidating Trust Agreement.

**5.4.    Compensation of Liquidating Trustee and Professionals.**    Mr. Welt, as Liquidating Trustee or Disbursing Agent, shall be compensated pursuant to the statutory formula delineated in section 326(a) of the Bankruptcy Code, and shall be authorized to pay himself compensation and reimburse himself for expenses on a monthly basis; provided, however, that the original Cash transferred to the Liquidating Trust shall not be included in calculating the Liquidating Trustee's or Disbursing Agent's compensation. Disbursements made by the Trustee or Disbursing Agent on or prior to the Effective Date shall be accounted for in calculating the basis of the Liquidating Trustee's statutory commission. The Liquidating Trustee shall file a fee application with the Bankruptcy Court once every 120 days. The members of the Post-Confirmation Committee shall receive no compensation for their services but may request reimbursement for reasonable out-of-pocket expenses incurred in performance of their duties.

Upon the Effective Date, the employment of all Professionals retained by the Debtor, Trustee or Committee pursuant to 11 U.S.C. §§ 327, 328 or 1103 shall be terminated without further Court order. The Liquidating Trustee may retain such Professionals, and other consultants or independent contractors, as he deems appropriate. Professionals retained by the Liquidating Trustee shall file applications for retention in accordance with the standards set forth by the Bankruptcy Code and the Bankruptcy Rules; Professionals retained by the Trustee or Committee during the Chapter 11 Case, however, need not file retention applications. No more frequently than once every thirty (30) days, the Liquidating Trustee's counsel and any other Professional retained by the Liquidating Trustee shall submit his, her or its statement(s) for

services rendered and costs incurred to the Liquidating Trustee and the Post-Confirmation Committee for review and approval. The statements do not need to conform to the U.S. Trustee's guidelines for fee applications, but must contain adequate information to enable review of the reasonableness of the fees and costs incurred. The Post-Confirmation Committee and the Liquidating Trustee shall have ten (10) days to object to any such statement. If no objection is timely served upon the Professional in respect of any such statement, then the Liquidating Trustee shall promptly pay 80% of the fees and 100% of the costs reflected in such statement as an interim payment.

In addition, Professionals retained by the Liquidating Trustee shall file fee applications with the Bankruptcy Court once every 120 days. The Bankruptcy Court shall retain jurisdiction to adjudicate any disputes with respect to any Professional's fees or costs.

**5.5.    Distributions by Liquidating Trustee.**  Subject to the provisions in this Section 5.5 governing the timing of Distributions made by the Liquidating Trustee, the procedures governing Distributions made by the Liquidating Trustee are set forth in Article VIII of this Plan.

**5.5.1. Interim Distributions.**  In his sole and absolute discretion, the Liquidating Trustee may make initial and subsequent interim Distributions to the Holders of Allowed General Unsecured Claims, on a Pro Rata basis, from the Net Proceeds of the liquidation of the Liquidating Trust Assets, less the amount of the Liquidating Trust Reserve. The Liquidating Trustee shall use his continuing best efforts to dispose of the Liquidating Trust Assets and make timely Distribution(s) from the Net Proceeds thereof, and shall not unduly prolong the duration of the Liquidating Trust. During its existence, the Liquidating Trust shall not retain Cash in excess of a reasonable amount necessary to fund the Liquidating Trust Reserve; provided, however, that the Liquidating Trustee shall only make Distributions when there is sufficient Cash in the Liquidating Trust, in sufficient excess of the total amount of the Liquidating Trust Reserve, to make substantial Distributions to Holders of Allowed General Unsecured Claims, which Distributions he may or may not make in his sole and absolute discretion.

**5.5.2. Final Distribution.**  Upon the termination of the Liquidating Trust, the Liquidating Trustee shall make a final Distribution to Holders of Allowed General Unsecured Claims, on a Pro Rata basis, of all remaining Liquidating Trust Assets after or in conjunction with the payment and exhaustion of the outstanding Liquidating Trust Reserve.

**5.5.3. Right to Make Single Distribution.**  Notwithstanding any other provision of this Plan, the Liquidating Trustee may elect to resolve all Disputed Claims prior to making any Distributions to Holders of Allowed General Unsecured Claims.

**5.6.    Tax Status of Liquidating Trust.**  It is intended that the Liquidating Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of § 301.7701-4(d) of the Treasury Regulations. All parties, including the Debtor, Liquidating Trustee and Holders of Allowed Claims, shall treat the transfers in trust described herein as transfers to the Liquidating Trust Beneficiaries for all purposes of the Internal Revenue Code (including, §§ 61(12), 483, 1001, 1012, and 1274). All parties, including the Debtor, Liquidating

Trustee and Holders of Allowed Claims, shall treat the transfers in trust as if all the transferred assets, including all the Liquidating Trust Assets, had been first transferred to the Holders of Allowed General Unsecured Claims and then transferred by the Holders of Allowed General Unsecured Claims to the Liquidating Trust. The Holders of Allowed General Unsecured Claims shall be treated for all purposes of the Internal Revenue Code as the grantors of the Liquidating Trust and the owners of the Liquidating Trust. All income of the Liquidating Trust shall be taxed directly to the Holders of Allowed General Unsecured Claims. The Liquidating Trustee shall file returns for the Liquidating Trust as a grantor trust pursuant to Section 1.671-4(a) or (b) of the Treasury Regulations. The parties hereto, including the Liquidating Trust and the Holders of Allowed General Unsecured Claims, shall value the Liquidating Trust Assets consistently and such valuations shall be used for all federal income tax purposes. The Holders of Allowed General Unsecured Claims shall be responsible for payment of any taxes due with respect to the operations of the Liquidating Trust. The Liquidating Trust Agreement shall provide that each Holder of an Allowed General Unsecured Claim is responsible for reporting and paying any federal income tax due on its proportionate share of the Liquidating Trust income for a given year, if appropriate. The parties to the Liquidating Trust Agreement shall value any Assets transferred to the Liquidating Trust on a consistent basis and use these valuations for all federal income tax purposes.

**5.7.    Accounting to Record Beneficiaries.** The Liquidating Trustee shall at all times maintain a register of the names, addresses and percentage ownership of each Liquidating Trustee Beneficiary. The Liquidating Trustee shall keep an accounting of receipts and disbursements, and shall file with the Bankruptcy Court and serve on each member of the Post-Confirmation Committee, at least every 120 days, a summary of receipts and disbursements of the Liquidating Trust. Each such summary shall identify receipts and disbursements in reasonable detail, and shall identify the source of all receipts and the recipients of all disbursements. Upon written demand by the Post-Confirmation Committee, the Liquidating Trustee shall make the books and records of account open to inspection at reasonable times by the Post-Confirmation Committee or its agents. As soon as practicable after termination of the Liquidating Trust, the Liquidating Trustee shall provide to Holders of Allowed General Unsecured Claims and the U.S. Trustee, and file with the Bankruptcy Court, a final account and report of Liquidating Trust administration.

**5.8.    Liquidating Trust Reserve.** The Liquidating Trustee shall be authorized and directed to maintain in a Liquidating Trust Reserve, Cash necessary to (a) pay the actual and anticipated Liquidating Trust Expenses, (b) fund the Disputed Claims Reserve, and (c) pay Holders of Allowed Claims whose Cash Distributions are unclaimed, subject to the terms of Section 8.8 hereof. Any funds remaining in the Liquidating Trust Reserve immediately prior to the Final Distribution shall be included in the Final Distribution unless earmarked for payment of Liquidating Trust Expenses. In accordance with the formula set forth is Section 3.3(a) and (b) of this Plan, the Liquidating Trust Cash will be transferred to the Liquidating Trust and earmarked to fund Liquidating Trust Expenses; no portion of this amount will become available for Distribution to Allowed General Unsecured Creditors under the Plan and Liquidating Trust Agreement unless and until the Liquidating Trust Expenses are paid in full.

