## EXHIBIT A

**Substituted and Modified Stock Issuance and Plan Funding Agreement**

## SUBSTITUTED AND MODIFIED
## STOCK ISSUANCE AND PLAN FUNDING AGREEMENT

THIS SUBSTITUTED AND MODIFIED STOCK ISSUANCE AND PLAN FUNDING AGREEMENT (the "Agreement") is entered into as of April 26, 2007, by and between IFLY USA CORP., a Florida corporation ("ifly usa" or the "Buyer") and KENNETH A. WELT, solely in his capacity as Chapter 11 Trustee (the "Trustee") for and on behalf of the bankruptcy estate of FALCON AIR EXPRESS, INC., a Florida corporation ("Falcon").

## PRELIMINARY STATEMENTS

WHEREAS, Buyer is engaged in the business of the business of airline transportation;

WHEREAS, Falcon is engaged in the commercial airline business and owns all of the Assets, which consist of all of the assets associated with, necessary or desirable for the operation of the Business;

WHEREAS, Falcon filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 10, 2006, ("Petition Date") with the Bankruptcy Court (the "Bankruptcy Case");

WHEREAS, on June 26, 2006, Kenneth A. Welt was appointed as the Chapter 11 Trustee and has been operating Falcon since his appointment;

WHEREAS, on May 22, 2006, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee");

WHEREAS, on February 9, 2007, SkyValue Airlines, Inc., a Florida corporation ("SkyValue") and Falcon entered into a Stock Issuance and Plan Funding Agreement ("Original Stock Issuance Agreement") and jointly filed a Chapter 11 Plan of Reorganization for Falcon ("Plan") incorporating the terms of the Original Stock Issuance Agreement;

WHEREAS, the Bankruptcy Court confirmed the Plan on March 5, 2007, and the Confirmation Order was entered on March 8, 2007 ("Confirmation Order");

WHEREAS, on March 19, 2007, SkyValue defaulted under the Original Stock Issuance Agreement;

WHEREAS, the Original Stock Issuance Agreement was terminated and Deposit forfeited by agreed order, and the execution of this Agreement is without prejudice to the Trustee's rights to seek any and all available civil contempt sanctions and other remedies arising from the events that gave rise to the Trustee's right to terminate the Original Stock Issuance Agreement against SkyValue in the event that this Agreement fails to close. Nothing herein shall prohibit or limit the Trustee's rights to seek any and all available civil contempt sanctions and other remedies arising from the events that gave rise to the Trustee's right to terminate the Original Stock Issuance Agreement against any other party or person;

{M1565212_3}

WHEREAS, subject to the terms and conditions of this Agreement, the Trustee intends to propose a Modification to a Confirmed Plan pursuant to which, among other things, Buyer will acquire all of the capital stock of the Reorganized Falcon (the "Falcon Shares"); and

WHEREAS, Buyer wishes to acquire the Falcon Shares pursuant to and in accordance with the Bankruptcy Code, the Plan and subject to the terms and conditions contained in this Agreement, the Plan and Section 1127 of the Bankruptcy Code.

NOW THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree that the foregoing preliminary statements are true and correct and further agree as follows:

## AGREEMENT

1.    **Preliminary Statements**.  All of the foregoing Preliminary Statements are true and correct and hereby incorporated into this Agreement.

2.    **Certain Definitions**.  The following terms as used in this Agreement shall have the meanings set forth below; capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the Plan or the Disclosure Statement.  Such meanings shall be equally applicable to both the singular and plural forms of such terms, unless the context requires otherwise.  As used herein:

(a)    "Agreement" shall mean this Substituted and Modified Stock Issuance and Plan Funding Agreement, including the Exhibits, Schedules and attachments hereto.

(b)    "Affiliate" of a Person shall mean a Person that directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, the first Person.

(c)    "Assets" shall mean all of the properties and assets (other than the Excluded Assets) of every kind and nature, real, personal or mixed, tangible or intangible, wherever located, owned by the Falcon, and associated with, necessary or desirable for the operation of the Business.

(d)    "Bankruptcy Code" shall mean title 11 of the United States Code, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Case.

(e)    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of Florida (Miami Division) or, if such court ceases to exercise jurisdiction over the Chapter 11 Case, the court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case.

(f)    "Business" shall mean any and all business activities of Falcon, including, but not limited to, the operation of a FAA 121 Certificated commercial airline charter service.

(g)    "Business Relationships with Government or Regulatory Authorities" shall mean any contract or relationship with a governmental unit, agency or Affiliate relating to the Business to which Falcon is a party.

(h)    "Chapter 11 Case" shall mean the case under Chapter 11 of the Bankruptcy Code commenced by Falcon pursuant to a Voluntary Petition filed May 10, 2006 in the Bankruptcy Court (Case No. 06-11877-BKC-AJC), which is also jointly administered with the bankruptcy case of MAJEL Aircraft Leasing Corp. (Case No. 06-11878-BKC-AJC).

(i)    "Closing" shall mean the closing of the transaction contemplated by this Agreement and the issuance of the Falcon Shares.

(j)    "Closing Date" shall mean June 8, 2007, or sooner at Buyer's election. The Closing Date shall be extended only under the terms and conditions of this Agreement or consent of the parties.

(k)    "IRC" shall mean the Internal Revenue Code of 1986, as amended.

(l)    "Committee" shall mean the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case on May 22, 2006 by the Office of the United States Trustee, as the membership of such committee is constituted and reconstituted as representatives for the Falcon Creditors.

(m)    "Modified Confirmation Order" shall mean the order entered by the Bankruptcy Court confirming a Modification of the Plan pursuant to Sections 1127 and 1129 of the Bankruptcy Code.

(n)    "Consideration" shall mean the aggregate consideration for the Falcon Shares as set forth in Section 7 of this Agreement.

(o)    "Contracts" shall mean the executory contracts and unexpired leases to which Falcon is a party relating to the Business which have been assumed by Falcon pursuant to the Plan and the Confirmation Order.

(p)    "Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management policies of a Person, whether through the ownership of voting securities, by contract or other arrangement, as trustee or executor, or otherwise.

