# EXHIBIT C

**Aeropostal Settlement Agreement**

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Settlement Agreement" or "Agreement") is made and entered into as of October 2, 2006, by and between Kenneth A. Welt, as Chapter 11 Trustee (the "Trustee") of Falcon Air Express, Inc. ("Falcon Air" or the "Debtor"), and Aeropostal Alas de Venezuela, C.A. ("Aeropostal"). The Trustee and Aeropostal are sometimes collectively referred to as the "Parties" and sometimes separately referred to as a "Party."

## RECITALS

WHEREAS, on May 10, 2006 (the "Petition Date"), Falcon Air filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), assigned case no. 06-11877-BKC-AJC (the "Chapter 11 Case"), in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court" or "Court"). By order dated June 26, 2006, Kenneth A. Welt was appointed Chapter 11 Trustee for Falcon Air pursuant to 11 U.S.C. § 1104, vested with the powers and duties set forth in 11 U.S.C. § 1106 and the authority to operate the business of Falcon Air pursuant to 11 U.S.C. § 1108.

WHEREAS, Falcon Air currently operates two McDonnell Douglas airplanes (MD-82/serial no. 44905 and MD-83/serial no. 53045) and two Pratt & Whitney JTD8-219 engines per plane (collectively, the "Leased Aircraft") that it subleases from Aeropostal pursuant to certain aircraft sublease agreements dated June 1, 2005, and May 3, 2006, respectively (the "Falcon Air Subleases"). Aeropostal, in turn, subleases the MD-82 from Aerco Limited ("Aerco") and subleases the MD-83 from Spirit Airlines, Inc. ("Spirit" and, together with Aerco, the "Lessors"). Under its subleases with the Lessors (the "Aeropostal Subleases"), Aeropostal subleases the Leased Aircraft from and is obligated to pay, among other things, periodic rent to the Lessors; neither Falcon Air nor the Trustee have any obligation to pay rent or any other amounts to the Lessors under the Falcon Air Subleases or Aeropostal Subleases.

WHEREAS, Falcon Air operates the Leased Aircraft pursuant to an Aircraft Wet Lease Agreement with Aeropostal dated as of February 17, 2006 (the "Wet Lease"), which expires February 16, 2007, and an Aircraft Management Agreement with Aeropostal dated as of February 10, 2006 (the "Management Agreement"), which expires February 10, 2007. Pursuant to Exhibit D of the Wet Lease, the terms of the Wet Lease are "supplemented and superseded" by the terms of the Management Agreement. The Falcon Air Subleases, the Wet Lease and the Management Agreement are collectively referred to herein as the "Aeropostal Agreements."

WHEREAS, under the Wet Lease and Management Agreement, Falcon Air charters the Leased Aircraft and provides a FAA-certified and qualified crew, maintenance and insurance, for which it receives a fee of $535 per block hour for the first 150 block hours each month, and $100 per block hour for each hour over 150 hours, with a guaranteed minimum of 150 block hours per month for each of the Leased Aircraft. Costs such as insurance are paid or reimbursed by Aeropostal. Aeropostal currently pays Falcon Air the amount of approximately $75,000 per week for management fees, crew reserve and insurance coverage for the Leased Aircraft plus other costs enumerated in the Wet Lease and Management Agreement.

WHEREAS, Falcon Air and Aeropostal are also parties to that certain Debt Settlement Agreement dated as of April 30, 2005 (the "Debt Settlement Agreement"). Under the Debt Settlement Agreement, Aeropostal acknowledged an outstanding debt owed to Falcon Air in the amount of $6.6 million, and was required to pay $500,000 on June 3, 2005, and $100,000 per month thereafter until full repayment of the $6.6 million debt. In addition to the initial $500,000 payment, the Trustee believes that, to date, Aeropostal has paid only $400,000 to Falcon Air under the Debt Settlement Agreement and that the principal amount of $5.7 million remains outstanding. Aeropostal has asserted certain setoffs to its payment obligations under the Debt Settlement Agreement and disputes the amount asserted by the Trustee as the outstanding balance.

2

WHEREAS, the Trustee, as court-appointed representative of Falcon Air's bankruptcy estate, is the successor in interest to Falcon Air's rights under the Aeropostal Agreements and the Debt Settlement Agreement.

WHEREAS, on July 10, 2006, the Trustee filed a Motion for Approval of Agreement for Section 1110(b) Extension Regarding Aircraft Lease and Operating Agreements with Aeropostal Alas de Venezuela, C.A., C.P. No. 165 (the "Section 1110(b) Motion"),[1] seeking approval of an agreement between the Trustee and Aeropostal to extend the 60-day period set forth in 11 U.S.C. § 1110(a) to a date to be determined and agreed upon by the Parties. A final hearing on the Section 1110(b) Motion was never held and such motion remains pending.

WHEREAS, on July 27, 2006, Aeropostal filed its Motion for Relief from Stay to Send Sixty Day Termination Notices, C.P. No. 210 (the "Stay Relief Motion"), seeking relief from the automatic stay pursuant to 11 U.S.C. § 362(d) to send 60-day termination notices under the Wet Lease and Management Agreement (the "Termination Notices"). On September 1, 2006, the Trustee filed a Response to the Stay Relief Motion, C.P. No. 301 (the Trustee's "Response"), opposing Aeropostal's request for stay relief and contesting Aeropostal's right to terminate the Wet Lease and Management Agreement.

WHEREAS, on August 17, 2006, the Trustee filed his Motion to Assume Lease and Operating Agreements with Aeropostal Alas de Venezuela, C.A., C.P. No. 244 (the "Motion to Assume"), seeking to assume the Aeropostal Agreements pursuant to 11 U.S.C. § 365(a). Aeropostal disputes the Trustee's ability to assume the Aeropostal Agreements pursuant to 11 U.S.C. § 365(a).