**5.9.    Limitations on Powers of Liquidating Trustee.** Notwithstanding anything

contained in the Plan or the Liquidating Trust, the Liquidating Trustee shall not engage the Liquidating Trust in any activity that constitutes the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust and to maximize the value of the Liquidating Trust Assets. Actions taken by the Liquidating Trustee to defend and pursue claims or Causes of Action held as Liquidating Trust Assets shall be deemed consistent with such liquidating purpose. In addition, actions taken to collect the Aeropostal Receivable, enforce the terms of the Aeropostal Settlement Agreement, and dispose of the any of the Liquidating Trust Assets shall also be consistent with such purpose. The Liquidating Trustee's authority to invest the Liquidating Trust Assets pending distribution shall be limited to demand and time deposits in banks or savings institutions, or other temporary, liquid investments such as short term certificates of deposit or treasury bills.

**5.10. Limitations on Liability of Liquidating Trustee and Post-Confirmation Committee.** Except in the case of fraud, willful misconduct, bad faith, gross negligence or breach of fiduciary duty, the Liquidating Trustee and Post-Confirmation Committee shall not be liable for any loss or damage by reason of any action taken or omitted by her, or for any act or omission made in reliance upon the books and records of the Liquidating Trust or upon information or advice given by his Professionals; provided, however, that nothing herein shall relieve the Liquidating Trustee from his duty and responsibility to liquidate the Liquidating Trust Assets and make the Distributions required hereunder. The Liquidating Trustee is required to furnish a bond or to secure proper performance of her duties hereunder of a kind similar to that procured by a trustee under the Bankruptcy Code. In addition, the Liquidating Trustee shall be indemnified by and receive reimbursement from the Liquidating Trust Assets against and on account of any and all loss, liability, expense or damage which he may incur or sustain, without fraud, willful misconduct, bad faith or gross negligence, in the exercise and performance of any of his powers and duties hereunder. In the absence of fraud, willful misconduct, bad faith or gross negligence, the Liquidating Trustee may rely, and shall be fully protected personally in acting, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that he has no reason to believe to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of facsimile transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy herself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt. The obligation of the Liquidating Trustee to hold the Liquidating Trust Assets in trust for the Liquidating Trust Beneficiaries in accordance with the Liquidating Trust Agreement and to make the distributions mandated herein shall not be deemed to be Liquidating Trust liabilities. The Liquidating Trustee may at any time seek instructions from the Bankruptcy Court concerning the acquisition, management or disposition of the cash and/or other property held by the Liquidating Trust.

**5.11. Rights, Powers and Duties of Liquidating Trust Beneficiaries.** Each Liquidating Trust Beneficiary shall hold a percentage beneficial interest in the Liquidating Trust Assets equal to his, her or its Pro Rata beneficial interest in Class 10 (Allowed General Unsecured Claims) under the Plan. Each Holder of a Disputed Claim or Pending Claim shall receive a Pro Rata beneficial interest in the Liquidating Trust Assets when and only to the extent that any such Disputed Claim or Pending Claim becomes an Allowed Claim. The Liquidating Trust Beneficiaries' interest in the Liquidating Trust Assets shall not be transferable except

pursuant to the laws of descent and distribution or otherwise by operation of law. Ownership of a beneficial interest hereunder shall not entitle any Liquidating Trust Beneficiary to any title in or to the Liquidating Trust Assets as such, or to any right to prosecute or liquidate individually the Liquidating Trust Assets.

**5.12.   Resignation/Removal/Replacement of Liquidating Trustee.**  The Liquidating Trustee may resign and be discharged of his responsibilities created under the Liquidating Trust Agreement by giving thirty (30) days' prior written notice to the Post-Confirmation Committee and filing such notice with the Bankruptcy Court.  In addition, the Liquidating Trustee may be removed by a vote of the majority of the members of the Post-Confirmation Committee, subject to Bankruptcy Court approval.  The U.S. Trustee may, by motion filed with the Bankruptcy Court, also seek removal of the Liquidating Trustee for cause and upon notice and a hearing.  In the event of the resignation or removal of the Liquidating Trustee, a successor trustee shall be appointed upon a vote of the majority of the members of the Post-Confirmation Committee.  The resignation or removal of the Liquidating Trustee shall not be effective, unless otherwise ordered by the Bankruptcy Court, until a successor Liquidating Trustee has been elected and accepts such appointment.  The Liquidating Trustee shall be entitled to payment of any unpaid compensation and unreimbursed expenses upon resignation or removal.  The rights, duties and powers of any successor trustee shall be governed by the Liquidating Trust Agreement.  No successor trustee shall be liable for any act or omission of any previous trustee.

**5.13.   Duration of Liquidating Trust.**  Upon full administration of the Liquidating Trust Assets, and the satisfaction as far as possible of all remaining liabilities of the Liquidating Trust, in accordance with the Plan, the Liquidating Trustee, subject to Bankruptcy Court approval, shall: (i) terminate the Liquidating Trust, by filing written notice of termination with the Bankruptcy Court and providing such notice to the Liquidating Trust Beneficiaries and the U.S. Trustee, which notice shall include a Final Report; and (ii) thereupon be forever discharged of and released from all power, duties and responsibilities under the Liquidating Trust Agreement and the Plan.  Every effort shall be made to effectuate such termination no later than the time reasonably necessary to accomplish the Liquidating Trust's purpose of liquidating the Liquidating Trust Assets and distributing the Net Proceeds thereof to the Liquidating Trust Beneficiaries in accordance with the Liquidating Trust Agreement and the Plan, and in no event shall the Liquidating Trust continue for more than five (5) years after the Effective Date without further order of the Bankruptcy Court.  After the Liquidating Trust has been fully administered, the Liquidating Trustee shall file a Final Report and seek a final decree closing the Chapter 11 Case pursuant to 11 U.S.C. § 350 and Bankruptcy Rule 3022.

**5.14.   Payment of Costs/Expenses.**  Subject to the Plan and the Liquidating Trust Agreement, all costs, expenses, and obligations incurred by the Liquidating Trustee in administering the Liquidating Trust or in any manner connected, incidental or related thereto shall be a charge against the Liquidating Trust.  The Liquidating Trustee, upon being satisfied as to the correctness and reasonableness of any and all such costs, expenses and obligations, shall approve and direct the payment thereof prior to any Distribution to the Liquidating Trust Beneficiaries as herein provided, or shall maintain an adequate reserve as part of the Liquidating Trust Reserve for such payments prior to the making of any Distributions to the Liquidating Trust Beneficiaries.

**5.15.    Court Approval.**    The Liquidating Trustee shall file a motion with the Bankruptcy Court and serve the motion upon the Post-Confirmation Committee and the Office of the U.S. Trustee, by United States mail, whenever he intends to sell or otherwise dispose of any of the Liquidating Trust Assets or settle claims or controversies relating to Liquidating Trust Assets, including any Causes of Action, unless the proposed action involves a claim or controversy which has a face value of $25,000 or less. Such actions shall be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the Bankruptcy Rules. The motion for Court approval shall describe with reasonable particularity the action proposed to be taken and why such action is in the best interests of General Unsecured Creditors. Nothing herein shall restrict the Liquidating Trustee's right to submit any other matter regarding the Liquidating Trust, the Liquidating Trust Assets, or the Chapter 11 Case for Court approval, in his sole discretion, consistent with the Bankruptcy Court's retained jurisdiction.