(q)    "Deposit" shall mean an aggregate deposit to be delivered by Buyer as set forth in Section 7 of this Agreement.

(r)     "Disclosure Statement" shall mean Trustee's First Amended Disclosure Statement in Support of Trustee's Second and Third Amended Chapter 11 Plan of Reorganization, along with all exhibits, appendices, schedules and annexes attached thereto, as such Disclosure Statement may be altered amended, supplemented or modified from time to time, prepared and distributed in accordance of the Bankruptcy Code.

(s)     "DOJ" shall mean the United States Department of Justice.

(t)     "DOT" shall mean the United States Department of Transportation.

(u)     "Excluded Assets" shall have the meaning set forth in Section 4 of this Agreement.

(v)     "FAA" shall mean the United States Federal Aviation Administration.

(w)     "Falcon" shall have the meaning set forth in the preamble of this Agreement.

(x)     "Falcon Creditors" shall mean all creditors holding allowed general unsecured non-priority claims against Falcon.

(y)     "Falcon Shares" shall have the meaning set forth in the Preliminary Statements of this Agreement.

(z)     "Governmental Action" shall mean any and all approvals, authorizations or other actions of DOT, FAA or any other applicable federal, state, local or foreign governmental authority, if any, necessary to consummate the transactions contemplated by this Agreement.

(aa)     "Buyer" shall have the meaning set forth in the preamble of this Agreement.

(bb)     "Insurance Policies" shall mean all policies of insurance of every kind and nature maintained by Falcon or any of its subsidiaries with respect to the Assets, Business, property and/or personnel.

(cc)     "IRS" shall mean the U.S. Internal Revenue Service.

(dd)     "Lease" shall mean that certain real property lease for 9000 N.W. 15th Street, Miami, FL 33172, also known as Units #9 and #10, of Lakes Edge Commercial Condominium between Lakes Edge Commercial Properties, LLC and Falcon Air Express, Inc. dated December 23, 2004, inclusive of the Purchase Option as defined therein.

4

(ee)    "Liquidating Trust" shall mean the Falcon Liquidating Trust created by virtue of the Falcon Liquidating Trust Agreement under which the Trustee shall serve as Liquidating Trustee, all of which is provided for in the Plan and the Confirmation Order.

(ff)    "Modified Plan" shall mean the Third Amended Plan as modified pursuant to §1127(b) of the Bankruptcy Code which meets the requirements of §§1122, 1123 and 1129 of the Bankruptcy Code and is approved by the Bankruptcy Court with an Order Modifying the Plan.

(gg)    "Order Modifying the Plan" shall mean the Order Modifying the Plan and the Confirmation Order pursuant to §§1127(b) and 1129 of the Bankruptcy Code.

(hh)    "Person" shall mean any natural person, firm, partnership, association, corporation, company, trust, business trust, government authority or other entity.

(ii)    "Plan" shall mean Trustee's Second Amended Chapter 11 Plan of Reorganization filed with and confirmed by the Bankruptcy Court, which is incorporated by the terms of this Agreement and as such Plan may be further altered, amended, supplemented or modified from time to time, prepared and distributed in accordance of the Bankruptcy Code.

(jj)    "Proponent Selection Meeting" shall be the meeting on April 30, 2007 at 10:00 a.m. at the office of Katz, Barron, Squitero, Faust, 2699 S. Bayshore Drive, 7th Floor, Miami, FL 33133, to which a replacement proponent to the Plan is chosen by the Trustee.

(kk)    "Reorganized Falcon" shall mean the entity which shall emerge upon the Closing Date.

(ll)    "Replacement Proponent" shall be the new Plan Proponent chosen by the Trustee that will act as a buyer of New Falcon Shares to advance substantial consummation of the Plan pursuant to an Order Modifying the Plan.

Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter. Except as expressly stated or shown, the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Agreement as a whole and not to any particular paragraph, subparagraph, or clause contained in this Agreement. The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included.

3.    **Issuance of Falcon Shares**.

(a)    On the Closing Date, the Trustee shall cause the issuance of the Falcon Shares to Buyer in accordance with and subject to the conditions set forth in the Modified Plan. The Trustee shall evidence such transaction by delivering to Buyer one or more stock certificates representing the Falcon Shares.

(b)    The issuance of the Falcon Shares to Buyer pursuant to this Agreement will result in Buyer owning and controlling 100% of the outstanding shares of the Reorganized Falcon as of the Closing Date. Moreover, the Order Modifying the Plan shall provide for the (i) cancellation of all of Falcon's issued and outstanding shares and (ii) issuance of 100% of the shares of Reorganized Falcon to Buyer. Buyer acknowledges **that**, except as provided herein, the Falcon Shares are being sold on an "as is, where is" basis, except as otherwise stated herein. The Trustee shall not be deemed to have made any representations or warranties regarding the Falcon Shares, the Business, Assets or financial condition of Falcon or any other matter other than as specifically set forth herein, and any claims to the contrary shall be null and void.

4.    **Excluded Assets**.    Prior to or contemporaneously with the issuance of the Falcon Shares to Buyer, the following assets (collectively, the "Excluded Assets") shall be transferred, conveyed and assigned to the Liquidating Trust and shall not constitute part of the Assets:

(a)    All claims relating to and interests in engines and parts which are the property of Falcon and in the possession of either Falcon or a third party including, without limitation, the Pratt & Whitney aircraft engines, and all engine records, logs, manuals and technical records and all related parts or equipment designated for use in or associated with such engines, currently being held by Hamilton Aerospace Technologies, Inc.;

(b)    cash and cash equivalents, including petty cash accounts or cash on hand or in bank accounts, certificates of deposit, surety bonds, commercial paper and other similar securities related to the Business;

(c)    all accounts and notes receivable as well as other claims for money or other obligations due (or which hereafter will become due) to Falcon arising out of the Business;

(d)    all of the outstanding capital stock of Majel Aircraft Leasing Corporation;

(e)    all avoidance claims and actions of Falcon, including, without limitation, any such claims and actions arising under Sections 542, 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code;

(f)    all third party claims, causes of action and insurance proceeds with respect to or arising in connection with the Business including, without limitation, causes

6

of action against directors and officers, Alan P. Brooks and ICON International Holdings, Inc., and all available civil contempt sanctions and other remedies arising from the events that gave rise to the Trustee's right to terminate the Original Stock Issuance Agreement; and

        (g)        all consideration paid under this Agreement.