WHEREAS, on August 18, 2006, the Bankruptcy Court entered an Order on Trustee's Emergency Motion for Authority to Immediately Suspend Operation of Certain Leased Aircraft, C.P. No. 253 (the "Aeropostal Payment Order"), directing that Aeropostal, among other things, "pay the

---

[1] References to "C.P. No. ___" herein refer to the numerical entries on the Court's docket in the Chapter 11 Case.

weekly amounts due Falcon Air and the Trustee, each in the amount of $84,277.25 or such other amount as becomes due and payable under the Aeropostal Agreements, not later than 5:00 p.m. (Eastern Standard Time) on Friday, August 18, 2006, and each Friday thereafter for as long as the Aeropostal Agreements remain in effect," and further ordering that "[i]f any weekly payment is not timely paid by Aeropostal, the Trustee is authorized, without the need for a further hearing or Court order, to immediately suspend operation of the Leased Aircraft pending payment."

WHEREAS, the Trustee and Aeropostal being sophisticated parties and having made such inquiries as they deem reasonably necessary and having consulted such professionals and reviewed such documents as they deem necessary and appropriate, now wish to settle and fully and finally resolve their disputes in connection with the Aeropostal Agreements, the Termination Notices and Stay Relief Motion, the Trustee's Response, the Section 1110(b) Motion, the Motion to Assume and the Debt Settlement Agreement, all on the terms and subject to the conditions set forth in this Agreement.

WHEREAS, the Parties are entering into this Agreement as a matter of sound business judgment, to avoid the risks, uncertainty and further expense of continued litigation of the matters described herein, and, by entering into this Agreement, do not concede or admit to any liability or culpability in respect of the allegations set forth in the aforementioned pleadings filed in the Chapter 11 Case.

NOW, THEREFORE, in consideration of the foregoing and other mutual consideration, receipt of which is hereby acknowledged by the Parties, and intending to be legally bound, the Trustee and Aeropostal hereby agree as follows:

### TERMS OF SETTLEMENT

1.    <u>Rule 9019 Motion</u>.    As soon as reasonably practicable after the Parties' execution of this Agreement, the Trustee shall file a motion with the Bankruptcy Court seeking entry

4

of an order approving the terms and conditions of this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and shall use his reasonable best efforts to obtain a Bankruptcy Court hearing for approval of this Agreement on shortened notice.

2. **Termination of Aeropostal Agreements; Continuation of Weekly Payments through Termination Date.** The Aeropostal Agreements shall terminate on November 30, 2006 (the "Termination Date"), pending which date the Trustee and Falcon Air may operate the Leased Aircraft subject to the terms and conditions of the Aeropostal Agreements, this Agreement and any applicable orders of the Court. Provided that Falcon Air is still legally able to operate the Leased Aircraft, Aeropostal shall make weekly payments to the Trustee, each in the amount of $75,000, with the final weekly payment due on or before Wednesday, November 29, 2006 (collectively, the "Weekly Payments"). Additionally, Aeropostal shall pay in advance the expense of the required upcoming crew training program run by Falcon Air, only with respect to Venezuelan-based crew members, upon receipt of Falcon Air's invoice for such expense. Aeropostal may remove, at its election, one of the Leased Aircraft from Falcon Air's fleet prior to the Termination Date and such removal shall in no way alter or affect Aeropostal's obligation to pay the full amount of the Weekly Payments to the Trustee through the Termination Date. Notwithstanding any provision of the Aeropostal Agreements to the contrary, neither Party shall be required to provide a reconciliation to the other Party at the expiration of the agreed term of the Aeropostal Agreements.

3. **Surrender of Leased Aircraft to Aeropostal on Termination Date.** Provided that Aeropostal has fully paid each Weekly Payment to the Trustee through the Termination Date, the Trustee shall surrender and return the Leased Aircraft to Aeropostal, including the books and records and all Aeropostal-owned spare parts relating to the Leased Aircraft, on the Termination Date or such other date agreed to by the Parties. The expense of surrendering and returning the Leased Aircraft to Aeropostal shall be paid by Aeropostal. Falcon Air's surrender obligations as set

forth herein may be enforced by specific performance and, notwithstanding anything in this Agreement to the contrary, the failure of Falcon Air to comply with its surrender obligations as set forth herein shall excuse Aeropostal from its obligation to pay the Discounted Balance Payments until Falcon Air complies with its surrender obligations and shall give rise to an offset against the Discounted Balance Payments equal to the damages caused Aeropostal from Falcon Air's failure to comply with its surrender obligations as set forth herein, provided that Falcon Air's failure to surrender and return the Leased Aircraft as set forth herein is due to circumstances within the reasonable control of Falcon Air and the Trustee.

4.   Aeropostal Inspection and Access to Records. The Trustee shall allow an authorized agent of Aeropostal, at Aeropostal's expense, to view and copy the records and the maintenance, safety and flight logs for the Leased Aircraft; provided, however, that (i) such agent's access be restricted to between the hours of 9:00 a.m. (Eastern  Standard Time) and 5:00 p.m. (Eastern Standard Time) on regular business days; (ii) such agent be supervised and accompanied at all times by an employee or representative of Falcon Air; and (iii) Aeropostal and its agent shall only be allowed to view and copy those records and logs previously approved by Falcon Air for such viewing and copying, which prior approval shall not be unreasonably withheld.  Aeropostal designates Mr. Gianfranco Farina as its contact person for all administrative and financial matters relating to the Leased Aircraft and Mr. Saul Montejo as its contact person for all operational matters relating to the Leased Aircraft. Aeropostal may, at its expense, conduct a safety inspection of the Leased Aircraft upon reasonable prior notice to the Trustee, in a manner consistent with those safety inspections previously conducted or available pursuant to the Aeropostal Agreements. Notwithstanding any other provision herein to the contrary, and for the purpose of removing any ambiguity on the subject, the Trustee and Falcon Air shall retain full operational control of the Leased Aircraft through the Termination Date.