**5.15.1 Objections to Actions by Liquidating Trustee.**    With respect to proposed actions by the Liquidating Trustee that are submitted by motion for Bankruptcy Court approval, pursuant to Section 5.15 of the Plan or otherwise, any party in interest seeking to object to any such proposed action must follow the procedures set forth in the Local Rules of the Bankruptcy Court. In the event any party in interest objects to any other action proposed to be taken by the Liquidating Trustee, such party shall: (i) file an objection with the Bankruptcy Court; (ii) request a hearing from the Bankruptcy Court; and (iii) serve a copy of the objection and notice of hearing on the Liquidating Trustee, the Post-Confirmation Committee and the U.S. Trustee, so as to be received no later than ten (10) days after the Liquidating Trustee gives notice of such proposed action. If no timely objection is made in strict compliance with this section of the Plan, the Liquidating Trustee shall be deemed authorized to take such proposed action without further notice or order of the Bankruptcy Court.

**5.16.    Section 1145 Determination.**    Confirmation of the Plan shall constitute a determination, in accordance with section 1145 of the Bankruptcy Code, that, except with respect to an entity that is an underwriter as defined in section 1145(b) of the Bankruptcy Code, section 5 of the Securities Act of 1933, as amended, and any state or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, broker or dealer in, a security, does not apply to the offer or transfer under the Plan of beneficial interests in the Liquidating Trust in exchange for Claims against or Interests in the Debtor.

**5.17.    Section 1146 Exemption.**    To the fullest extent permitted under section 1146(a) of the Bankruptcy Code, the execution, delivery or recording of an instrument of transfer under the Plan or Liquidating Trust Agreement, or the transfer or sale of any real, personal or other Property by the Debtor, Trustee, Reorganized Debtor or Liquidating Trustee shall be considered a transfer under the Plan and shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Modified Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.

## ARTICLE VI
## POST-CONFIRMATION LITIGATION AND CLAIMS ADMINISTRATION

**6.1.    Objections to Claims and Interests.**  The Liquidating Trustee has the authority to file, settle, compromise, withdraw, arbitrate, mediate or litigate Objections to Claims and Interests pursuant to the Bankruptcy Code, the Bankruptcy Rules, and this Plan.  To the extent that an Objection to a Claim filed by the Trustee or Committee is pending and not resolved as of the Effective Date, the Liquidating Trustee may prosecute such pending Objection to Claim on and after the Effective Date.  After the Effective Date, the Liquidating Trustee may file and prosecute Objections to Claims.  Confirmation of the Plan shall have no *res judicata* or other preclusive effect on the Liquidating Trustee's power to object to and contest the allowance of any Claims or Interests on any grounds, including, without limitation, equitable subordination or setoff.  The Liquidating Trustee shall be substituted as the real party in interest for any Objections to Claims filed by the Trustee or Committee prior to the Effective Date for which a Final Order has not been entered, for which an appeal of a Final Order is pending, or for any other pending litigation in which the Trustee or Committee is a party.

An Objection to the allowance of a Claim or Interest shall be made in writing and may be filed with the Bankruptcy Court at any time not later than the Claim Objection Deadline in accordance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.  The Claim Objection Deadline may be extended by the Bankruptcy Court for cause shown after notice and a hearing.

**6.2.    Deadline for Responding to Objections to Claims or Interests.**  Within 30 days after service of an Objection, the Holder of a Claim or Interest whose Claim or Interest has been objected to must file with the Bankruptcy Court and serve upon the Liquidating Trustee a written response to such Objection.  Failure to file such a response within the 30-day time period shall constitute cause for the Bankruptcy Court to sustain the Objection against the non-responding party and grant the relief requested in the Objection to the Claim or Interest.

**6.3.    Estimation of Claims or Interests.**  Prior to the Effective Date, the Trustee or Committee may request that the Bankruptcy Court estimate any Claim for purposes of allowance pursuant to section 502(c) of the Bankruptcy Code.  After the Effective Date, the Liquidating Trustee may request that the Bankruptcy Court estimate any Claim for purposes of allowance pursuant to section 502(c) of the Bankruptcy Code.  The confirmation of the Plan shall have no *res judicata* or other preclusive effect on the Liquidating Trustee's power to object to or seek estimation of any Claims on any grounds, including, without limitation, equitable subordination or setoff.

**6.4.    Causes of Action.**  On the Effective Date, all of the Debtor's Causes of Action, including, without limitation, Avoidance Actions and those Causes of Action identified in Article V of the Disclosure Statement, shall be transferred to the Liquidating Trust, and the Liquidating Trustee, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, shall have exclusive standing and authority to commence, file, prosecute, settle, compromise, withdraw, arbitrate, mediate or litigate any and all Causes of Action and rights that he has, as successor to the Debtor or otherwise, against any Person, and on the Effective Date shall be substituted as plaintiff in any action or proceeding commenced by the Debtor or Trustee prior to the Effective Date which

30

remains pending on the Effective Date in respect of any such Causes of Action.

## ARTICLE VII
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

**7.1.    Stock Issuance and Plan Funding Agreement.**  As of the Effective Date, all existing common stock of Falcon Air shall be canceled and extinguished.  On April 26, 2007, the Trustee and Iflyusa entered into the Stock Issuance and Plan Funding Agreement, a copy of which is attached hereto as Exhibit A and fully incorporated into this Plan as a part hereof.  The significant terms of the Stock Issuance and Plan Funding Agreement are summarized as follows:

- **Acquisition of Reorganized Falcon Air Stock**.  At Closing, the Trustee shall issue 100% of the capital stock of Reorganized Falcon Air to Iflyusa, which will result in Iflyusa owning and controlling Reorganized Falcon Air.

- **Cash Consideration**.  At Closing, Iflyusa will pay the Estate a Cash purchase price of $3.0 million plus certain other consideration described in the Agreement.

- **Deposit**.  Iflyusa paid to the Trustee a cash deposit in the amount of $1.5 million pursuant to paragraph 7(a)(i) of the Agreement, which shall be credited against the cash purchase price at closing except as otherwise provided in the Agreement.

- **Excluded Assets**.  Certain of the Debtor's assets, specifically enumerated and defined in Article I of this Plan as the "Excluded Assets," will not vest in the Reorganized Debtor and will be transferred to the Liquidating Trust on the Effective Date.

- **Assumed Contracts**.  As of the Effective Date, those Assumed Contracts identified on the Assumed Contracts Schedule shall be assumed by and vest in the Reorganized Debtor.

- **Closing Date**.  Closing shall occur on June 8, 2007, or sooner at Iflyusa's election, and shall be the same date as the Effective Date subject to the conditions to occurrence of the Effective Date set forth in Section 9.1 of this Plan. The Agreement is terminable by either party if the Modified Confirmation Order is not entered by May 1, 2007, or the Closing does not occur by June 8, 2007 if neither party is in default (unless such dates are extended by written consent of the parties).