5.      **Assumption of Contracts; Liabilities**. As a material inducement for Trustee, on behalf of Falcon, to enter into this Agreement, Buyer hereby covenants that Buyer shall, on the Closing Date, ratify the assumption of all of Falcon's Contracts assumed under the Confirmation Order and the Order Modifying the Plan. Additionally, Buyer hereby agrees that the Reorganized Falcon will assume that certain Airline Use Agreement for Miami International Airport entered into by and between Falcon and Miami-Dade County Aviation Department ("MDAD") as of May 23, 2005 (the "MIA Use Agreement"). The agreed Cure Amount payable to MDAD by the Reorganized Debtor in respect of the MIA Use Agreement, which is subject to and governed by the applicable provisions of the Plan and Confirmation Order as a "Cure Amount" for all purposes thereunder, shall be the amount of $230,000, payable in 24 equal monthly installments due on the tenth (10th) day of each month without interest, beginning in the first full calendar month following the date that is 90 days after the effective date of the Plan. All cure and any other monetary default payment amounts owing under the Contracts as of the Closing Date have been fixed at zero dollars ($0) by order of the Bankruptcy Court.

6.      **Assumption of Real Property Lease with Purchase Option**. The parties acknowledge that the Lease and Purchase Option by and between Falcon and Lakes Edge Commercial Properties, LLC ("Lake Edge") has been rejected by order of the Bankruptcy Court.

7.      **Consideration/Deposits**. Upon the terms and subject to the conditions of this Agreement, the parties agree that the aggregate Consideration for the Falcon Shares shall equal $3,000,000 (the "Purchase Price"), subject to the rights of the Trustee to seek higher and better offers for the Falcon Shares at any Proponent Selection Meeting (which may be held at the Trustee's sole discretion) scheduled for Monday, April 30, 2007 at 10:00 a.m. at the offices of Katz, Barron, Squitero, Faust, 2699 S. Bayshore Drive, 7th Floor, Miami, FL 33133. The Purchase Price, less all Deposits made hereunder, shall be paid to the Trustee in immediately available funds on or before the date of the Closing. Additionally, Buyer shall remit to the Florida Department of Revenue the amount of $30,000 in accordance with the Agreed Order entered by the Bankruptcy Court on March 12, 2007 (C. P. No. 650) on or before the date of Closing. The disposition of the Deposit shall be governed by Section 17 of this Agreement. At the Closing, the Deposit shall be credited towards payment of the Consideration.

        (a)        As a material inducement for Trustee, on behalf of Falcon and Buyer, to enter into this Agreement and to become a Replacement Proponent and in consideration of the agreement to schedule the Closing Date on June 8, 2007, Buyer shall:

            i.      Deliver in certified funds to the trust account of Katz, Barron, Squitero, Faust, P.A. the sum of $1,500,000.00, anytime before

5:00 p.m. (EST) on Friday, April 27, 2007, in order to be eligible to bid at the Proponent Selection Meeting; and

ii.  Deliver, on or before Thursday, April 26, 2007, at 5:00 p.m (EST), an affidavit and financial information, in a form satisfactory to the Trustee, Creditor's Committee and IRS/DOJ, demonstrating that the Buyer has the ability to close on or about June 8, 2007.

iii.  Pay all amounts to the Trustee necessary to fund any deficiency in Falcon's cash necessary to fund administrative and operating expenses incurred from March 19, 2007 through the Closing Date resulting from an underpayment by Aeropostal Alas de Venezuela, C.A. ("Aeropostal") pursuant to that certain wet lease and management agreement between Falcon and Aeropostal, as amended under the Third Amendment to Settlement Agreement.

(b)  In the event Buyer is the highest bidder at the Proponent Selection Meeting and the Closing does not occur on or before the Closing Date, Trustee, on behalf of Falcon and Buyer, agree that there will be no extension of time and Buyer shall immediately forfeit the deposit.

8.  **Prorations**.  Subject to Section 7(a)(iii) above, all obligations due in respect of periods prior to the Closing Date shall be paid in full or otherwise satisfied by Falcon pursuant to the terms of the Modified Plan and all obligations due in respect of periods on and after the Closing Date shall be paid in full or otherwise satisfied by Reorganized Falcon as they become due. Taxes, customer deposits, prepayments, employee accruals (which include wages or taxes related thereto, but does not include accrued and unpaid vacation, sick leave and other employee benefits); utilities, insurance premiums and similar items identified on **Schedule 1** attached hereto and made a part hereof will be prorated at Closing.

9.  **The Closing**.

(a)  <u>Closing Date.</u>  The Closing of the issuance of the Falcon Shares shall be held on the Closing Date.

(b)  <u>Deliveries of Falcon.</u>  At the Closing, the Trustee shall deliver to Buyer: (i) a certified copy of the Confirmation Order and Order Modifying the Plan; (ii) certificates representing all of the Falcon Shares; (iii) all of Falcon's corporate minute books; (iv) such other documents as may be reasonably requested by Buyer or its counsel in order to consummate the transactions contemplated by this Agreement; and (v) a status enforcement letter from the FAA with an effective date on or within 60 days of the Closing Date substantially in the form attached hereto as **Exhibit A**.

(c)  <u>Deliveries of Buyer.</u>  At or before the Closing as necessary, Buyer shall deliver to the Trustee: (i) evidence of payment of the Consideration including the stock certificates evidencing the Plan Shares; (ii) a notarized copy of corporate resolution

(in form satisfactory to the Trustee) reflecting that Buyer has full power and authority to enter into this Agreement and all agreements executed in connection herewith; and (iii) such other certificates and documents as may be reasonably requested by the Trustee, the Committee or Falcon or their respective counsel in order to consummate the transactions contemplated by this Agreement.