6

5.    Aeropostal Payments under Debt Settlement Agreement. In full payment and satisfaction of all outstanding amounts due and owing under the Debt Settlement Agreement as of November 30, 2006, Aeropostal shall pay the total amount of $500,000 to the Trustee in the following three (3) installments: (i) the amount of $100,000 due and payable on or before October 10, 2006; (ii) the amount of $150,000 due and payable on or before October 31, 2006; and (iii) the amount of $250,000 due and payable on or before November 29, 2006 (collectively, the "Arrearage Installment Payments"). Upon Aeropostal's full and timely payment of the Arrearage Installment Payments, the outstanding balance owed by Aeropostal to the Trustee under the Debt Settlement Agreement shall be the amount of $2.5 million (the "Outstanding Balance"). The Outstanding Balance shall be satisfied by Aeropostal paying the amount of $100,000 per month to the Trustee, on the fifteenth (15th) day of each month for a period of 18 months commencing December 15, 2006, with a 15-day grace period for each monthly payment (collectively, the "Discounted Balance Payments"), for a total discounted payment of $1.8 million.    Upon Aeropostal's full and timely payment of the Discounted Balance Payments, the Outstanding Balance shall be deemed fully paid and satisfied.

6.    Manner of Payments; No Setoffs.    All payments due by Aeropostal under this Agreement shall be paid by wire transfer to Falcon Air's account at either (i) Colonial Bank, account no. 8043542201, ABA routing no. 062001319; or (ii) Bank of America, account no. 3755536635, ABA routing no. 026009593, and each such payment shall be made without setoff, counterclaim, recoupment or reduction of any kind or nature whatsoever.

7.    Aeropostal Payment Order.    The Aeropostal Payment Order shall remain in full force and effect in respect of the Weekly Payments due under paragraph 2 of this Agreement. Further, the default provisions of the Aeropostal Payment Order shall apply to the Arrearage Installment Payments due under paragraph 5 of this Agreement so that, in the event of a default by

7

Aeropostal with respect to any Arrearage Installment Payment, the Trustee may, in his sole discretion, immediately suspend operation of the Leased Aircraft pending payment of such Arrearage Installment Payment without the need for further Court order.

        8.     Trustee's Withdrawal of Objection to Aeropostal's DOT Application.  As soon as reasonably practicable after the entry of a Final Order (as defined in paragraph 14 below) approving this Agreement, the Trustee shall withdraw his opposition to Aeropostal's pending application to the U.S. Department of Transportation for exemption from the "wet-lease" requirement and for authority to operate aircraft in its own right.

        9.     Aeropostal's Waiver of Claims.  Aeropostal waives any and all claims (as such term is defined in 11 U.S.C. § 101(5)) against Falcon Air that arose before the Petition Date.

        10.    Trustee's Waiver of Defaults.  Upon full and timely payment of the Weekly Payments and Arrearage Installment Payments, the Trustee shall be deemed to have waived any and all defaults theretofore existing under the Aeropostal Agreements and Debt Settlement Agreement, without prejudice to the Trustee's right to assert any defaults in respect of the Discounted Balance Payments.

        11.    Amendment of Aeropostal Agreements.  The terms of the Management Agreement as modified by this Agreement, and not the Wet Lease, shall govern all economic obligations between Falcon Air and Aeropostal through the Termination Date. For avoidance of doubt, any ambiguity between the Management Agreement, as modified by this Agreement, and the Wet Lease in respect of any non-economic obligations between Falcon Air and Aeropostal shall be resolved in favor of the Management Agreement. By way of clarification of the Management Agreement, insurance premiums on the Leased Aircraft shall be borne or reimbursed by Aeropostal at the lower of (i) the premium charged to Falcon Air from its insurance carrier, in which case Falcon Air shall place the Leased Aircraft on Falcon Air's insurance policy naming Aeropostal as an

8

additional named insured or loss payee, or (ii) the premium charged to Aeropostal from its insurance carrier, in which case Aeropostal shall place the Leased Aircraft on Aeropostal's insurance policy naming Falcon Air as additional named insured or loss payee.

12.    Default.  If Aeropostal defaults in respect of any of the Weekly Payments or Arrearage Installment Payments, Aeropostal shall reaffirm and become obligated to pay all amounts due under the Debt Settlement Agreement, less any amounts actually paid to the Trustee under the Debt Settlement Agreement or this Agreement, which amounts shall be accelerated and become immediately due and payable by Aeropostal.  If Aeropostal fully and timely pays the Weekly Payments and the Arrearage Installment Payments but thereafter defaults in respect of any of the Discounted Balance Payments, then Aeropostal shall be obligated to pay the amount of $4.0 million in respect of the Debt Settlement Agreement, less the amount(s) of any Discounted Balance Payment(s) actually paid by Aeropostal, which amount shall be accelerated and become immediately due and payable by Aeropostal.  Aeropostal shall designate a United States resident with a United States address as its agent authorized to accept service of process on behalf of Aeropostal. Aeropostal shall waive all defenses, including lack of personal jurisdiction, to any action commenced against it under the Debt Settlement Agreement and/or this Agreement except for any defense relating to any amount(s) actually paid to Falcon Air or the Trustee that are either acknowledged herein or paid under this Agreement.

13.    Representations, Warranties and Covenants.

(A)    No Conflict.  Each Party to this Agreement represents and warrants that this Agreement will not violate or conflict with or cause a breach under any agreement to which it is a party or by which its assets may be bound.

9

(B)    Authority. Each Party to this Agreement represents and warrants that it has the power and authority to enter into this Agreement, subject to Bankruptcy Court approval, and bind the entity on whose behalf it is signing and to carry out its obligations hereunder.

(C)    Consultation and Review. Each Party to this Agreement represents and warrants that prior to executing this Agreement, it has made such inquiries as it, being a sophisticated and well-informed party, deemed reasonably necessary, and has consulted such professionals and reviewed such documents as it deemed reasonably necessary and appropriate to enter into this Agreement and to consummate the transactions contemplated herein.

(D)    Support of Agreement. Each Party to this Agreement covenants and agrees that it shall use its best efforts to obtain the entry of the Final Order approving this Agreement and shall take no action or consent to aid, solicit, support, or otherwise cooperate with any action that is likely to result in the modification of the transactions contemplated by this Agreement, without the express written consent of the other Party, which consent may be withheld by the other Party in its sole discretion.