**7.2.    Vesting of Assets in Reorganized Falcon Air**.  On the Effective Date, all Assets and Property of the Debtor and the Estate, except for those Excluded Assets which will be transferred to the Liquidating Trust on the Effective Date, shall vest in the Reorganized Debtor free and clear of all Claims, liens, interests and encumbrances that arose prior to the Closing Date, except as otherwise provided in the Plan.  The Reorganized Debtor, as owned and controlled by Iflyusa pursuant to the Stock Issuance and Plan Funding Agreement, will continue to exist after the Effective Date as a separate corporate entity, with all of the powers of a corporation under applicable law in the jurisdiction in which the Debtor is incorporated or otherwise formed and pursuant to its certificate of incorporation and bylaws or other organizational documents in effect before the Effective Date, as such documents are amended by

31

or pursuant to the Plan. Notwithstanding, the Reorganized Debtor may change its status of incorporation or formation or alter its corporate structure (either through mergers, consolidations, restructurings, conversions, dispositions, liquidations, dissolutions, or otherwise) on and after the Effective Date as may be determined by the Reorganized Debtor to be appropriate in connection with the conduct of its business. After the Effective Date, the Reorganized Debtor may operate its business and manage its affairs, and may use, acquire and dispose of its property, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**7.3.    Execution of Documents and Corporate Action.** The Debtor, Trustee, Iflyusa, the Reorganized Debtor, the Committee and the Liquidating Trustee shall deliver all documents and perform all actions reasonably contemplated with respect to implementation of the Plan and Stock Issuance and Plan Funding Agreement. Each, as applicable, president, chief executive officer, chief financial officer, senior vice president, vice president, or their respective designees of Iflyusa and the Reorganized Debtor are authorized (i) to execute on behalf of the Reorganized Debtor, in a representative capacity and not individually, any documents or instruments after the Confirmation Date or at the Closing that may be necessary to consummate the Plan and Stock Issuance and Plan Funding Agreement, and (ii) to undertake any other action on behalf of the Reorganized Debtor or Iflyusa to consummate the Plan and Stock Issuance and Plan Funding Agreement. Each of the matters provided for under the Plan and Stock Issuance and Plan Funding Agreement involving the corporate structure of the Reorganized Debtor or corporate action to be taken by or required of the Reorganized Debtor will, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and (to the extent taken before the Effective Date) ratified in all respects without any requirement of further action by stockholders, creditors, or directors of the Reorganized Debtor.

**7.4.    Cancellation of Existing Securities.** On the Effective Date, (i) the Equity Interests shall be canceled and extinguished, and (ii) the obligations of, Claims against, and Interests in the Debtor arising under, evidenced by, or relating to any agreements, indentures, certificates of designation, bylaws, certificates or articles of incorporation, or similar documents governing the Equity Interests shall be released and discharged

**7.5.    Management of Reorganized Debtor.** From and after the Effective Date, the Reorganized Debtor will be managed and governed by the board of directors of the Reorganized Debtor in accordance with and to the extent required by the Reorganized Debtor's articles of incorporation and bylaws. Unless otherwise provided in the Modified Confirmation Order, Reorganized Falcon Air's sole officer, director and shareholder shall be Nelson Ramiz, a U.S. citizen, while the Debtor's current directors shall continue with Reorganized Falcon Air on and after the Effective Date.

**7.6.    Termination of the Trustee.** The appointment and operation of the Trustee pursuant to section 1104 of the Bankruptcy Code shall terminate on the Effective Date and the Trustee shall be discharged from all duties and responsibilities in connection with the Chapter 11 Case upon his termination.

**7.7.    Termination of the Committee.** The appointment and operation of the Committee shall terminate on the Effective Date. From and after the Effective Date, the Post-

32

Confirmation Committee shall serve to monitor and oversee the Liquidating Trustee as provided in the Liquidating Trust Agreement. The dissolution or termination of the Committee shall not prejudice the rights of any agents of the Committee (including their Professionals and Committee members) to pursue any separate claims for compensation and/or reimbursement of expenses, including Professional Claims, under Bankruptcy Code sections 330, 331, and/or 503(b)(3)(F) or (4).

**7.8.    Creation of the Liquidating Trust.** In accordance with Article V of this Plan and the Liquidating Trust Agreement, the Liquidating Trust will be created as of the Effective Date for the purpose of liquidating the Liquidating Trust Assets for the benefit of Allowed General Unsecured Creditors and the IRS to the extent of the IRS Beneficial Interest.

<h3 align="center">ARTICLE VIII<br>DISTRIBUTIONS</h3>

**8.1.    General.** The Disbursing Agent or Liquidating Trustee may employ or contract with other Persons to make or assist in making the Distributions required under this Plan without further Court order. Distributions made by the Disbursing Agent or Liquidating Trustee under the Plan or the Liquidating Trust shall be made only to the Holders of Allowed Claims. Until a Disputed Claim or Pending Claim becomes an Allowed Claim, the Holder of that Disputed Claim or Pending Claim shall not receive the consideration otherwise provided under the Plan. Distributions to Holders of Allowed Claims shall be in full satisfaction and discharge of such Allowed Claims. Claims of each individual agency of the United States shall be paid in accordance with the terms of the Plan as soon as all of the Claims of such individual agency are resolved.

**8.2.    Delivery of Distributions.** Distributions to Holders of Allowed Claims shall be made: (a) at the address set forth in the proof of claim filed by each such Holder with the Bankruptcy Court; (b) at the address set forth in any written notice of address change delivered to the Debtor, Trustee, Liquidating Trustee or Disbursing Agent after the date that the related proof of claim or interest was filed; or (c) at the address reflected in the Debtor's Schedules relating to the Allowed Claim if no proof of claim or interest was filed and the Debtor, Trustee, Liquidating Trustee or Disbursing Agent, as applicable, has not received written notice of a change of address.

**8.3.    Distributions to Administrative, Priority and Secured Creditors.** On the Effective Date, or such other date as provided in the Plan, the Holders of Allowed Administrative Claims and Allowed Priority Claims shall be paid the amounts of their Allowed Claims by the Disbursing Agent in Cash from the Iflyusa Cash Consideration and Cash on hand on the Effective Date. Any Distribution(s) to Holders of Allowed Secured Claims shall be paid by the Disbursing Agent (from the Iflyusa Cash Consideration and Cash on hand on the Effective Date) or the Reorganized Debtor, as the case may be, pursuant to the terms of the Plan.

**8.4.    Distributions to General Unsecured Creditors.** Distributions to Holders of Allowed General Unsecured Claims pursuant to the Plan shall be paid by the Liquidating Trustee in accordance with the terms of the Plan and Liquidating Trust Agreement.

**8.5.    Cash Payments**.  Cash payments to be made pursuant to this Plan shall be made by checks drawn on a U.S. financial institution.

**8.6.    Interest on Claims**.  Unless otherwise specifically provided for in this Plan, the Modified Confirmation Order, a Final Order of the Bankruptcy Court or other court of competent jurisdiction, or required by applicable bankruptcy law, interest shall not accrue or be paid on Claims or Interests on a Post-Petition basis, nor will the Holder of an Allowed Claim or Interest be entitled to Post-Petition interest on such Claim or Interest.

**8.7.    Failure to Negotiate Checks.**  Checks issued in respect of Distributions under the Plan, or in payment of Post-Petition expenses and other Administrative Claims incurred from the Petition Date through the Effective Date, shall be null and void if not negotiated within sixty (60) days after the date of issuance. Any amounts returned to the Trustee, Disbursing Agent or Liquidating Trustee in respect of such non-negotiated checks shall be held by the Trustee, Disbursing Agent or Liquidating Trustee, as appropriate.  Requests for reissuance for any such check shall be made in writing, directly to the Trustee, Disbursing Agent or Liquidating Trustee by the Holder of the Allowed Claim with respect to which such check originally was issued.  All amounts represented by any voided check will be held until sixty (60) days after the later of (a) the Effective Date, (b) the Allowance Date, or (c) the date that such check was issued, and all requests for reissuance by the Holder of the Allowed Claim in respect of a voided check are required to be made before such date.  Thereafter, all such amounts shall be deemed to be Unclaimed Property, in accordance with Section 8.8 of the Plan, and all Claims in respect of void checks and the underlying Distributions shall be forever barred, estopped, discharged and enjoined from assertion in any manner against the Estate, Property of the Estate, the Debtor, the Disbursing Agent, the Reorganized Debtor, the Liquidating Trust and the Liquidating Trustee..