(d)     Additional Acts. At or subsequent to the Closing, the parties shall execute and deliver any other instruments and take any actions, which may be reasonably required for the implementation of this Agreement and the transactions contemplated hereby.

10.     **Sales, Use and Other Taxes**. Pursuant to Section 1146(a) of the Bankruptcy Code, the sale of the Falcon Shares shall be deemed a sale pursuant to a plan of reorganization to be confirmed under Section 1129 of the Bankruptcy Code, and therefore shall be exempt from any transfer, stamp or similar tax in all necessary jurisdictions arising as a result of or in connection with the sale and transfer of the Falcon Shares. In the event that the sale is not deemed to be a sale pursuant to a plan of reorganization to be confirmed under Section 1129 of the Bankruptcy Code, any sales, purchases, transfer, stamp, documentary stamp, use or similar taxes which may be payable by reason of the sale of the Assets under this Agreement or the transactions contemplated herein shall be borne and timely paid by the Trustee.

11.     **Access to Books and Records.** Following the Closing, upon reasonable advance notice, Buyer shall afford the Liquidating Trustee, his counsel and accountants, during normal business hours, upon prior written notice, reasonable access to the books, records and other data of Falcon or relating to the Business with respect to periods solely prior to the Closing and the right to make copies and extracts there from, to the extent that such access may be reasonably required by the Trustee (a) to facilitate the investigation, litigation and final disposition of any claims which may have been or may be made against any party, (b) in connection with any tax return, audit, examination, proceeding or determination, (c) to facilitate a claim against any policies of insurance covering the Business, and (d) for any other reasonable purpose necessary for the Liquidating Trustee to discharge his fiduciary duties. All investigations by or on behalf of the Liquidating Trustee shall be conducted in such manner as to not unreasonably interfere with the business operations of Buyer and at the Liquidating Trustee's sole expense.

12.     **Representations and Warranties of Falcon and the Trustee.** The Trustee represents and warrants to Buyer as of the date hereof and as of the Closing Date that:

(a)     Title to Property. To the best of the Trustee's knowledge, Falcon has good and marketable title to the Assets subject only to the liens described in the Plan or as a matter of public record. At the Closing, (i) Buyer will acquire the Falcon Shares free and clear of any liens, claims or encumbrances pursuant to Section 1141 of the Bankruptcy Code and (ii) Reorganized Falcon will own the Assets (with the exception of the Excluded Assets) free and clear of any liens, claims or encumbrances. In addition, the Confirmation Order and the Order Modifying the Plan shall contain a discharge in favor of Reorganized Falcon under section 1141 of the Bankruptcy Code as set forth in the Plan.

(b)    No Conflicts or Violations.    The execution, delivery and performance of this Agreement will not with or without the giving of notice, lapse of time or both, or otherwise result in any such violation or be in conflict with or constitute a default under any such provision, law, rule or regulation.

(c)    Governmental Consents.  The Trustee will make a good faith effort to ensure that Falcon's Part 121 certificate and DOT certificate of public convenience and necessity remain current, active and in good standing.  Notwithstanding the foregoing, neither Falcon nor the Trustee makes any representations or warranties whatsoever, express or implied, that Falcon's Part 121 certificate and DOT certificate of public convenience and necessity will be current, active or in good standing at Closing.

(d)    Government Regulations; Registration.  Falcon owns or possesses all registrations, certificates, licenses and memberships, as the case may be, necessary for the lawful conduct of the Business as presently conducted, except where the failure to do so would not reasonably be expected to have, either individually or in the aggregate, a material adverse effect on the Business. All of such registrations, certificates, licenses and memberships, as the case may be, are in full force and effect, and there are no proceedings, hearings or other actions pending or, to the best knowledge of Falcon and the Trustee, threatened that may affect the validity or continuity of any of them; *except that* the Trustee makes no representation with respect to its current eligibility to operate charter flights on behalf of the Air Mobility Command.  No approval of any trade or professional association or governmental agency, regulatory authority or self-regulatory authority is required for any of the transactions contemplated by this Agreement, and the completion of the transactions contemplated by this Agreement will not in and of themselves, affect or jeopardize the validity or continuation of any of them.    The Trustee makes no representation, however, as to any finding that the DOT or FAA may make as to Falcon's U.S. citizenship or fitness to operate under Buyer's ownership or management.  Falcon on the Closing Date will be operating in compliance in all material respects with the laws, rules and regulations of all governmental, regulatory and self-regulatory authorities having jurisdiction over Falcon, its Business and operations, except where the failure to do so would not reasonably be expected to have, either individually or in the aggregate, a material adverse effect on the Business.

(e)    Insurance.  Except as set forth in **Schedule 2** attached hereto and made a part hereof, Falcon has fire and casualty Insurance Policies, with extended coverage, sufficient in amount (subject to reasonable deductibles) to allow it to replace any of its Assets that might be damaged or destroyed and currently complies in all material respects with any and all insurance coverage provisions of such Insurance Policies.

(f)    Regulatory Matters.  The Trustee is not aware of any pending or threatened investigations by any regulatory authorities which would have a materially adverse affect on the Business.

(g)     <u>No Material Misrepresentations or Omissions</u>. No representation, warranty or covenant made by the Trustee in this Agreement or in any written statement or certificate furnished or to be furnished to Buyer pursuant to this Agreement or in connection with the transactions contemplated in this Agreement contains or will intentionally contain any untrue statement of a material fact or intentionally omit or will intentionally omit to state a material fact necessary to make the statements made herein or therein not misleading.