14.    Bankruptcy Court Approval. The effectiveness of this Agreement is contingent upon the Bankruptcy Court entering an order approving this Agreement pursuant to Bankruptcy Rule 9019 (the "Approval Order") and shall become effective immediately upon the date on which the Approval Order becomes a Final Order, without the necessity of further notice. "Final Order" shall mean an order or judgment of the Bankruptcy Court as to which (a) the time to appeal or petition for certiorari, or seek reargument or rehearing has expired and as to which no appeal, petition for certiorari, or motion for reargument or rehearing shall then be pending; or (b) in the event that an appeal, writ for certiorari, reargument of rehearing thereof has been sought, such order of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take

10

any further appeal, petition for certiorari, or seek reargument or rehearing shall have expired; provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, Bankruptcy Rules 9024 or 3008, or 11 U.S.C. § 502(j) may be filed with respect to such order, so long as such a motion has not actually been filed.

15.    Duration of Representations.  The representations, warranties and covenants contained in paragraph 13 of this Agreement shall survive indefinitely.

16.    Binding Effect.  The terms and conditions of this Agreement are subject to approval by the Bankruptcy Court.  At such time as the Approval Order becomes a Final Order, this Agreement shall be binding upon and inure to the benefit of Aeropostal, Falcon Air, the Trustee and each of their respective successors and assigns.  This Agreement shall also be binding upon the proponent of any chapter 11 plan for Falcon Air filed in the Chapter 11 Case, any purchaser of the stock or assets of Falcon Air, any substitute or successor trustee or other fiduciary or estate representative that may be elected, appointed or otherwise designated in this bankruptcy case pursuant to chapter 11 or chapter 7 of the Bankruptcy Code.

17.    Governing Law.  The interpretation, construction, and performance of this Agreement, and the rights and remedies of the Parties hereunder, shall be governed by the laws of the State of Florida and, to the extent applicable, the Bankruptcy Code.

18.    Jurisdiction and Venue.  Each Party hereto consents to the exclusive jurisdiction of the Bankruptcy Court, or, in the event that the Bankruptcy Court is without jurisdiction, such other court of competent jurisdiction located in Miami-Dade County, Florida, to adjudicate any disputes that arise under or relate to this Agreement.  Each Party consents to personal jurisdiction and venue in Miami-Dade County, Florida, with respect to any action or proceeding commenced in connection with this Agreement.



19.    Compromise and Settlement. This Agreement is not an admission of liability by either of the Parties, but is a compromise, and the settlement embodied in this Agreement shall not be treated as an admission of liability with respect to any of the claims or assertions made in the Termination Notices, the Stay Relief Motion, the Trustee's Response, the Section 1110(b) Motion or the Motion to Assume. All communications (whether oral or in writing) between and/or among the Parties, their counsel and/or their respective representatives relating to, concerning, or made in connection with this Agreement or the matters covered hereunder shall be governed and protected in accordance with Federal Rule of Evidence 408 to the fullest extent permitted by law.

20.    Presumption. This Agreement has been drafted by both of the Parties hereto and shall not be construed against one Party in favor of the other Party by reason of any presumption concerning a Party drafting this Agreement.

21.    Cooperation. The Parties agree to cooperate fully and to execute any and all necessary supplementary documents and to take any and all additional steps or actions that may be necessary or appropriate in order to give full force and effect to the terms and intent of this Agreement.

22.    Notices. All notices required or permitted to be given hereunder shall be in writing and shall be delivered by hand delivery or by overnight delivery service to the following addresses, as applicable (or such other address as a Party may, by written notice to the other Party, designate as the address for purposes of notice thereafter):

IF TO AEROPOSTAL ALAS DE VENEZUELA,    Gregory S. Grossman, Esq.
C.A.:    Astigarraga Davis Mullins & Grossman, P.A.
     701 Brickell Avenue, 16th Floor
     Miami, Florida 33131
     Tel: (305) 372-8282
     Fax: (305) 372-8202
     E-mail: ggrossman@astidavis.com

IF TO KENNETH A. WELT, CHAPTER 11
TRUSTEE:

Kenneth A. Welt, P.A.
3790 North 28th Terrace
Hollywood, Florida 33020
Tel: (954) 929-8000
Fax: (954) 929-8200
E-mail: kaw@kawpa.com

-and-

Frank P. Terzo, Esq.
Katz Barron Squitero Faust
2699 South Bayshore Drive, 7th Floor
Miami, Florida 33133
Tel: (305) 856-2444
Fax: (305) 285-9227
E-mail: fpt@katzbarron.com

23.    <u>Notice Deemed Given</u>.  Notice shall be deemed to have been given when delivered, as follows, to both the relevant Party and any person designated to receive a copy on account of that Party:  (i) in the case of hand delivery, (a) if delivered before 5:00 p.m. (Eastern Standard Time) on a business day, at the time of delivery; and (b) if delivered after 5:00 p.m. (Eastern Standard Time) on a business day or on a day that is not a business day, on the business day following the date of delivery; or (ii) in the case of overnight delivery service, upon the first attempted delivery on a business day.

24.    <u>Headings</u>.  The various headings and sub-headings of this Agreement are inserted for convenience only and shall not affect the interpretation of this Agreement.

25.    <u>Waiver</u>.  The waiver by either Party hereto of the other Party's prompt and complete performance, or breach or violation, of any provision of this Agreement shall not operate nor be construed as a waiver of any subsequent breach or violation.  The waiver by either Party hereto of the right to exercise any right or remedy that it may possess hereunder shall not operate nor be construed as a bar to the exercise of any right or remedy by such Party upon the occurrence of any subsequent breach or violation.  Any waiver must be in writing.

13

26.   __Change in Material Terms.__  The Parties acknowledge and agree that the language, provisions, terms and conditions set forth in this Agreement are a material part of this Agreement and each Party reserves the right to terminate its obligations under this Agreement if such Party determines, in its reasonable judgment, that any court-ordered variations from the terms or conditions set forth in this Agreement will decrease the consideration for which it has bargained in entering into this Agreement.