**8.8.    Unclaimed or Returned Property**.  All property, whether stock certificates or cash, distributed on account of Allowed Claims must be claimed within the later of: (a) 90 days after the Effective Date, or (b) 90 days after such distribution is made to the Holder of such Allowed Claim.  In the event that distribution checks made payable to Holders of Allowed Claims are not negotiated within the 90-day period set forth above, or returned by the United States Post Office (or other delivery service) as undeliverable, the Unclaimed Property shall vest in the Liquidating Trust and shall become a Liquidating Trust Asset free and clear of any Claims, liens, interests or encumbrances, except as otherwise provided in the Plan.  No further distribution shall be made to any such Holder and the Holder shall not be entitled to a claim for such Unclaimed Property.  Nothing in this Plan shall require the Disbursing Agent or Liquidating Trustee to attempt to locate the Holders of Allowed Claims other than by reviewing the proofs of Claim filed with the Bankruptcy Court, the Debtor's Schedules and any written communication from the Holder of an Allowed Claim relating to address information.

**8.9.    Limitation on Distribution Rights**.  If a Claimant holds more than one Claim in any one Class, all Claims of the Claimant in that Class may be aggregated into one Claim and one Distribution may be made with respect to the aggregated Claim.  Each individual agency of the United States that holds a Claim in this Chapter 11 Case is a separate Claimant for purposes of this Article VIII of the Plan and will receive a separate Distribution in accordance with the

34

terms of the Plan.

**8.10.   Fractional Dollars**.  Notwithstanding any other provision of the Plan, Cash Distributions of fractions of dollars will not be made; rather, whenever any payment of a fraction of a dollar would be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.  To the extent that Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Property pursuant to Section 8.8 hereof.

**8.11.   De Minimis Distributions**.  No Cash payment of less than twenty-five dollars ($25.00) shall be made to any Holder of a Claim on account of its Allowed Claim, unless it is a Final Distribution.

**8.12.   Setoffs**.  The Liquidating Trustee and Disbursing Agent may, but shall not be required to, set off against any Claim, and the payments or Distributions to be made pursuant to the Plan in respect of such Claim, any and all debts, liabilities and claims of every type and nature whatsoever which the Estate, the Disbursing Agent or the Liquidating Trustee may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any such Claim, whether pursuant to the Plan or otherwise, shall constitute a waiver or release by the Estate, the Disbursing Agent or the Liquidating Trustee of any such claims the Estate, the Disbursing Agent or the Liquidating Trustee may have against such Holder, and all such claims shall be reserved and retained by the Liquidating Trustee.

**8.13.   Disputed Claims Reserve.**  Prior to making any Distributions, the Liquidating Trustee shall deposit Distributions of Cash reserved for the Holders of Disputed Claims and Pending Claims in a segregated, non-interest bearing account called the Disputed Claims Reserve.  The Liquidating Trustee shall hold the Disputed Claims Reserve for the benefit of (a) the Holders of Allowed Claims whose Cash Distributions are unclaimed subject to the provisions of Section 8.8 hereof, and (b) the Holders of Disputed and Pending Claims pending allowance or disallowance of their Claims.  When a Disputed Claim or Pending Claim becomes an Allowed Claim, the Liquidating Trustee shall release and deliver the Cash Distributions reserved for the Holder of such Allowed Claim from the Disputed Claims Reserve.  If the Bankruptcy Court disallows a Disputed Claim or Pending Claim, such Cash Distribution shall be deemed property of the Liquidating Trust and such Cash Distribution shall become a Liquidating Trust Asset free and clear of any Claims, liens, interests or encumbrances, except as otherwise provided in the Plan.

### ARTICLE IX
### CONDITIONS PRECEDENT TO EFFECTIVE DATE

**9.1.   Conditions to Effective Date.**  This Plan shall not become effective and the Effective Date shall not occur unless and until the following conditions have occurred or have been duly waived (if waivable) in accordance with Section 9.2 below:

(a)   The Bankruptcy Court shall have entered the Modified Confirmation Order in form and substance satisfactory to the Trustee authorizing and directing the Trustee to take all actions necessary or appropriate to enter into, implement, and

consummate the Plan and Stock Issuance and Plan Funding Agreement, and such order shall have become a Final Order;

(b)    The Bankruptcy Court shall have approved the information contained in the Disclosure Statement as adequate pursuant to section 1125 of the Bankruptcy Code;

(c)    The Closing of the Stock Issuance and Plan Funding Agreement, and consummation of all transactions contemplated thereunder, shall have occurred;

(d)    The Modified Confirmation Order shall approve and incorporate the terms of the Stock Issuance and Plan Funding Agreement.

(e)    All documents, instruments and agreements, in form and substance satisfactory to the Trustee, provided for under this Plan or necessary to implement this Plan shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby.

(f)    All authorizations, consents and regulatory approvals required, if any, in connection with the Plan's effectiveness shall have been obtained.

(g)    No order of a court shall have been entered and shall remain in effect restraining the Trustee or Iflyusa from consummating this Plan.

**9.2.    Waiver of Conditions to Consummation**.  The conditions set forth in Section 9.1 hereof may be waived at any time only by a writing signed by an authorized representative of the Trustee without notice or order of the Bankruptcy Court, or any further action other than proceeding to consummation of the Plan.

**9.3.    Notice of Effective Date**.  On the Effective Date, or as soon thereafter as is practicable, the Liquidating Trustee shall file with the Bankruptcy Court a notice of occurrence of the Effective Date which notice shall constitute appropriate and adequate notice that this Plan has become effective.  A copy of the notice of Effective Date may be sent by first class mail, postage prepaid, to those Persons who have filed with the Bankruptcy Court requests for notices pursuant to Bankruptcy Rule 2002 and any other Persons deemed appropriate by the Liquidating Trustee.

## ARTICLE X
## EFFECT OF PLAN CONFIRMATION

**10.1.    Discharge**.  Except as provided in this Plan, the Modified Confirmation Order or the Stock Issuance and Plan Funding Agreement, the rights afforded under this Plan and the treatment of Claims and Equity Interests under this Plan shall be in exchange for, and in complete satisfaction, discharge, and release of, all Claims and Equity Interests, including any interest accrued on Claims from the Petition Date.  Except as provided in this Plan, the Modified Confirmation Order or the Stock Issuance and Plan Funding Agreement, Confirmation shall discharge the Debtor, the Estate, the Reorganized Debtor, the Disbursing Agent and/or the Liquidating Trust from any an all debts and/or Claims of any nature whatsoever against, as well as any Equity Interests in, the Debtor that arose prior to the Effective Date, and all debts of the

36

kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim based on such debt is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based on such debt is Allowed pursuant to section 502 of the Bankruptcy Code, or (iii) the Holder of a Claim based on such debt has accepted this Plan.