(h)     <u>"AS IS" Transaction</u>. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS AGREEMENT, NEITHER FALCON NOR THE TRUSTEE MAKES ANY REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATING TO THE FALCON SHARES OR THE BUSINESS, INCLUDING INCOME TO BE DERIVED OR EXPENSES TO BE INCURRED IN CONNECTION WITH THE BUSINESS. BUYER FURTHER ACKNOWLEDGES THAT IT HAS CONDUCTED AN INDEPENDENT INVESTIGATION OF ALL MATTERS RELATING TO OR AFFECTING THE BUSINESS AS BUYER DEEMED NECESSARY OR APPROPRIATE AND THAT IN PROCEEDING WITH ITS ACQUISITION OF THE FALCON SHARES, BUYER IS DOING SO BASED SOLELY UPON THE REPRESENTATIONS AND WARRANTIES OF FALCON AND TRUSTEE EXPRESSLY PROVIDED IN THIS AGREEMENT AND THE INDEPENDENT INVESTIGATIONS. ACCORDINGLY, EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES OF FALCON AND THE TRUSTEE EXPRESSLY PROVIDED IN THIS AGREEMENT, BUYER WILL ACCEPT THE FALCON SHARES (AND THE ASSOCIATED ASSETS OF THE BUSINESS) AT THE CLOSING "AS IS," "WHERE IS," AND "WITH ALL FAULTS."

(i)     Trustee shall cause Falcon to operate during the Interim Period in a prudent and normal fashion, consistent with past practice and the current Budget and Plan (attached hereto and made an integral part hereof). During the Interim Period, Falcon and Trustee will use their best efforts to preserve the business of Falcon and to maintain the goodwill of their present and prospective customers, suppliers and clients. Trustee shall cause Falcon to maintain the Assets in the same respective repair, working order and condition as they were on the date hereof, excepting normal wear and tear and maintenance and repairs which shall be performed by Falcon consistent with their customary practices. In addition, except as expressly contemplated by this Agreement, Trustee will not permit Falcon to do any of the following without the prior notice delivered to Buyer:

    i.     Amend its Articles of Incorporation or Bu-Laws or other organizational documents;

    ii.     Grant to any employee of Falcon any increase in compensation or other benefits, except (a) as may be required under existing agreements or (b) in the ordinary course of business consistent with past practices or increase, or permit any sums or other corporate assets of Falcon to be paid to or withdrawn from the

company by the directors, officers or manager of Falcon, except for ordinary compensation and fees, pursuant to the Budget;

iii.   incur, assume, or guarantee any indebtedness for borrowed money any such indebtedness, if any, to be paid in full at or before the Closing;

iv.   grant any Security Interest in, or agree to the imposition of any restriction or charge of any kind with respect to, any of the Assets;

v.   make any change in a method of accounting or accounting practice or policy other than those required by applicable law;

vi.   sell, lease to others or otherwise dispose of the Assets;

vii.   modify, amend, or terminate any of the contracts to which Falcon is a party that may in any respect adversely affect the business, Assets, financial condition, or results of operations of Falcon except terminations upon expiration of a contract's term or as set forth in this Agreement;

viii.   extend payment terms to customers other than in the ordinary course of business;

ix.   make any loans or advances to, guaranties for the benefit of, or investments in, any person (other than customary travel and other expense advances, salary advances; and employee relocation assistance in accordance with past practices);

x.   agree, whether orally or in writing, to do any of the foregoing;

xi.   cancel any insurance policies or allow the same to lapse for lack of payment of premiums;

xii.   dispose of fixed assets except the Excluded Assets;

xiii.   invest cash for any term which extends past the Closing;

xiv.   make any capital expenditure in excess of Five Thousand Dollars (US$5,000.00) which is not contemplated in the budget attached hereto

(j)      **Access and Information.**   During the Interim Period, Buyer's representatives shall have full access during normal business hours to the books and records of Falcon, all files of Falcon, the Assets and to the persons currently employed by

Falcon, for the purposes of completing Buyer's pre-Closing due diligence, consulting with the management of Falcon regarding such matters as require the consent of Buyer prior to the Closing, and to prepare for the transition of ownership and operations of Falcon after the Closing.

13.    **Representations and Warranties of Buyer**.  Buyer represents and warrants to Falcon and the Trustee as of the date hereof and as of the Closing Date that:

(a)    Authorization.  This Agreement when executed and delivered shall constitute a valid and legally binding obligation of Buyer, enforceable in accordance with its terms.  The execution of this Agreement by Buyer and the performance of its obligations hereunder will not with or without the giving of notice, lapse of time or both or otherwise violate or breach any law, rule, regulation, order or decree of any court or governmental, regulatory or self-regulatory authority by which Buyer is bound, or otherwise violate, result in a breach of or constitute a default under any agreement, contract or commitment to which Buyer is a party or otherwise bound or subject, and has been authorized by all appropriate and necessary action.

(b)    Litigation.  There is no action, suit, proceeding or investigation pending or currently threatened against Buyer  that questions the validity of this Agreement, or the right of Buyer to enter into this Agreement, or to consummate the transactions contemplated hereby, or that might result, either individually or in the aggregate, in any material adverse changes in the assets, condition, affairs or prospects of Buyer, financially or otherwise, or any material change in the current equity ownership of Buyer, except as otherwise provided herein.  Buyer is not a party or subject to the provisions of any order, writ, injunction, judgment or decree of any court or government agency or instrumentality.

(c)    Financial Capability.  Buyer has the financial resources and capability to consummate the transactions contemplated hereby including the ability to deliver the cash portion of the Consideration as set forth herein and Buyer can satisfy the financial fitness requirements imposed by the DOT.

(d)    Compliance With Legal Requirements.  Buyer has not violated in any material respect, and is not currently in material default under, any legal requirement applicable to Buyer or any of their respective assets or properties, where such violation could reasonably be expected to have material adverse effect on the business or financial condition of Buyer.

(e)    Regulatory Matters.  Buyer is not currently and has not to its knowledge previously been the subject of an investigation by any regulatory authority for violations of securities laws or industry rules, and has not had any registration or license suspended, nor has it been fined by the National Association of Securities Dealers, the SEC, any state, or any other applicable regulatory authority for violation of securities laws.

(f)    <u>No Material Misrepresentations or Omissions</u>. No representation, warranty or covenant made by Buyer in this Agreement or in any written statement or certificate furnished or to be furnished to the Trustee pursuant to this Agreement or in connection with the transactions contemplated in this Agreement contains or will intentionally contain any untrue statement of a material fact or intentionally omit or will intentionally omit to state a material fact necessary to make the statements made herein or therein not misleading.