27.   __Invalidation of a Provision.__  If any paragraph, section, sentence, clause or phrase contained in this Agreement shall become illegal, null or void or against public policy, for any reason, or shall be held by any court of competent jurisdiction to be illegal, null or void or against public policy, the remaining paragraphs, sections, sentences, clauses and phrases contained in this Agreement shall not be affected thereby to the extent that the intent of the Parties can be carried out absent such provision.

28.   __Counterparts.__  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but together shall constitute one and the same instrument. Facsimile signatures shall be treated in all manner and respects as original signatures.

29.   __Fees and Expenses.__  Except to the extent otherwise provided for under this Agreement, each of the Parties shall be responsible for the payment of its own legal fees and expenses incurred in connection with this Agreement and the transactions contemplated hereunder, except that the prevailing Party shall be entitled to recover expenses and a reasonable attorney's fee if: (i) the Bankruptcy Court approves this Agreement as presently drafted, and (ii) the prevailing Party is required to use counsel to enforce the terms of this Agreement..

30.   __Entire Agreement.__  This Agreement sets forth the entire agreement between the Parties regarding the subject matter covered herein, and supersedes any and all prior oral and/or

14

written communications between the Parties regarding the subject matter covered herein, and may not be modified or amended except in writing signed by the Parties.

   31. <u>Survival of Other Agreements</u>. Except to the extent modified by the terms of this Agreement, the provisions of the Aeropostal Agreements and the Debt Settlement Agreement shall remain in full force and effect.

   IN WITNESS THEREOF, the Parties hereto have caused this Agreement to be duly executed as of the day and year first written above.

[SIGNATURE PAGES FOLLOW]

KENNETH A. WELT, CHAPTER 11 TRUSTEE
FOR FALCON AIR EXPRESS, INC.

Dated: September 28, 2006

By: _____
Name:  Kenneth A. Welt
Title:  Chapter 11 Trustee

AEROPOSTAL ALAS DE VENEZUELA, C.A.

Dated:  September ___, 2006

By: _____
Name:  Nelson Ramiz
Title:  President

15

KENNETH A. WELT, CHAPTER 11 TRUSTEE
FOR FALCON AIR EXPRESS, INC.

Dated: September ___, 2006

By: _____
    Name:  Kenneth A. Welt
    Title:  Chapter 11 Trustee

AEROPOSTAL ALAS DE VENEZUELA, C.A.

Dated: September ___, 2006

By: _____
    Name:  Nelson Ramiz
    Title:  President

16

## AMENDMENT TO SETTLEMENT AGREEMENT

This Amendment (the "Amendment") to that certain Settlement Agreement (the "Settlement Agreement" or "Agreement")[1] by and between Kenneth A. Welt, as Chapter 11 Trustee (the "Trustee") of Falcon Air Express, Inc. ("Falcon Air" or the "Debtor"), and Aeropostal Alas de Venezuela, C.A. ("Aeropostal"), and dated as of as of October 2, 2006, is made and entered into by and between the Trustee and Aeropostal as of December 4, 2006. The Trustee and Aeropostal are sometimes collectively referred to as the "Parties" and sometimes separately referred to as a "Party."

### RECITALS

WHEREAS, on May 10, 2006 (the "Petition Date"), Falcon Air filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), assigned case no. 06-11877-BKC-AJC (the "Chapter 11 Case"), in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court" or "Court"). By order dated June 26, 2006, Kenneth A. Welt was appointed Chapter 11 Trustee for Falcon Air pursuant to 11 U.S.C. § 1104, vested with the powers and duties set forth in 11 U.S.C. § 1106 and the authority to operate the business of Falcon Air pursuant to 11 U.S.C. § 1108.

WHEREAS, Falcon Air currently operates two McDonnell Douglas airplanes (MD-82/serial no. 44905 and MD-83/serial no. 53045) and two Pratt & Whitney JTD8-219 engines per plane (collectively, the "Leased Aircraft") that it subleases from Aeropostal pursuant to certain aircraft sublease agreements dated June 1, 2005, and May 3, 2006, respectively (the "Falcon Air Subleases").

WHEREAS, Falcon Air operates the Leased Aircraft pursuant to an Aircraft Wet Lease Agreement with Aeropostal dated as of February 17, 2006 (the "Wet Lease"), and an Aircraft Management Agreement with Aeropostal dated as of February 10, 2006 (the "Management

Agreement"). The Falcon Air Subleases, the Wet Lease and the Management Agreement are collectively referred to herein as the "Aeropostal Agreements."

WHEREAS, the Trustee, as court-appointed representative of Falcon Air's bankruptcy estate, is the successor in interest to Falcon Air's rights under the Aeropostal Agreements.

WHEREAS, the Parties entered into the Settlement Agreement on or about October 2, 2006, in settlement of certain disputes relating to, among other things, the Parties' rights under the Wet Lease and Management Agreement. The Settlement Agreement was approved by the Court by Order entered October 19, 2006 (the "Settlement Approval Order"). In particular, the Settlement Agreement, as modified by the Settlement Approval Order, provided that the Trustee and Falcon Air would continue to operate the Leased Aircraft through November 30, 2006, and thereafter the Trustee could operate one of the Leased Aircraft through January 15, 2007, or such further date as agreed to by the Parties.

WHEREAS, the Trustee filed a Chapter 11 Plan of Reorganization on November 30, 2006 (the "Plan"). The Court hearing to consider confirmation of the Plan is currently scheduled for January 16, 2007.

WHEREAS, the Trustee and Aeropostal wish to amend the Settlement Agreement to provide for Falcon Air's continued operation of the Leased Aircraft, and Aeropostal's continued payment of the Weekly Payments up to a monthly amount of $300,000, through January 31, 2007, on the terms and conditions set forth below.

NOW, THEREFORE, in consideration of the foregoing and other mutual consideration, receipt of which is hereby acknowledged by the Parties, and intending to be legally bound, the Trustee and Aeropostal hereby agree to amend the Settlement Agreement as follows:

---

[1]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.