Except as provided in this Plan, the Modified Confirmation Order or the Stock Issuance and Plan Funding Agreement, as of the Effective Date all Persons shall be precluded from asserting against the Debtor, the Estate, the Reorganized Debtor, the Disbursing Agent and/or the Liquidating Trust, any other or further Claims, debts, rights, causes of action, liabilities, or equity interests based upon any act, omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date. In accordance with the foregoing, except as provided in this Plan, the Modified Confirmation Order or the Stock Issuance and Plan Funding Agreement, the Modified Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtor and termination of all Interests and other rights of equity security holders in the Debtor, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor, the Estate, the Reorganized Debtor, the Disbursing Agent and/or the Liquidating Trust to the extent that such judgment relates to a discharged Claim or Interest.

**10.2. Binding Effect**. Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date the provisions of this Plan shall bind any Holder of a Claim against or Interest in the Debtor and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under this Plan and whether or not such Holder has accepted this Plan.

**10.3. Stay**. Unless otherwise provided herein, all injunctions or stays provided for in the Chapter 11 Case pursuant to section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the entry of the final decree closing the Chapter 11 Case.

**10.4. Exculpation. Except as otherwise specifically provided in this Plan, the Trustee and the Committee, their officers, directors, employees, representatives, advisors, attorneys, financial advisors, or agents, or any of such parties' successors and assigns, shall not have or incur, and are hereby released from, any claim, obligation, cause of action or liability to one another or to any Holder of a Claim or an Interest, or any other party in interest, or any of their respective officers, directors, members, employees, representatives, advisors, attorneys, financial advisors, agents, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the pursuit of Confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for their willful misconduct, bad faith, breach of fiduciary duty or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.**

**10.5. Injunction**. Except as provided in this Plan or the Modified Confirmation Order, as of the Confirmation Date all Persons that have held, currently hold, or may hold, a

37

Claim or other debt or liability that is discharged or an Equity Interest or other right of an equity security holder that is canceled or terminated pursuant to the terms of this Plan, and any successors, assigns or representatives of any of the foregoing, are permanently precluded and enjoined from taking any of the following actions on account of any such discharged Claims, debts or liabilities, or terminated or canceled Equity Interests or rights: (a) commencing or continuing in any manner any action or other proceeding against the Debtor, the Estate, the Reorganized Debtor, the Disbursing Agent, the Liquidating Trust, the Liquidating Trustee, or the property or assets of any of the foregoing; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtor, the Estate, the Reorganized Debtor, the Disbursing Agent, the Liquidating Trust, the Liquidating Trustee, or the property or assets of any of the foregoing; (c) creating, perfecting, or enforcing any lien or encumbrance against the Debtor, the Estate, the Reorganized Debtor, the Disbursing Agent, the Liquidating Trust, the Liquidating Trustee, or the property or assets of any of the foregoing; (d) asserting a right of subordination, setoff, recoupment or counterclaim of any kind against any debt, liability, or obligation due to the Debtor, the Estate, the Reorganized Debtor, the Disbursing Agent, the Liquidating Trust, the Liquidating Trustee, or the property or assets of any of the foregoing; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan. Nothing in the Plan or Modified Confirmation Order shall enjoin or preclude the United States from (i) pursuing any police or regulatory action against the Debtor or Reorganized Debtor to the extent that any such police or regulatory action is not of the nature that is stayed under 11 U.S.C. § 362(a) and is the type of action that is excepted from the automatic stay under 11 U.S.C. § 362(b)(4), or (ii) exercising any rights of setoff and recoupment to the extent such rights are available under applicable law, including without limitation any rights in respect of any remaining funds held by DFAS after satisfaction of the Allowed Class 4 DFAS Secured Claim.

## ARTICLE XI
## ACCEPTANCE OR REJECTION OF THIS PLAN

**11.1.    Persons Entitled to Vote.** Class 1 (Priority Non-Tax Claims), Class 4 (DFAS Secured Claim), Class 5 (USDA Secured Claim), Class 6 (Security Deposit Claims), Class 7 (Secured Financing Claims) and Class 9 (Other Secured Claims) are conclusively deemed to have accepted this Plan and Class 11 (Equity Interests) is conclusively deemed to have rejected this Plan. Accordingly, votes from Holders of Claims or Interests in Classes 1, 4, 5, 6, 7, 9 and 11 will not be solicited. Votes from Holders of Claims in Classes 2, 3, 8 and 10 have been solicited.

**11.2.    Vote Required for Acceptance and Confirmation**. Your vote is important to the Chapter 11 Case. Your failure to vote will leave to other Claimholders and Interestholders, whose interests may not be the same as yours, the decision to accept or reject the Plan. To have your vote count, you must complete properly and return your Ballot by the Voting Deadline. The Bankruptcy Code defines acceptance of a plan by an impaired class of claims as acceptance by holders of at least two-thirds (2/3) in dollar amount, and more than one-half (1/2) in number, of the claims of that class that actually cast ballots.

**11.3.    Cramdown Provisions**. If all of the applicable requirements of section 1129(a) of the Bankruptcy Code, other than subparagraph 8 thereof, are determined by the Bankruptcy

Court to have been satisfied with respect to the Plan, then the Trustee may seek confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code. For purposes of seeking confirmation of the Plan under section 1129(b), the Trustee reserves the right to modify or vary the terms of the Plan or the treatment of the Claims or Interests of those Classes that rejected the Plan so as to comply with the requirements of section 1129(b)

**ARTICLE XII**
**FINAL REPORT**

At such time as all of the Distributions provided for under the Plan and Liquidating Trust Agreement have been made and the Liquidating Trust Reserve has been reduced to zero, the Liquidating Trustee shall file a final accounting with the Bankruptcy Court, together with the Final Report, and shall seek entry of a final decree closing the Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

**ARTICLE XIII**
**ABANDONMENT**

The Liquidating Trustee may abandon any property deemed to be burdensome or of inconsequential value to the Liquidating Trust by filing a notice of abandonment with the Bankruptcy Court and serving it on the U.S. Trustee and affected parties. No property shall be deemed abandoned unless the Liquidating Trustee files and serves a notice of abandonment. Such abandonment shall be effective 10 days after the notice of abandonment is filed and served if no objection is timely filed and served. Any party in interest may oppose such abandonment by filing a written objection or response thereto with the Bankruptcy Court and serving the objection or response upon the Liquidating Trustee so as to be received by the Liquidating Trustee prior to the expiration of such 10-day period. The Bankruptcy Court retains jurisdiction to hear and determined any dispute regarding any proposed abandonment.

**ARTICLE XIV**
**RETENTION OF JURISDICTION**

**14.1. Exclusive Jurisdiction of Bankruptcy Court**. Notwithstanding the entry of the Modified Confirmation Order and the occurrence of the Effective Date, from and after the Effective Date the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising out of, arising in or related to, the Chapter 11 Case to the fullest extent permitted by applicable law, including, without limitation, jurisdiction to:

(a)    interpret and enforce the provisions of the Plan, Stock Issuance and Plan Funding Agreement and Liquidating Trust Agreement;

(b)    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest (whether filed before or after the Effective Date and whether or not contingent, disputed or unliquidated), including the compromise, settlement and resolution of any request for payment of any Administrative Claim or Priority Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the resolution of any dispute as to the treatment

39

necessary to reinstate a Claim or Interest pursuant to this Plan, and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any objection to such Claim or Interest (to the extent permitted under applicable law);

(c)    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending before, on or after the Effective Date;