(g)    <u>Affiliations</u>. Neither Buyer nor any of its shareholders or investors are affiliated in any manner whatsoever with SkyValue Airlines, Inc., The Aegis Group, Sheldon Katz, Alan P. Brooks, Icon International Holdings, Inc., Emilio Dirube, or any affiliates of any of the foregoing persons and entities.

14.    <u>**Conditions Precedent to each of the Party's Obligations**</u>. The obligations of each of the parties to consummate the transactions contemplated hereby shall be subject to the satisfaction on or prior to the Closing Date of all of the following conditions, except such conditions as the parties may waive in writing:

(a)    <u>Order Approving the Modified Plan.</u> The Bankruptcy Court shall have issued a Confirmation Order and an Order Modifying the Plan, which is not subject to any stay or injunction. The Parties hereby agree that pursuant to Fed. R. Bankr. P. 3020(e) and/or other applicable Bankruptcy rules, any provision of the Confirmation Order or Order Modifying the Plan, which waives any stay otherwise applicable to such orders shall be effective to allow the Closing and the Effective Date of the Modified Plan to occur immediately upon the Bankruptcy Court's entry of the Order Modifying the Plan. The Confirmation Order and the Order Modifying the Plan shall incorporate the terms hereof, shall be reasonably acceptable to the Buyer and shall include, among other things, all of the protections available under section 1141 of the Bankruptcy Code.

(b)    <u>No Order</u>. No order of any court or governmental or regulatory authority or body which restrains or prohibits the transactions contemplated hereby or by the Plan shall be in effect on the Closing Date and no suit or investigation by any government agency to enjoin the transactions contemplated hereby or seek damages or other relief as a result thereof shall be pending or threatened as of the Closing Date. No law or order shall have been promulgated, enacted, entered or enforced by any governmental authority restraining, preventing or prohibiting the transactions contemplated hereby.

(c)    <u>Execution and Delivery of Documents</u>. All documents and agreements required to be executed or delivered under the Plan on or prior to the Closing Date shall have been executed and delivered by the parties thereto.

(d)    <u>No Extensions</u>. No extensions or continuances of any time limitations, due dates, deadlines or hearings affecting the Plan, the Modified Plan, this Agreement or the transactions contemplated hereby shall have been granted or given without the consent of the parties.

15.    **Conditions to Buyer's Obligations**.  The obligations of Buyer to consummate the transactions contemplated hereby shall be subject to the satisfaction on or prior to the Closing Date of all of the following conditions, except such conditions as Buyer may waive in writing:

(a)    <u>Representations, Warranties and Covenants True on the Closing Date</u>.  The representations, warranties and covenants of each of Falcon and the Trustee contained in this Agreement shall be true in all material respects as of the date hereof and on the Closing with the same force and effect as if they had been made at the Closing.

(b)    <u>Performance</u>.  The Trustee shall have performed in all material respects the covenants, required to be performed or complied with by him on or before the Closing.

(c)    <u>Qualifications.</u>  All Governmental Action, if any, that are required in connection with the lawful sale and transfer of the Falcon Shares pursuant to this Agreement and the transactions contemplated hereby shall have been duly obtained and shall be effective on and as of the Closing.

(d)    <u>Compliance Certificate.</u>  There shall have been delivered to Buyer a certificate, dated as of the Closing signed by the Trustee certifying that the conditions specified in this Section 16 have been fulfilled.

(e)    <u>Delivery of Falcon Shares.</u>  Buyer shall have received from the Trustee the Falcon Shares required to be delivered pursuant hereto.

(f)    <u>Part 121 Certificate</u>.  Falcon shall have, to the best of its ability, preserved and maintained the Part 121 Certificate issued by the FAA.

16.    **Conditions Precedent to Falcon and the Trustee's Obligations.**  The obligations of Falcon and the Trustee to consummate the transactions contemplated hereby shall be subject to the satisfaction on or prior to the Closing Date of all of the following conditions, except such conditions as Falcon or the Trustee, as the case may be, may waive in writing:

(a)    <u>Representations, Warranties and Covenants True on the Closing Date</u>.  The representations and warranties of Buyer contained in this Agreement shall be true in all material respects as of the date hereof and on the Closing Date with the same force and effect as if they had been made at the Closing.

(b)    <u>Performance.</u>  Buyer shall have performed in all material respects the covenants of Buyer required to be performed or complied with by Buyer prior to and on the Closing Date.

(c)    <u>Compliance Certificate.</u>  There shall have been delivered to Falcon and the Trustee a certificate, dated as of the Closing signed by the authorized representative of Buyer certifying that the conditions specified in this Section 17 have been fulfilled.

(d)    Qualifications.  All Governmental Action, if any, that are required in connection with the lawful sale and transfer of the Falcon Shares pursuant to this Agreement and the transactions contemplated hereby shall have been duly obtained and shall be effective on and as of the Closing.

(e)    Payment of Purchase Price.  Falcon and the Trustee shall have received from Buyer the consideration required to be delivered pursuant hereto.

(f)    Proceedings and Documents.  The Trustee shall have received such other documents, instruments and certificates as the Trustee or his counsel shall reasonably request.

(g)    Financial Information.    Not later that 5:00 p.m. (EST) on Thursday, April 26, 2007, Buyer or its principal shall provide Trustee with financial information which shall reflect and confirm, to the Trustee's satisfaction, that Buyer has the ability to fund the Purchase Price.  Buyers represents that it has no investors, other than Nelson Ramiz, upon whom it is relying to fund any portion of the Purchase Price.

17.    **Termination**.  This Agreement may be terminated by written notice given by the terminating party to the non-terminating party as follows:

(a)    Unless otherwise provided in this Agreement by the Trustee, if the Order Modifying the Plan is not entered by the Court on or before May 1, 2007, unless extended upon the mutual written consent of all parties hereto.

(b)    By the Trustee if there is not a Closing on or before June 8, 2007, unless extended under this Agreement.