2

1.      Paragraph 2 of the Settlement Agreement is amended to (i) redefine the term "Termination Date" (as such term is used throughout the entire Agreement) by removing and replacing "November 30, 2006" with "January 31, 2007"; (ii) redefine the term "Weekly Payments" by removing and replacing "Wednesday, November 29, 2006" (as the date of the last Weekly Payment) with "Friday, January 26, 2007", and (iii) adding the following phrase at the end of the second sentence of paragraph 2: "; provided, however, that the total monthly payment by Aeropostal for each of the months of December, 2006, and January, 2007 shall be $300,000." All other provisions in paragraph 2 of the Settlement Agreement, including the $75,000 amount of each Weekly Payment, shall remain the same.

2.      The following paragraph 2.a shall be added after paragraph 2 of the Settlement Agreement:

> 2.a.    **Use of Falcon Air Crew**. Included in the Weekly Payments set forth in paragraph 2 above is the cost of using Falcon Air's crew up to a total of 200 hours per month (meaning 200 captain hours and 200 first officer hours). Any use of Falcon Air's crew after the initial 200 hours per month will be charged to Aeropostal at the hourly rate under the Management Agreement of $105 per hour for captains and $85 per hour for first officers, payable by Aeropostal as an additional amount added to the applicable Weekly Payment. The total number of additional hours (after the initial 200 hours per month) shall not exceed 100 hours per month (meaning 100 captain hours and 100 first officer hours)

3.      All other provisions of the Settlement Agreement (as modified by the Settlement Approval Order) and Aeropostal Agreements shall remain in full force and effect..

[SIGNATURE PAGE FOLLOWS]

3

The Parties hereto have caused this Amendment to be duly executed as of the day and year first written above.

Executed by:

**KENNETH A. WELT, CHAPTER 11 TRUSTEE FOR FALCON AIR EXPRESS, INC.**

Dated: December **5**, 2006

By:

Name: Kenneth A. Welt

Title: Chapter 11 Trustee

**AEROPOSTAL ALAS DE VENEZUELA, C.A.**

Dated: December **5**, 2006

By:

Name: Nelson Ramiz

Title: President

4

## SECOND AMENDMENT TO SETTLEMENT AGREEMENT

This Amendment (the "Amendment") to that certain Settlement Agreement, as amended (the "Settlement Agreement" or "Agreement"),[1] by and between Kenneth A. Welt, as Chapter 11 Trustee (the "Trustee") of Falcon Air Express, Inc. ("Falcon Air" or the "Debtor"), and Aeropostal Alas de Venezuela, C.A. ("Aeropostal"), and dated as of as of October 2, 2006, is made and entered into by and between the Trustee, Aeropostal and SkyValue Airlines, Inc. ("SkyValue") as of February 22, 2007. The Trustee, Aeropostal and SkyValue are sometimes collectively referred to as the "Parties" and sometimes separately referred to as a "Party."

### RECITALS

WHEREAS, on May 10, 2006 (the "Petition Date"), Falcon Air filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), assigned case no. 06-11877-BKC-AJC (the "Chapter 11 Case"), in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court" or "Court"). By order dated June 26, 2006, Kenneth A. Welt was appointed Chapter 11 Trustee for Falcon Air pursuant to 11 U.S.C. § 1104, vested with the powers and duties set forth in 11 U.S.C. § 1106 and the authority to operate the business of Falcon Air pursuant to 11 U.S.C. § 1108.

WHEREAS, Falcon Air currently operates two McDonnell Douglas airplanes (MD-82/serial no. 44905 and MD-83/serial no. 53045) and two Pratt & Whitney JTD8-219 engines per plane (collectively, the "Leased Aircraft") that it subleases from Aeropostal pursuant to certain aircraft sublease agreements dated June 1, 2005, and May 3, 2006, respectively (the "Falcon Air Subleases").

WHEREAS, Falcon Air operates the Leased Aircraft pursuant to an Aircraft Wet Lease Agreement with Aeropostal dated as of February 17, 2006 (the "Wet Lease"), and an Aircraft

Management Agreement with Aeropostal dated as of February 10, 2006 (the "Management Agreement"). The Falcon Air Subleases, the Wet Lease and the Management Agreement are collectively referred to herein as the "Aeropostal Agreements."

WHEREAS, the Trustee, as court-appointed representative of Falcon Air's bankruptcy estate, is the successor in interest to Falcon Air's rights under the Aeropostal Agreements.

WHEREAS, the Trustee and Aeropostal entered into the Settlement Agreement on or about October 2, 2006, in settlement of certain disputes relating to, among other things, their respective rights under the Wet Lease and Management Agreement. The Settlement Agreement was approved by the Court by Order entered October 19, 2006 (the "Settlement Approval Order"). In particular, the Settlement Agreement, as modified by the Settlement Approval Order, provided that the Trustee and Falcon Air would continue to operate the Leased Aircraft through November 30, 2006, and thereafter the Trustee could operate one of the Leased Aircraft through January 15, 2007, or such further date as agreed to by the Trustee and Aeropostal.

WHEREAS, by prior amendments to the Settlement Agreement, the Trustee and Aeropostal agreed to extend the term of the Aeropostal Agreements through February 17, 2007.

WHEREAS, the Trustee and SkyValue filed a chapter 11 plan of reorganization for Falcon Air in the Chapter 11 Case on February 9, 2007 (the "Plan"), which proposes that SkyValue will emerge as the owner of 100% of the stock of the reorganized Falcon Air as of the effective date of the Plan ("Reorganized Falcon Air"), which the Trustee anticipates will occur on or about March 15, 2007. The Court hearing to consider confirmation of the Plan is currently scheduled for March 5, 2007.

---

<sup></sup>     Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.

WHEREAS, the Parties wish to amend the Settlement Agreement to provide for the continued operation of the Leased Aircraft by Falcon Air, and Reorganized Falcon Air after the effective date of the Plan, through April 30, 2007, on the terms and conditions set forth below.