(d)    hear and determine motions, applications, adversary proceedings, contested matters and other litigated matters pending on, or filed or commenced on or after, the Effective Date, including proceedings with respect to the rights and claims of the Liquidating Trustee to recover property under chapter 5 of the Bankruptcy Code, to commence or prosecute any Cause of Action (including any Avoidance Action), to seek a determination of any tax liability of the Debtor or Estate under section 505 of the Bankruptcy Code, or otherwise to collect or recover on account of any claim or Cause of Action that the Liquidating Trustee may have;

(e)    hear and determine all disputes concerning the conduct of the Liquidating Trustee;

(f)    determine and resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Contract to which the Debtor or Trustee is a party or with respect to which the Debtor, Trustee or Reorganized Debtor may be liable, and to hear, determine and, if necessary, liquidate any claims, including Cure Claims, arising therefrom;

(g)    ensure that all payments and performance due under this Plan and the Plan Documents are accomplished as provided herein, and resolve any issues relating to distributions to Holders of Allowed Claims pursuant to the provisions of this Plan and the Plan Documents;

(h)    construe, take any action and issue such orders consistent with section 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and consummation of this Plan and all Plan Documents, contracts, instruments, releases, indentures and other agreements or documents created in connection with this Plan, including, without limitation, the Disclosure Statement, the Modified Confirmation Order and the Liquidating Trust Agreement, for the maintenance of the integrity of this Plan and the Plan Documents;

(i)    determine and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of this Plan (and all Exhibits to this Plan including all exhibits), the Plan Documents or the Modified Confirmation Order, including the indemnification and injunction provisions set forth in and contemplated by this Plan, the Plan Documents or the Modified Confirmation Order, or any Person's rights arising under or obligations incurred in connection therewith;

(j)      entertain, approve and confirm modifications of this Plan before, on or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, or modify the Disclosure Statement, the Modified Confirmation Order or any Plan Document, contract, instrument, release, indenture or other agreement or document created in connection with this Plan, the Disclosure Statement or the Modified Confirmation Order, or remedy any defect or omission, or reconcile any inconsistency in any Court order, this Plan, the Disclosure Statement, the Modified Confirmation Order or any Plan Document, contract, instrument, release, indenture or other agreement or document created in connection with this Plan, the Disclosure Statement or the Modified Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code, and this Plan;

(k)      issue injunctions, enter, implement and enforce orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of this Plan or the Modified Confirmation Order;

(l)      enter, implement and enforce such orders as are necessary or appropriate if the Modified Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(m)      determine any other matters that may arise in connection with or relating to this Plan and Plan Documents, the Disclosure Statement, or the Modified Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with this Plan and Plan Documents, the Disclosure Statement, or the Modified Confirmation Order, except as otherwise provided in this Plan;

(n)      hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code;

(o)      continue to enforce the automatic stay, and any other applicable stays or injunctions, through the date of entry of the final decree closing the Chapter 11 Case;

(p)      hear and determine (A) disputes arising in connection with the interpretation, implementation or enforcement of this Plan, the Modified Confirmation Order and/or the Plan Documents, or (B) issues presented or arising under this Plan, the Modified Confirmation Order and the Plan Documents, including disputes among Holders and arising under agreements, documents or instruments executed in connection with this Plan, the Modified Confirmation Order and/or the Plan Documents;

(q)      shorten or extend, for cause, the time fixed for performance of any act or event under this Plan, the Modified Confirmation Order and/or the Plan Documents, on notice or *ex parte*, as the Bankruptcy Court shall determine to be appropriate;

(r)      enter any order, including injunctions, necessary to enforce the title, rights and powers of the Disbursing Agent or Liquidating Trustee, and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Bankruptcy Court may deem necessary;

41

(s)    review any action taken or not taken by the Disbursing Agent or Liquidating Trustee, and to appoint a successor Disbursing Agent or Liquidating Trustee, if necessary;

(t)    adjudicate any settlements pursuant to Bankruptcy Rule 9019, if required under this Plan, the Modified Confirmation Order or the Liquidating Trust Agreement, and all other matters contained herein; and

(u)    enter a final decree closing the Chapter 11 Case or converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code.

**14.2.    Failure of Bankruptcy Court to Exercise Jurisdiction**.  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Debtor, the Estate, the Reorganized Debtor, the Liquidating Trust or the Chapter 11 Case, including with respect to the matters set forth in Section 14.1 hereof, this Article XIV shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.  Nothing in this Article XIV shall constitute a waiver by the United States of its rights to assert that the Bankruptcy Court lacks jurisdiction over any matter set forth in this Article XIV.

## ARTICLE XV
## MISCELLANEOUS PROVISIONS

**15.1.    Binding Effect of Plan**.  The provisions of this Plan, Modified Confirmation Order and Plan Documents shall be binding upon and inure to the benefit of the Debtor, the Estate, the Reorganized Debtor, the Liquidating Trust, any Holder of any Claim or Interest treated herein or any Person named or referred to in this Plan, and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns, agents, officers and directors, and, as to the binding effect, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by this Plan or the Modified Confirmation Order.

**15.2.    Withdrawal of this Plan**.  The Trustee reserves the right, at any time prior to the substantial consummation (as that term is defined in section 1101(2) of the Bankruptcy Code) of this Plan, to revoke or withdraw this Plan.  If this Plan is revoked or withdrawn or if the Confirmation Date does not occur, this Plan shall be null and void and have no force and effect.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims or interests by or against the Debtor, Trustee or any other Person, constitute an admission of any fact or legal conclusion by the Debtor, Trustee or any other Person, or to prejudice in any manner the rights of the Debtor, Trustee or any other Person in any further proceedings involving the Debtor.

**15.3.    Modification of this Plan**.  The Trustee may alter, amend, or modify this Plan in accordance with section 1127(a) of the Bankruptcy Code or as otherwise permitted at any time before the Confirmation Date.  After the Confirmation Date and before the substantial consummation of this Plan, and in accordance with the provisions of section 1127(b) of the Bankruptcy Code and the Bankruptcy Rules, the Debtor, Trustee, Reorganized Debtor,

Liquidating Trustee or any other party in interest may, so long as the treatment of Holders of Claims and Interests under this Plan is not adversely affected, institute proceedings in the Bankruptcy Court to modify, to remedy any defect or omission, or to reconcile any inconsistencies in this Plan, the Plan Documents, the Disclosure Statement, or the Modified Confirmation Order and any other matters as may be necessary to carry out the purposes and effects of this Plan and the Plan Documents. However, prior notice of such proceedings shall be served in accordance with Bankruptcy Rule 2002.

      **15.4.  Business Days**.  If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

      **15.5.  Severability of Plan Provisions**.  If any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Modified Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

      **15.6.  Governing Law**.  EXCEPT TO THE EXTENT THAT THE BANKRUPTCY CODE OR BANKRUPTCY RULES OR OTHER FEDERAL LAWS ARE APPLICABLE, AND SUBJECT TO THE PROVISIONS OF ANY CONTRACT, INSTRUMENT, RELEASE, INDENTURE OR OTHER AGREEMENT OR DOCUMENT ENTERED INTO IN CONNECTION WITH THIS PLAN, INCLUDING, WITHOUT LIMITATION, THE PLAN DOCUMENTS, THE CONSTRUCTION, IMPLEMENTATION AND ENFORCEMENT OF THIS PLAN AND ALL RIGHTS AND OBLIGATIONS ARISING UNDER THIS PLAN SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF FLORIDA, WITHOUT GIVING EFFECT TO CONFLICTS OF LAW PRINCIPLES THAT WOULD APPLY THE LAW OF A JURISDICTION OTHER THAN THE STATE OF FLORIDA OR THE UNITED STATES OF AMERICA.