(c)    By Buyer, at Buyer's sole discretion, in the event that a stay of the Order Modifying the Plan and/or Modified Confirmation Order, pursuant to Federal Rule of Bankruptcy Procedure 8005 or otherwise, is in effect on the Closing Date.

(d)    Immediately, upon the mutual written consent of all parties hereto.

(e)    By Buyer in the event that prior to Closing, the Trustee is found by the Bankruptcy Court to have materially breached any of their respective representations, warranties and/or covenants herein.

(f)    By the Trustee in the event that prior to Closing, Buyer is found by the Bankruptcy Court to have materially breached any of the respective representations, warranties and/or covenants herein.

(g)    By the Trustee, in the event that prior to Closing, the Modified Plan to be funded through this Agreement is ultimately determined not to be the plan to be confirmed by the Bankruptcy Court, in the event that the Trustee or Committee support a competing Plan,

In the event that this Agreement is terminated by the Trustee for the reason set forth in (i) subsection (a), above, provided that the failure to obtain such confirmation of the Plan arises by reason of Buyer's default of its obligations hereunder; (ii) subsection (b) provided that the failure to close by such date arises by reason of Buyer's default of its obligations hereunder; (iii) subsection (f) above, then Buyer shall forfeit the Deposit, together with all interest thereon and such Deposits shall immediately become the property of Falcon. In the event that this Agreement is terminated by the Trustee, pursuant to subsection (g) or by Buyer in any other event, Buyer shall be entitled to a refund of its Deposit specified under Section 7(a) above.

In the event that Buyer is not selected by the Trustee as the Replacement Proponent by 5:00 p.m. (EDT) or not approved by the Bankruptcy Court on Monday, April 30, 2007, this Agreement shall be deemed terminated and the Deposit shall be refunded to Buyer by wire transfer initiated by the Trustee not later than Tuesday, May 1, 2007.

Notwithstanding anything contained in this Section 17, in the event Buyer fails to timely pay the Deposit required by Section 7(a)(i) or fails to close for any reason whatsoever by the Closing Date or any extension thereof, the Trustee, on behalf of Falcon, may terminate this Agreement by giving written notice of termination to Buyer, in which event, the Deposit provided under Section 7(a)(i) of this Agreement, together with all accrued interest, shall be forfeited by Buyer and paid to the Trustee, on behalf of Falcon, which shall immediately become the property of Falcon, without any claims of defenses by the Buyer and without further order of the Bankruptcy Court.

18.    **Transfer of Business Relationships with Government or Regulatory Authorities.** Pursuant to the Plan and by operation of law, all Business Relationships with Government or Regulatory Authorities shall transfer to the Reorganized Falcon upon entry of the Confirmation Order.

19.    **Nonsurvival of Representations and Warranties.** Only the representations and warranties of Buyer contained in Section 13(g) of this Agreement shall survive the Closing.

20.    **Employee Matters.** At all times prior to the Closing Date, the Trustee shall, in his sole and absolute discretion, retain control over all matters concerning Falcon's employees, including retention issues.

21.    **Notices.** Any notices, requests, demands and other communications required or permitted to be given hereunder must be in writing and, except as otherwise specified in writing, will be deemed to have been duly given when personally delivered or facsimile transmitted, or three days after deposit in the United States mail, by certified mail, postage prepaid, return receipt requested, as follows:

If to the Trustee:                Kenneth A. Welt, Trustee
                                  3790 N. 28th Terrace
                                  Hollywood, FL  33020
                                  Attention:  Kenneth A. Welt, Trustee
                                  Fax No. (954) 954-929-8200

With a copy to:                 Katz Barron Squitero Faust
                                2699 S. Bayshore Dr. – 7th Floor
                                Miami, FL  33133
                                Attention:  Frank P. Terzo, Esq.
                                Fax No. (305) 285-9227

If to the Committee:            Meland, Russin & Budwick, P.A.
                                3000 Wachovia Financial Center
                                200 So. Biscayne Blvd.
                                Miami, FL  33131
                                Attention:  Peter Russin, Esq.
                                Fax No. (305) 358-1221

If to Buyer:                    ifly usa corp.
                                Attention: Nelson Ramiz
                                Renaldy J. Gutierrez
                                601 Brickell Key Drive, Suite 201
                                Miami, Florida 33131-2651

With copies to:                 Renaldy J. Gutierrez
                                601 Brickell Key Drive, Suite 201
                                Miami, Florida 33131-2651

or to such other addresses or facsimile numbers as either party hereto may from time to time give notice of (complying as to delivery with the terms of this Section) to the other.

22.    **Taking of Necessary Action; Further Action; Cooperation.**

(a)    Each of the parties shall use its respective reasonable best efforts to take all such action as may be necessary or appropriate in order to effectuate the Closing as promptly as possible. If, on or at any time after the Closing Date, any further reasonable action is necessary or desirable to carry out the purposes of this Agreement, the parties shall take all such reasonable, lawful and necessary action.

(b)    The parties shall generally cooperate with each other and their respective officers, employees, attorneys, accountants and other agents and do such other acts and things in good faith as may be reasonable, necessary or appropriate to timely effectuate the intent and purposes of this Agreement and the consummation of the transaction contemplated herein. In connection with these efforts, each of the parties hereto shall use its commercially reasonable efforts to (i) take, or cause to be taken, all appropriate action, and do, or cause to be done, all things necessary, proper or advisable under any Law or otherwise to consummate and make effective the transactions contemplated by this Agreement; (ii) obtain any third party consents, licenses, permits, waivers, approvals, authorizations or orders required to be obtained or made in connection with the

18

authorization, execution and delivery of this Agreement and the consummation of the transactions contemplated hereby, and (iii) make all filings and give any notice, and thereafter make any other submissions either required or reasonably deemed appropriate by each of the parties, with respect to this Agreement and the transactions contemplated hereby required under any Law, including applicable securities and antitrust Laws.

23. **Entire Agreement**. This Agreement and the Plan embodies the entire agreement among the parties and there have been and are no agreements, representations or warranties, oral or written among the parties other than those set forth or provided for in this Agreement. This Agreement may not be modified or changed, in whole or in part, except by a supplemental agreement signed by each of the parties.