### TERMS OF AMENDMENT

NOW, THEREFORE, in consideration of the foregoing and other mutual consideration, receipt of which is hereby acknowledged by the Parties, and intending to be legally bound, the Parties hereby agree to amend the Settlement Agreement as follows:

1.    Paragraph 2 of the Settlement Agreement is amended to (i) redefine the term "Termination Date" (as such term is used throughout the entire Agreement) as April 30, 2007; and (ii) redefine the term "Weekly Payments" by specifying (A) Friday, March 16, 2007 as the date by which the final weekly payment is due, and (B) that each weekly payment shall be paid to the Trustee by wire transfer to the following bank account:

> BENEFICIARY:  Kenneth A. Welt, Trustee for Falcon Air Express, Inc.
> BANK:  Mellon United National Bank, Miami-Florida
> BANK ADDRESS: 5901 Miami Lakes Dr., Miami Lakes, FL  33014
> ABA CODE:  067009646
> ACCOUNT NUMBER:  0166009159

2.    Paragraph 2 of the Settlement Agreement is further amended to add the following sentence as the new third sentence of paragraph 2: "Aeropostal shall not be responsible for any payments to the Trustee or Reorganized Falcon Air under the Aeropostal Agreements for the period of March 17, 2007 through April 19, 2007, and the total payment by Aeropostal for the period of April 20, 2007 through April 30, 2007 shall be $75,000, payable in two installments of $37,500 each on or before Friday, April 20, 2007, and Friday, April 27, 2007, respectively, which payments shall be paid to Reorganized Falcon Air at a bank account to be designated by Reorganized Falcon Air in a separate written notice to be sent by Reorganized Falcon Air to Aeropostal after confirmation of the Plan."

3

3.     All other provisions in paragraph 2 of the Settlement Agreement, including the $75,000 amount of each Weekly Payment, shall remain the same.

4.     All other provisions of the Settlement Agreement (as modified by the Settlement Approval Order) and Aeropostal Agreements shall remain in full force and effect.

[SIGNATURE PAGE FOLLOWS]

4

The Parties hereto have caused this Amendment to be duly executed as of the day and year first written above.

Executed by:

**KENNETH A. WELT, CHAPTER 11 TRUSTEE FOR FALCON AIR EXPRESS, INC.**

Dated: February 22, 2007

By: _____

Name:  Kenneth A. Welt
Title:  Chapter 11 Trustee

**SKYVALUE AIRLINES, INC.**

Dated: February 22, 2007

By: _____

Name:  F. Darrell Richardson
Title:  President and Chief Executive Officer

**AEROPOSTAL ALAS DE VENEZUELA, C.A.**

Dated:  February 22, 2007

By: _____

Name:  Nelson Ramiz
Title:  President

5

The Parties hereto have caused this Amendment to be duly executed as of the day and year first written above.

Executed by:

                                                KENNETH A. WELT, CHAPTER 11 TRUSTEE
                                                FOR FALCON AIR EXPRESS, INC.

Dated: February 22, 2007                        By: _____
                                                    Name: Kenneth A. Welt
                                                    Title: Chapter 11 Trustee


                                                SKYVALUE AIRLINES, INC.

Dated: February 22, 2007                        By: _____
                                                    Name: F. Darrell Richardson
                                                    Title: President and Chief Executive Officer


                                                AEROPOSTAL ALAS DE VENEZUELA, C.A.

Dated: February 22, 2007                        By: _____
                                                    Name: Nelson Ramiz
                                                    Title: President

5

The Parties hereto have caused this Amendment to be duly executed as of the day and year first written above.

Executed by:

                                    **KENNETH A. WELT, CHAPTER 11 TRUSTEE**
                                    **FOR FALCON AIR EXPRESS, INC.**

Dated: February 22, 2007            By: _____
                                         Name:  Kenneth A. Welt
                                         Title:  Chapter 11 Trustee

                                    **SKYVALUE AIRLINES, INC.**

Dated: February 22, 2007            By: _____
                                         Name:  F. Darrell Richardson
                                         Title:  President and Chief Executive Officer

                                    **AEROPOSTAL ALAS DE VENEZUELA, C.A.**
                                    ON. Behalf of.

Dated:  February 22, 2007           By: _____
                                         Name:  Nelson Ramiz
                                         Title:  President

                                         Gianfranco. Bareins.
                                         Executive. V.P. Strategy

5

## THIRD AMENDMENT TO SETTLEMENT AGREEMENT

This Amendment (the "Amendment") to that certain Settlement Agreement, as amended (the "Settlement Agreement" or "Agreement"),[1] by and between Kenneth A. Welt, as Chapter 11 Trustee (the "Trustee") of Falcon Air Express, Inc. ("Falcon Air" or the "Debtor"), and Aeropostal Alas de Venezuela, C.A. ("Aeropostal"), and dated as of as of October 2, 2006, is made and entered into by and between the Trustee and Aeropostal as of April 26, 2007. The Trustee and Aeropostal are sometimes collectively referred to as the "Parties" and sometimes separately referred to as a "Party."

### RECITALS

WHEREAS, on May 10, 2006 (the "Petition Date"), Falcon Air filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), assigned case no. 06-11877-BKC-AJC (the "Chapter 11 Case"), in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court" or "Court"). By order dated June 26, 2006, Kenneth A. Welt was appointed Chapter 11 Trustee for Falcon Air pursuant to 11 U.S.C. § 1104, vested with the powers and duties set forth in 11 U.S.C. § 1106 and the authority to operate the business of Falcon Air pursuant to 11 U.S.C. § 1108.

WHEREAS, Falcon Air currently operates two McDonnell Douglas airplanes (MD-82/serial no. 44905 and MD-83/serial no. 53045) and two Pratt & Whitney JTD8-219 engines per plane (collectively, the "Leased Aircraft") that it subleases from Aeropostal pursuant to certain aircraft sublease agreements dated June 1, 2005, and May 3, 2006, respectively (the "Falcon Air Subleases").

WHEREAS, Falcon Air operates the Leased Aircraft pursuant to an Aircraft Wet Lease Agreement with Aeropostal dated as of February 17, 2006 (the "Wet Lease"), and an Aircraft Management Agreement with Aeropostal dated as of February 10, 2006 (the "Management Agreement"). The Falcon Air Subleases, the Wet Lease and the Management Agreement are collectively referred to herein as the "Aeropostal Agreements."