      **15.7.  Notices**.  Any notice required or permitted to be provided under this Plan shall be in writing and served by either (a) first class U.S. mail, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

To the Trustee:                    Kenneth A. Welt
                                       3790 N. 28th Terrace
                                       Hollywood, FL 33020

-and-

Frank P. Terzo, Esq.
Nathan G. Mancuso, Esq.
Katz Barron Squitero Faust
2699 South Bayshore Drive, 7th Floor
Miami, FL 33133

To the Liquidating Trustee
or Disbursing Agent:

Kenneth A. Welt
3790 N. 28th Terrace
Hollywood, FL 33020

-and-

Robert A. Schatzman, Esq.
Adorno & Yoss, LLP.
2525 Ponce de Leon Blvd.
Suite 400
Miami, FL 33134

To the Reorganized Debtor
Or Iflyusa:

iflyusa Corporation
Attention: Nelson Ramiz
c/o Renaldy Gutierrez
601 Brickell Key Drive, Suite 201
Miami, Florida 33131-2651

-and-

Gregory S. Grossman, Esq.
Astigarraga Davis Mullins & Grossman, P.A.
701 Brickell Avenue, 16th Floor
Miami, FL 33131

To the Post-Confirmation
Committee:

[to be designated by separate notice]

To the U.S. Trustee:

Johanna Armengol, Esq.
Steven D. Schneiderman, Esq.
Office of the U.S. Trustee
51 S.W. First Ave., 7th Floor
Miami, FL 33130

**15.8. Filing of Additional Documents**. On or before substantial consummation of

44

this Plan, the Trustee may issue, execute, deliver, and file with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of this Plan, including by making such supplemental disclosures or notices as the Trustee deems useful.

**15.9.  Time**.  Unless otherwise specified herein, in computing any period of time prescribed or allowed by this Plan, the day of the act or event from which the designated period begins to run shall not be included.  The last day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of next succeeding day that is a Business Day.  Otherwise, the provisions of Bankruptcy Rule 9006 shall apply.

**15.10. No Attorneys' Fees**.  No attorneys' fees will be paid by the Debtor, Reorganized Debtor, Disbursing Agent or Liquidating Trustee with respect to any Claim or Interest, except as expressly specified herein or allowed by a Final Order of the Bankruptcy Court.

**15.11. Successors and Assigns**.  The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

**15.12 Section 1146(a) Exemption from Certain Transfer Taxes**.  To the fullest extent permitted under section 1146(a) of the Bankruptcy Code, the execution, delivery or recording of an instrument of transfer under the Plan or Liquidating Trust Agreement, including the Reorganized Falcon Air Shares, or the transfer or sale of any real, personal or other Property by the Debtor, Trustee, Reorganized Debtor or Liquidating Trustee shall be considered a transfer under the Plan and shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.  Any sale or transfer of any Asset occurring after or upon the Confirmation Date shall be deemed to be in furtherance of this Plan.  Specifically, the Closing of the transactions contemplated by the Stock Issuance and Plan Funding Agreement is an integral component of this Plan as it is the primary means by which this Plan is being implemented, and the Closing is one which is occurring under this Plan.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Modified Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.

**15.13. Stock Issuance and Plan Funding Agreement**.  The Stock Issuance and Plan Funding Agreement, a true and correct copy of which is attached hereto as Exhibit A, is fully incorporated into the Plan by reference herein. The Stock Issuance and Plan Funding Agreement shall be binding on Iflyusa and the Reorganized Debtor, the Liquidating Trust, all Holders of Claims against and Interests in the Debtor and its Estate, and all of their respective successors and assigns.  To the extent that any provision of this Plan is inconsistent with any provision of the Stock Issuance and Plan Funding Agreement, the terms of the Stock Issuance and Plan Funding Agreement shall control.

**15.14. Aeropostal Settlement Agreement**. The Aeropostal Settlement Agreement, a true and correct copy of which is attached hereto as Exhibit C, is fully incorporated into the Plan by reference herein. The Aeropostal Settlement Agreement shall be binding on Aeropostal, the Reorganized Debtor, the Liquidating Trust, all Holders of Claims against and Interests in the Debtor and its Estate, and all of their respective successors and assigns. To the extent that any provision of this Plan is inconsistent with any provision of the Aeropostal Settlement Agreement, the terms of the Aeropostal Settlement Agreement shall control.

**15.15. Defenses with Respect to Unimpaired Claims**. Except as otherwise provided in this Plan, nothing shall affect the rights and legal and equitable defenses of the Debtor with respect to any Unimpaired Claim, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

**15.16. No Injunctive Relief**. Except as otherwise provided in the Plan and Modified Confirmation Order, no Holder of a Claim or Interest shall under any circumstances be entitled to specific performance or other injunctive, equitable, or other prospective relief in respect of such Claim or Interest.

**15.17. No Admissions**. Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Trustee with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of any classification of any Claim or Interest.

**15.18. Entire Agreement**. This Plan (including the Plan Documents) sets forth the entire agreement and undertaking relating to the subject matter hereof and supersedes all prior discussions and documents. The Debtor's Estate shall not be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

**15.19. Waiver of Stays**. The Trustee may, and reserves his right to, request that the Modified Confirmation Order include (i) a provision that any stays of the Modified Confirmation Order pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), 7062 or 9014 shall not apply and (ii) authorization for the Trustee to consummate the Plan immediately after entry of the Modified Confirmation Order.

**15.20. Substantial Consummation.** The Plan shall be deemed substantially consummated immediately upon the Effective Date.

**15.21. Dissolution of the Debtor**. On the Effective Date, the Debtor will be deemed dissolved, except to the extent necessary to carry out the provisions of the Plan.

**15.22. Good Faith.** Confirmation of the Plan shall constitute a finding that (i) the Plan has been proposed in good faith and in compliance with the provisions of the Bankruptcy Code, and (ii) the solicitation of acceptances or rejections of the Plan by all Persons and the offer, issuance, sale, or purchase of any security offered or sold under the Plan has been in good faith

and in compliance with applicable provisions of the Bankruptcy Code.

## ARTICLE XVI
## CONFIRMATION REQUEST

For all of the reasons set forth in this Plan and the Disclosure Statement, the Proponents request that the Bankruptcy Court confirm this Plan under section 1129 of the Bankruptcy Code.

## [SIGNATURE PAGE FOLLOWS]

Dated:  April 30, 2007

Respectfully submitted,

**KENNETH A. WELT,**       -and-      **IFLYUSA CORPORATION**
**CHAPTER 11 TRUSTEE**
**FOR FALCON AIR EXPRESS, INC.**

By:_____          By:_____
    Kenneth A. Welt                       Nelson Ramiz, President

         -and-                              -and-

**KATZ BARRON SQUITERO FAUST**         **ASTIGARRAGA DAVIS**
*Attorneys for Chapter 11 Trustee*          **MULLINS & GROSSMAN, P.A.**
2699 South Bayshore Drive, 7th Floor     *Attorneys for iflyusa Corporation*
Miami, Florida 33133                    Gregory S. Grossman, Esq.
Telephone: (305) 856-2444            701 Brickell Avenue, 16th Floor
Facsimile: (305) 285-9227             Miami, Florida 33131
                                   Telephone: (305) 372-8282
                                   Facsimile: (305) 372-8202

By: /s/ Frank P. Terzo_____    By: /s/ Gregory S. Grossman_____
    Frank P. Terzo                      Gregory S. Grossman
    Fla. Bar No. 906263                Fla. Bar No. 896667
    Nathan G. Mancuso
    Fla. Bar No. 174254

48