24. **Benefits; Binding Effect; Assignment**. This Agreement is for the benefit of and binding upon the parties hereto, their respective successors and, where applicable, assigns. Neither party may assign this Agreement or any of its rights, interests or obligations hereunder without the prior approval of the other party.

25. **Waiver**. The parties hereto may by written agreement (i) extend the time for or waive or modify the performance of any of the obligations or other acts of the parties hereto or (ii) waive any inaccuracies in the representations and warranties contained in this Agreement or in any document delivered pursuant to this Agreement. No waiver of any of the provisions of this Agreement will be deemed to constitute or will constitute a waiver of any other provision hereof (whether or not similar), nor shall any such waiver constitute a continuing waiver unless otherwise expressly so provided.

26. **No Third Party Beneficiary**. Nothing expressed or implied in this Agreement is intended, or will be construed, to confer upon or give any Person or entity other than the parties hereto and their respective successors and assigns any rights or remedies under or by reason of this Agreement.

27. **Section Headings**. The headings of the Sections, paragraphs and subparagraphs of this Agreement are solely for convenience and reference and shall not limit or otherwise affect the meaning of any of the terms or provisions of this Agreement. The references herein to Sections, Exhibits and Schedules, unless otherwise indicated, are references to sections of and exhibits and schedules to this Agreement, the Plan or the Disclosure Statement, as applicable.

28. **Counterparts**. This Agreement may be executed in any number of counterparts and by the parties hereto in separate counterparts, each of which will be deemed to be one and the same instrument.

29. **Litigation; Jurisdiction**. If any legal action is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorney fees, paralegal fees and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled. THE PARTIES AGREE THAT THE BANKRUPTCY COURT SHALL HAVE

EXCLUSIVE JURISDICTION TO ENFORCE THE TERMS OF THIS AGREEMENT AND OVER ALL DISPUTES AND OTHER MATTERS RELATING HERETO OR THE PLAN.

30.    **Remedies Cumulative**. No remedy made available by any of the provisions of this Agreement is intended to be exclusive of any other remedy, and each and every remedy is cumulative and is in addition to every other remedy given hereunder or now or hereafter existing at law or in equity.

31.    **Equitable Remedies**. The parties acknowledge and agree that Trustee will not have an adequate remedy at law in the event of any breach by the Buyer and that, therefore, Trustee shall be entitled, in addition to any other remedies which may be available to it, to injunctive and/or other equitable relief to prevent or remedy a breach.

32.    **Governing Law**. EXCEPT TO THE EXTENT THAT THE BANKRUPTCY CODE AND THE RULES PROMULGATED THEREUNDER OR OTHER FEDERAL LAWS ARE APPLICABLE, AND SUBJECT TO THE PROVISIONS OF ANY CONTRACT, INSTRUMENT, RELEASE, INDENTURE OR OTHER AGREEMENT OR DOCUMENT ENTERED INTO IN CONNECTION WITH THIS AGREEMENT OR THE PLAN, THE CONSTRUCTION, IMPLEMENTATION AND ENFORCEMENT OF THIS AGREEMENT AND ALL RIGHTS AND OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERENED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF FLORIDA, WITHOUT GIVING EFFECT TO CONFLICTS OF LAW PRINCIPLES WHICH WOULD APPLY THE LAW OF A JURISDICTION OTHER THAN THE STATE OF FLORIDA OR THE UNITED STATES OF AMERICA.

33.    **Construction**. The parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement. Any reference to any federal, state, local or foreign statute or law shall be deemed also to refer to all rules and regulations promulgated there under, unless the context requires otherwise.

**IN WITNESS WHEREOF**, the parties hereto have each executed and delivered this Agreement as of the day and year first above written.

**IFLY USA CORP.**

By: _____
Name: _____ Nelson Ramis _____
Title: _____ President. _____

**FALCON AIR EXPRESS, INC.**

By: Kenneth A. Welt, solely in his capacity as
Chapter 11 Trustee

**KATZ BARON SQUITERO FAUST, as Escrow Agent\***

By: _____
Name: _____ FRANK P. TERZO _____
Title: _____ Shareholder _____

\*   Solely for purposes of Section 7

21

EXHIBIT A



U.S. Department
of Transportation
**Federal Aviation**
Administration

South Florida Certificate
Management Office
8600 NW 36 Street, Suite 300
Miami, Florida 33166

September 15, 2006

Mr. Mark W. Atwood
Special Counsel to Kenneth A. Welt, Trustee
1850 M Street, N.W.
Suite 900
Washington, D.C.  20036

Dear Mr. Atwood:

This letter is in response to your letter dated September 8, 2006 concerning Falcon Air Express and any Federal Aviation Administration (FAA) enforcement action against Falcon Air Express.

There are currently no FAA enforcement actions involving Falcon Air Express.

There are no matters involving Falcon Air Express that are currently under investigation by this office.

If you have any questions concerning this letter, please contact this office at (305)-716-4271.

Sincerely,

*Stanley R. Crum*

Stanley R. Crum
Principal Operations Inspector

Payroll
Payroll Taxes
Health Insurance
401k Match
Oil/Fluids/Nitrogen
Manual Costs
Radio Communications Services
Flight Planning Services
Weather Analysis Services
Airport & Aircraft Performance Data
Tool Repair
Aviation Security Infrastructure Fee
Simulator Expense
Training Expense
Rent- (Buildings, Airport)
Communications (Cell phones/blackberry)
General Insurance (Property)
Vehicle Insurance
Workman's Compensation Insurance
Utilities
Drug Testing/Fingerprints/Background Checks
Computer Supplies
Safety Fees (Emergency Response Service)
Software License fees
Office Supplies
Building Supplies
Ramp Equipment and Vehicles Expense
Vehicle Financing
Vehicle Expenses (fuel and parking)
Freight Expense
Penalties
Food Services
Venezuelan Mechanics/Admin
Custodial Services
Copier Leases
Maintenance Uniforms

Schedule 1

SCHEDULE 2

NONE