WHEREAS, the Trustee, as court-appointed representative of Falcon Air's bankruptcy estate, is the successor in interest to Falcon Air's rights under the Aeropostal Agreements.

WHEREAS, the Trustee and Aeropostal entered into the Settlement Agreement on or about October 2, 2006, in settlement of certain disputes relating to, among other things, their respective rights under the Wet Lease and Management Agreement. The Settlement Agreement was approved by the Court by Order entered October 19, 2006 (the "Settlement Approval Order"). In particular, the Settlement Agreement, as modified by the Settlement Approval Order, provided that the Trustee and Falcon Air would continue to operate the Leased Aircraft through November 30, 2006, and thereafter the Trustee could operate one of the Leased Aircraft through January 15, 2007, or such further date as agreed to by the Trustee and Aeropostal.

WHEREAS, by prior amendments to the Settlement Agreement and/or Aeropostal Agreements, the Trustee and Aeropostal agreed to extend the term of the Aeropostal Agreements through May 15, 2007.

WHEREAS, a chapter 11 plan of reorganization for Falcon Air was confirmed in the Chapter 11 Case by order of the Bankruptcy Court entered March 8, 2007 (the "Plan"). Under the Plan, a stock purchaser will acquire and emerge as the owner of 100% of the stock of the reorganized Falcon Air ("Reorganized Falcon Air") pursuant to a stock issuance and plan funding agreement ("SIPFA") between such purchaser and the Trustee. The date of the closing of the SIPFA (the "Closing Date") is expected to occur on or about June 8, 2007.

WHEREAS, the Parties wish to amend the Settlement Agreement to provide for the continued operation of the Leased Aircraft by Falcon Air, and Reorganized Falcon Air after the Closing Date and effective date of the Plan, through June 30, 2007, on the terms and conditions set forth below.

## TERMS OF AMENDMENT

NOW, THEREFORE, in consideration of the foregoing and other mutual consideration, receipt of which is hereby acknowledged by the Parties, and intending to be legally bound, the Parties hereby agree to amend the Settlement Agreement as follows:

---

[1]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.

1.      Paragraph 2 of the Settlement Agreement is amended to (i) redefine the term "Termination Date" (as such term is used throughout the entire Agreement) as June 30, 2007; and (ii) redefine the term "Weekly Payments" by (a) specifying Friday, June 29, 2007 as the date by which the final Weekly Payment is due; (b) providing that the total amount payable by Aeropostal to the Trustee from May 1, 2007 through May 31, 2007 shall be $600,000, payable in four (4) Weekly Payments of $150,000 each on May 4, 2007, May 11, 2007, May 18, 2007, and May 25, 2007, respectively; (c) providing that the total amount payable by Aeropostal to the Trustee for the period of June 1, 2007 through the day immediately preceding the Closing Date (the "Prorated June Payment") shall be prorated on a daily basis as to be determined and agreed upon between Aeropostal and the Trustee; and (d) providing that the amount of each Weekly Payment for the period from the Closing Date through June 30, 2007 shall be negotiated between Reorganized Falcon Air and Aeropostal after the Closing Date.

2.      Paragraph 2 of the Settlement Agreement is further amended to remove and replace the last sentence of paragraph 2 with the following sentence: "Within 30 days after the Closing Date, the liquidating trustee under the Plan shall provide a "true up" reconciliation to Aeropostal with respect to the actual operating expenses incurred by Falcon Air for the period of May 1, 2007 through the Closing Date, and any surplus in respect of the total amount paid by Aeropostal to the Trustee, which represents that portion of the payment under paragraph 1 which covers the period of May 1, 2007 through the closing date (which amount shall not exceed Four Hundred Fifty Thousand and No/100 Dollars $450,000.00 per month), shall be paid by the liquidating trustee, within three (3) business days after the date that the Trustee provides such reconciliation."

3.      In addition to the other termination provisions set forth in the Aeropostal Agreement, the Aeropostal Agreements may be terminated by Aeropostal in the event that a stay of the order approving and confirming the Plan as modified, pursuant to Federal Rule of Bankruptcy Procedure 8005 or otherwise, is in effect on the Closing Date.

4.      In the event that the Closing does not occur on the Closing Date and the SIPFA is not terminated, then Trustee and Aeropostal will use their best efforts to preserve the business of Falcon and to

maintain the goodwill of their present and prospective customers, suppliers and clients through June 30, 2007. In addition Falcon and Aeropostal, under the circumstances specified herein, shall renegotiate a weekly rate under the Wet Lease.

      5.     In the event that a stay of the Order Modifying the Plan and/or Modified Confirmation Order Pending Appeal (the "Order"), pursuant to the Federal Rule of Bankruptcy Procedure 8005 or otherwise, is in effect on the Closing Date and Buyer does not terminate the SIPFA, Trustee shall reimburse Aeropostal the incremental payments made from May 1, 2007 through the closing date, such amount not to exceed $150,000 per month from any portion of a bond that may be posted staying the Order that is attributable to the additional consideration provided by the Plan Proponent coming from this Agreement, should the bond be tendered to the Trustee upon a favorable ruling by the Trustee on the appeal to which the Order relates. The Trustee shall make a good faith effort to include as part of the bond an amount to cover the additional incremental payments that are specified in this Agreement.

      6.     The terms of this Amendment shall amend and supersede all prior amendments and modifications to the Settlement Agreement to the extent of any inconsistencies between this Amendment and such prior amendments and modifications. All other provisions of the Settlement Agreement (as subsequently modified or amended) and Aeropostal Agreements shall remain in full force and effect.

**[SIGNATURE PAGE FOLLOWS]**

The Parties hereto have caused this Amendment to be duly executed as of the day and year first written above.

Executed by:

**KENNETH A. WELT, CHAPTER 11 TRUSTEE**
**FOR FALCON AIR EXPRESS, INC.**

Dated: April 26, 2007                    By: _S. Mayl_, as agent of

Name:  Kenneth A. Welt
Title:  Chapter 11 Trustee

**AEROPOSTAL ALAS DE VENEZUELA, C.A.**

Dated:  April 26, 2007                    By: _____

Name:  Gianfranco Farina
Title:  Executive Vice President

5